UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

16 CR 640 (DLI)

- against -

MARK NORDLICHT,
DAVID LEVY,
URI LANDESMAN,
JOSEPH SANFILIPPO,
JOSEPH MANN,
DANIEL SMALL and
JEFFREY SHULSE,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION SEEKING A BILL OF PARTICULARS
AND REQUESTS FOR DISCLOSURES


BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


ALICYN L. COOLEY
LAUREN H. ELBERT
SARAH M. EVANS
Assistant U.S. Attorneys
(Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                          1

THE DEFENDANTS' REQUEST FOR A BILL OF PARTICULARS
SHOULD BE DENIED IN ITS ENTIRETY                                              1

   I.     Legal Standard                                      2

   II.    Argument                                                 4

      A.   Information Already Provided to the Defendants Provides Them with
Sufficient Notice of the Pending Charges                                       4

      B.   The Defendants' Specific Requests for Particulars Lack Merit      6

      C.   Requests Made by Levy on Behalf of All Defendants                8

      D.   Requests Made by Mann                                           10

      E.   Requests Made by Small                                          14

THE GOVERNMENT'S RESPONSE TO THE DEFENDANTS' REQUESTS FOR
DISCLOSURES                                                                   15

   I.     Legal Standard                                      16

      A.   Brady Material                                                  16

      B.   Giglio Material                                                 17

   II.    The July 5 Letter                                          18

   II.    Additional Requests by the Defendants                      20

      A.   The Nordlicht Letter                                            20

      B.   The SanFilippo Letter                                           22

      C.   The Mann Letter                                                 25

      D.   The Small Letter                                                25

      E.   The Shulse Letter                                               26

      F.   Levy's July 14 Letter                                           27

CONCLUSION                                                                    28

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in response to the joint motion of the defendants Mark Nordlicht, David Levy, Uri Landesman, Joseph SanFilippo, Joseph Mann, Daniel Small and Jeffrey Shulse (collectively, the "defendants") for a bill of particulars and disclosures in the above-captioned case, as set forth in Levy's letters filed on July 5, 2017 (the "July 5 Letter") and July 14, 2017 ("Levy's July 14 Letter"),[1] respectively, see ECF Docket Nos. 166 & 179, and Nordlicht's, Landesman's,[2] SanFilippo's, Mann's, Small's and Shulse's respective letters filed on July 11, 2017, see ECF Docket Nos. 172-177.   For the reasons set forth below, the defendants' motion for a bill of particulars should be denied in its entirety, and the vast majority of the defendants' requests for disclosures are improper and should be denied.

THE DEFENDANTS' REQUEST FOR A BILL OF PARTICULARS
SHOULD BE DENIED IN ITS ENTIRETY

The defendants assert that a bill of particulars, providing further evidentiary details and describing the government's theories of liability, is necessary to prepare their defense and prevent unfair surprise and prejudice at trial.   Contrary to their claims, the 48-page Indictment and the extensive discovery already produced in this case have provided the defense with more than adequate notice of the charges against them, and the additional particulars sought are neither warranted nor appropriate under the law.   Moreover, many of their requests for particulars are clear attempts to obtain a premature and unwarranted preview of the government's trial presentation far in advance of trial.   The motion should be denied in its entirety.

---

[1]     This letter was filed by the defendant David Levy three days after the Court's July 11, 2017 deadline for supplemental requests from the defendants.   The government nevertheless has responded to that letter herein, as well as the letters filed on or before July 11.

[2]     Landesman's letter joined but did not supplement the July 5 Letter.

I.      <u>Legal Standard</u>

   The Federal Rules of Criminal Procedure require only that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c).   Additional details, in the form of a bill of particulars, <u>see</u> Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and preclude double jeopardy.   <u>See</u> <u>United States v. Chen</u>, 378 F.3d 151, 163 (2d Cir. 2004); <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999); <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted), <u>abrogated on other grounds by</u> <u>United States v. Marcus</u>, 628 F.3d 36, 41 (2d Cir. 2010).

   Neither the Federal Rules of Criminal Procedure nor the Second Circuit requires that the government "particularize" its evidence; rather, a bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he or she is accused.   <u>See</u> <u>Torres</u>, 901 F.2d at 234.   If the information sought by the defendant is provided in the indictment or through some other means, including discovery, a bill of particulars is not warranted.   <u>See</u> <u>Chen</u>, 378 F.3d at 163; <u>Walsh</u>, 194 F.3d at 47; <u>Torres</u>, 901 F.2d at 234; <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987); <u>United States v. Urso</u>, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005).   The defendant bears the burden of showing that denial

of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights." United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).[3]

It is inappropriate to use Rule 7(f) to limit the government's evidence or flesh out its prosecutorial theories in advance of trial. See Urso, 369 F. Supp. 2d at 272 ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); see also United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories") (quotations and citations omitted); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, No. 91-CR-0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established."). Ultimately, "[t]he

---

[3]     As discussed at the July 7, 2017 status conference in this case (the "July 7 Conference"), in a recent Medicare fraud case in this District, United States v. Ahmed, in response to a request from the defense, the government agreed to give guidance to the defense as to which Medicare claims filed by the defendant the government would seek to prove fraudulent at trial. See United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686, at *9 (E.D.N.Y. July 1, 2016).   While Levy's counsel argued at the conference that the outcome of that case should apply here, the two cases differ significantly.   Specifically, the Ahmed defendant sought guidance as to which of more than 18,000 Medicare claims he filed would be the subject of the trial—a fact not obvious from the face of the 14-page indictment in that case, which did not charge a conspiracy. Id.   Unlike in Ahmed, the lengthy Indictment filed in this case alleges discrete and well-defined conspiracies, among other related charges, involving interrelated fraudulent schemes.   The Indictment describes those schemes in extensive detail, including by itemizing several relevant communications and overt acts committed in furtherance of the schemes.   The basis for the government's provision, in Ahmed, of specific Medicare claim information is absent here.

applicable standard for whether a bill of particulars should issue is not whether the information would be helpful to the defense, but whether it is necessary."   United States v. Taylor, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014); id. at 178-79 (noting that "[a] bill of particulars may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial," and denying defendant's motion for bill of particulars); United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994).   Consequently, a motion for a bill of particulars must be denied where it would "unduly restrict the Government's ability to present its case."   United States v. Baez, 62 F. Supp. 2d 557, 559 (D. Conn. 1999).

There are three reasons animating these restrictions on the use of bills of particulars. First, the use of bills of particulars "is not comparable to discovery in civil [cases] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury."   United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (internal quotation marks and citations omitted).   Second, the government must not be compelled "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the [g]overnment's case."   United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted).   Finally, the government should not be restricted from "using proof it may develop as the trial approaches." Id. (citation omitted).

II.   Argument

A.   Information Already Provided to the Defendants Provides Them with Sufficient Notice of the Pending Charges

The detailed Indictment provides the defendants with the necessary information to apprise them of the charges and enable them to prepare their defense, avoid unfair surprise and preclude double jeopardy.   See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). In fact, "indictments which track the language of a statute and, in addition, do little more than state

4

time and place in approximate terms" are often sufficient.   See United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973).   The government has done far more here.   The 49-page, 107-paragraph Indictment provides extensive information about the charged fraudulent schemes, the conduct and transactions giving rise to those schemes, the various corporate entities involved in the charged conduct, specific examples of how the schemes operated, the content of various communications made in furtherance of the fraudulent schemes, and the roles played by the defendants in those schemes.   Additionally, by emails to all defense counsel on January 10, 2017 and March 17, 2017, the government identified by name each of the co-conspirators, investors, entities and other individuals who are anonymized in the Indictment (the "Identification Disclosures").

In addition to the Indictment and Identification Disclosures, the government has provided the defendants with extensive discovery under Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), produced on a rolling basis over the past several months.   To facilitate the defense's review of the large volume of materials produced in this case, the government formatted each production as a load file that is text searchable with the use of a document review platform and provided indices for the productions.   The discovery provided to date has been clearly identified to the defendants by source so that the defendants can more efficiently locate documents of interest to them, and determine how they relate to the relevant charges in the Indictment.

Together, the Indictment, Identification Disclosures and discovery fully apprise the defendants of the charges against them.   For example, the Indictment quotes from and describes email communications the government alleges were made in furtherance of, or otherwise evidence, the fraudulent schemes.   See, e.g., Ind. ¶¶ 48-49, 50-51, 54-56, 60-62, 64-69, 75, 78-82, 84-86.   In the discovery productions, the defendants have received copies of each of these communications in load

file format, including all available metadata.   The defendants have also received information regarding how the government obtained these materials, i.e., through the execution of a search warrant at Platinum's offices, or via investors or other third parties.   As another example, the Indictment includes allegations relating to a debt offering made by Platinum called Platinum Partners Northstar Equity ("PPNE").   In the discovery, a search for the term "PPNE" yields a few thousand text searchable documents, including email correspondence, both among Platinum employees and with investors and prospective investors, investor lists, and spreadsheets identifying investors, the amounts of their investment, and interest payments made to them.   This information is sufficient to enable the defendants to determine, among other things, who was involved in the PPNE transactions, who invested in PPNE, and the content of communications regarding that offering.

Collectively, as outlined above, the Indictment, the Identification Disclosures and the government's discovery provide the defendants with more than adequate detail regarding the crimes with which they are charged, distinguishing this case from those in which "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."   Torres, 901 F.2d at 234.   Indeed, the level of disclosure here is far beyond what is required under the law.   Under these circumstances, no further disclosure in the form of a bill of particulars is warranted.   See Walsh, 194 F.3d at 47 (explaining that if information sought by the defendant is provided in the indictment or through some other means, a bill of particulars is not warranted); Bortnovsky, 820 F.2d at 574; Urso, 369 F. Supp. 2d at 271.

B.   The Defendants' Specific Requests for Particulars Lack Merit

The defendants' specific requests reveal an underlying strategic motive for their motion—to force the government to narrow its theories of liability and restrict the government's proof at trial.   As well-settled law dictates, a bill of particulars cannot be used for those purposes.   See, e.g.,

6

Barret, 824 F. Supp. 2d 419; United States v. Batista, No. 06-CR-265 (DLI), 2009 WL 910357, at

*10 (E.D.N.Y. Mar. 31, 2009); Ianniello, 621 F. Supp. at 1478; see also United States v. Larracuente,

740 F. Supp. 160, 163 (E.D.N.Y. 1990) ("A bill of particulars is not to be viewed as a discovery device

to seek and compel disclosure of the [g]overnment's evidence prior to trial . . . .").

   The defendants assert that they are entitled to a bill of particulars because of the

voluminous discovery in this case.   Transcript of July 7 Conference ("Tr.") at 16.   As described

above, the discovery produced to date has been produced in text-searchable load file format, organized

for the defendants by source, and produced on a timely basis.   Particularly in view of the fact that a

trial date has not yet been scheduled, the mere volume of discovery produced does not provide a basis

for concluding that the particulars sought by the defendant are necessary to prepare for trial.   Courts

have held that even when the volume of discovery is significant, the fact that the defendants have

had a substantial amount of time to digest that discovery compels denying a bill of particulars.

See, e.g., United States v. Columbo, No. 04-CR-273 (NRB), 2006 WL 2012511, at *6 (S.D.N.Y.

July 18, 2006) (rejecting a request for a bill of particulars based on defendants' assertions that the

discovery was "voluminous and overwhelming" because, inter alia, the defendants "had more than

a year to review discovery prior to trial"); United States v. Wedd, No. 15-CR-616 (KBF), 2016

WL 1055737 (S.D.N.Y. Mar. 10, 2016) ("Although the Court recognizes the burdens on defense

counsel imposed by the volume of discovery in this case, defendants are not entitled to a roadmap

of the [g]overnment's proof to facilitate their review of that discovery.").   While "the government

cannot rely on the sheer quantity of the documents produced during discovery as an automatic

substitute for identifying the charges with the necessary specificity," this "general principle . . .

does not allow Defendants to use the vastness or complexity of the alleged conspiracy and the

attendant documentary evidence as a sword against the government when the Indictment,

discovery and other information provided by the government adequately notify Defendants of the charges against them." <u>United States v. Rigas</u>, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003) (denying motions for bills of particulars).   Put simply, the defendants should not be permitted to unfairly use the government's organized, early discovery disclosures as such a sword in this case.

The government further addresses each of the defendants' specific requests for a bill of particulars as follows:

C.    <u>Requests Made by Levy on Behalf of All Defendants</u>

Levy's July 5 Letter itemized three categories of information he sought from the government in the form of a bill of particulars.[4]   The government responds to each of these requests, by number below.   For the reasons provided below, these requests should be denied.

1.    <u>A List of All of the Allegedly False and Fraudulent Statements, Representations and/or Omissions that Form the Basis of the Fraud</u>

The defendants request a list of all allegedly false and fraudulent statements made in furtherance of the charged schemes, including who made each statement and to whom.   July 5 Letter at 9.   Given the extensive allegations in the Indictment relating to the alleged false statements and misrepresentations made by the defendants, no further particulars are required to give the defendants fair notice of the charges.   See <u>Barret</u>, 824 F. Supp. 2d at 439-40; <u>United States v. Badoolah</u>, No. 12-CR-774 (KAM), 2014 WL 4793787, at *14 (E.D.N.Y. Sept. 25, 2014).

The Indictment alleges with particularity the charged fraudulent schemes, including the PPVA scheme, the PPNE scheme and the Black Elk bond scheme.   The Indictment also identifies various categories of misstatements and misrepresentations made in furtherance of those

---

[4]       The additional requests for particulars made by Levy's co-defendants in their letters filed on July 11 are addressed in Sections D and E, <u>infra</u>.

schemes.   For example, in regard to the Investment scheme, the Indictment alleges four categories of fraudulent misrepresentations: (1) misrepresentations about the value of PPVA's assets, identifying two specific assets that are alleged to have been overvalued, namely, Black Elk Energy and Golden Gate Oil (Ind. ¶¶ 43-52); (2) misrepresentations about the liquidity of PPVA (id. ¶¶ 53-56); (3) misrepresentations relating to certain high-interest loans, which are identified by name (id. ¶¶ 57-59); and (4) misrepresentations relating to the payment of redemptions (id. ¶¶ 60-65).   For each category, the Indictment cites relevant communications and documents in which the defendants and others at Platinum provided investors with false information.

The additional information that the defendants seek is in the nature of "wheres, whens and whoms" that courts routinely have held to be unwarranted in denying a bill of particulars.   See United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001); Columbo, 2006 WL 2012511, at *5.   Moreover, disclosure of each allegedly false and fraudulent statement made in furtherance of the charged schemes would ultimately amount to early disclosure of victim witness statements, and, therefore, the identities of the government's witnesses, which is not warranted at this time.   See United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *7 (E.D.N.Y. Dec. 16, 2016) (denying request for identification of all false and fraudulent statements made in furtherance of securities fraud charges as seeking premature disclosure of Section 3500 material).

### 2.   A List of All Individuals with Whom the Defendants Are Alleged to Have Committed Each of the Charged Crimes

The Indictment charges seven defendants and identifies, by number, nine additional Co-Conspirators.   The identities of these nine individuals were provided to the defendants in the Identification Disclosures.   Together, the Indictment and the Identification Disclosures provide sufficient information regarding the individuals involved in the charged conspiracies.   The

Indictment alleges a scheme perpetrated by executives and employees at a named New York hedge fund—accordingly, the universe of potential co-conspirators is self-limiting, and a total of 16 such individuals have been disclosed to the defendants by name in the Indictment and Identification Disclosures.   In sum, the information provided is sufficient for the defendants to prepare their defense and no further particulars are required.   See Batista, 2009 WL 910357, at *10 ("The case law in this circuit is clear that the government is not required to provide the identities of alleged co-conspirators.") (citing United States v. Gotti, 784 F. Supp. 1017, 1018 (E.D.N.Y. 1992)).

> 3.  A List of Any Overt Acts Not Listed in the Indictment that the Government Plans to Introduce at Trial

The defendants are not entitled to a bill of particulars containing all of the overt acts the government intends to prove in furtherance of the conspiracies charged in the Indictment. "There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."   United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975); see also United States v. Nachamie, 91 F. Supp. 2d 565, 575 (S.D.N.Y. 2000) (denying a request for a bill of particulars identifying each overt act "because it requires the Government to lay out its proof three months before trial, which is not required.").   Courts have generally only required the government to provide this information under extreme circumstances, which are not present here.   Cf. United States v. Bin Laden, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) (granting motion for bill of particulars where indictment charged 267 discrete criminal offenses including 229 counts of murder covering a period of nearly ten years and a vast geographical area).

> D.  Requests Made by Mann

Mann's July 11, 2017 letter requests nine categories of information from the government in the form of a bill of particulars.   The government responds to each of these requests, by number, below.   For the reasons provided below, these requests should be denied.

10

1.  <u>Additional Details Regarding All Allegedly False and Fraudulent Statements</u>

Mann seeks further minutiae relating to all false and fraudulent statements made in furtherance of the charged fraudulent schemes.  This request should be denied for the reasons stated in section II.C.1, <u>supra</u>.

In his first request, Mann also requests information regarding the extent to which the charges in the Indictment are premised upon non-disclosure.   This request seeks to require the government to disclose its theory of Mann's participation in the fraud.   It is inappropriate to use Rule 7(f) to limit the government's evidence or flesh out its prosecutorial theories in advance of trial, and accordingly this request should be denied.   <u>See</u> <u>Urso</u>, 369 F. Supp. 2d at 272 ("A defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); <u>Barret</u>, 824 F. Supp. 2d at 439; <u>Ianniello</u>, 621 F. Supp. at 1478 (S.D.N.Y. 1985). In any event, the government notes that the Indictment sets forth specific communications made in furtherance of the fraudulent schemes by the various defendants, including Mann.   <u>See, e.g.</u>, Ind. ¶¶ 66, 90(d), 99(k).   The government has also produced numerous electronic communications between Mann and investors in its Rule 16 discovery productions of the electronic search warrant returns, including by letters dated January 26, 2017, February 14, 2017 and April 12, 2017.

2.  <u>Date Mann Joined the Conspiracy</u>

Mann is not entitled to more particulars regarding the date that he joined the charged conspiracies.   "Courts 'consistently reject[] demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant' because 'the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme.'"   <u>United States v. Oruche</u>, No. 07-CR-124 (WHP), 2008 WL 612694, at *3 (S.D.N.Y. Mar. 5, 2008) (citing <u>United States v. Matos-Peralta</u>, 691 F. Supp. 780,

791 (S.D.N.Y. 1988)); Shkreli, 2016 WL 8711065, at *7 (denying motion seeking details as to when defendant joined the charged conspiracy); see also United States v. Mittal, No. 98-Cr-1302, 1999 WL 461293, at *9 (S.D.N.Y. July 7, 1999) (collecting cases).

### 3. Information Regarding Selective Repayment of Investors

In Requests 3 and 4, Mann seeks additional particulars regarding instances in which the defendants and others at Platinum agreed to repay investors in PPVA (Request #3) and PPNE (Request #4) selectively, in violation of the terms of the respective investments' governing documents. With regard to the terms of the applicable governing documents, the government has produced, including by letter dated May 11, 2017, multiple versions of the PPVA Private Placement Memorandum (which changed over the relevant period) and the PPNE Notes. The defendants are entitled to no further particulars.

### 4. Description of the Government's Theory of Mann's Specific Liability

In Requests 5 through 8, Mann asks for the Court to direct the government to provide guidance as to its theories of liability with regard to Mann specifically. Mann asks that the government state whether and how it intends to prove at trial that Mann: (1) was aware of the overvalued assets described in the Indictment; (2) caused PPVA to incur loans at interest rates as high as 16 percent; (3) participated in a scheme to use liquid assets held by Beechwood to address PPVA's liquidity problems; and (4) "concealed" the true performance of Black Elk and Golden Gate from investors.

Collectively, these requests improperly seek disclosure of the government's legal theories and trial strategy, and to restrict the government's proof at trial. A bill of particulars is not intended for such use, and cannot be exploited as a strategic sword. See Batista, 2009 WL 910357, at *9-10; see also United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991) (bill of

particulars not to be used to require the government to identify the specific acts by which the defendant furthered the conspiracy); United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *3 (E.D.N.Y. May 23, 2011) ("[A] defendant is not entitled to preview, via a motion for bill of particulars, an extended trailer of the feature the Government plans to screen for the jury well in advance of the premiere.").

Moreover, Mann has already received extensive discovery relating to the underlying facts of the topics as to which he now seeks more particulars. The text-searchable documents already produced from the electronic search warrant returns, for example, include roughly one thousand documents responsive for the search terms "Mann" and "PPNE." Thus, the discovery is sufficient to enable Mann's counsel to explore Mann's involvement in the PPNE note (one of the offerings referenced in Mann's Request #6) and identify the relevant parties and events. The role of a bill of particulars is not to supplant defense counsel's own diligent review of the provided discovery.

5.  Identification of Victims of Counts One through Five

Mann is not entitled to the identification of victims of the fraudulent schemes charged in Counts One through Five. Identification of victims is not necessary to apprise the defendants of the nature of the alleged conspiracy. See United States v. Dolney, No. 04-CR-159 (NGG), 2005 WL 1076269, at *6 (E.D.N.Y. May 3, 2005) (denying motion for particulars regarding victims of securities fraud where the "indictment coupled with the discovery adequately notifies the defendants of the acts for which they are being charged.").

Moreover, the identities of a number of PPVA and PPNE investors have been disclosed to the defendants in a variety of ways. In the first instance, the Identification Disclosures revealed the names of seven investors identified by number in the Indictment. The

13

government also produced a collection of document productions made by victim investors, who were identified to the defense by name in an email from the government to defense counsel on July 3, 2017.   Additionally, a variety of lists of PPVA/PPNE investors are included in the discovery produced by letters dated January 26, 2017, February 14, 2017, February 24, 2017, March 9, 2017, April 12, 2017, and May 11, 2017, and are easily located electronically.

      E.    <u>Requests Made by Small</u>

Small's July 11, 2017 letter requests two categories of information from the government in the form of a bill of particulars.   The government responds to each of these requests, by number, below.   For the reasons provided below, these requests should be denied.

      1.    <u>A List of the Alleged "Negative" Statements Disseminated About Black Elk As Referenced in Paragraph 78 of the Indictment</u>

Small seeks evidentiary detail to which he is not entitled.   The Indictment quotes at length from an email sent by defendant Mark Nordlicht to Levy, Small and Shulse articulating a strategy to disseminate negative information to bondholders in order to place more BE Bonds in "friendly" hands.   Ind. ¶ 78.   The original version of this email was produced in discovery by letter dated May 11, 2017.   Any additional evidentiary detail about these specific allegations is not warranted in order for Small to understand the charges against him or prepare his defense.

      2.    <u>Identify the Victims of the Black Elk Scheme and the Amount of Their Losses</u>

Small is not entitled to additional information regarding losses suffered by holders of bonds issued by Black Elk Energy Offshore Operations LLC (the "Black Elk Bondholders") for the reasons set forth in section D.5, <u>supra</u>.   Moreover, a number of document productions relating to Black Elk Bondholders, including productions from Black Elk Bondholders identified to the

defense by name, have already been made by letters dated May 11, 2017, June 20, 2017 and July 3, 2017.

*        *        *

For all the reasons discussed above, the defendants' requests for a bill of particulars should be denied.

THE GOVERNMENT'S RESPONSE TO THE DEFENDANTS'
REQUESTS FOR DISCLOSURES

The July 5 Letter contained several requests for information purportedly pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Brady"), Giglio v. United States, 405 U.S. 150 (1972) ("Giglio"), and their progeny, and the Federal Rules of Criminal Procedure.[5]  Levy and his co-defendants thereafter filed their supplemental requests.

In compliance with the Court's instructions at the July 7 Conference, the government has reviewed each of the defendants' specific requests and determined, as to each

---

[5]    The July 5 Letter also sought several categories of discovery under the following headings: "Federal Rule of Criminal Procedure 16," "Federal Rule of Criminal Procedure 12," "Statements by Defendants," "Prior Bad Acts," "3500 Material/Federal Rule of Criminal Procedure 26," "Exhibit List," "Witness List," and "Alleged Accomplices."  See July 5 Ltr. at 9-15.  As the Court stated at the July 7 Conference, it is currently premature for the government to produce to the defendants 18 U.S.C. § 3500 material for its trial witnesses, a trial witness list and trial exhibits, or to provide notice pursuant to Federal Rule of Evidence 404(b).  See Tr. at 34. the Court also stated that it would not have the government address those matters at present.  Id.

With respect to the other discovery requests referenced above, the government notes that it has produced, and continues to produce, Rule 16 discovery including statements of the defendants to law enforcement, and expects to complete the vast majority of its Rule 16 productions in August 2017.  See ECF Docket Nos. 66-68, 79, 81, 88, 91, 95, 101, 104, 111, 114, 121, 132, 138, 155, 160-61, 165, 170 & 183.  The government also has produced information relating to the execution of search warrants, and copies of the evidence seized in those searches, in Rule 16 discovery by letters dated January 26, 2017, February 14, 2017, February 24, 2017, March 9, 2017, April 12, 2017, May 26, 2017 and July 27, 2017, and the identity of the co-conspirators and other individuals and entities identified in the indictment, by emails to defense counsel dated January 10, 2017 and March 17, 2017.

15

request, whether the government has identified responsive information subject to disclosure under Brady. The government respectfully submits that, under the guise of Brady disclosure requests, the defendants are seeking to embark on a fishing expedition for the identities and statements of witnesses who have assisted the government's investigation, and other materials to which they are not entitled. The government's individualized responses to the requests are provided below.

The government also notes that, at the July 7 Conference, the Court directed the government to include in the instant submission a status report regarding its review for information subject to disclosure under Brady. See Tr. at 40. Since the July 7 Conference, the government has made additional productions of documents responsive to certain of the defendants' disclosure requests discussed herein, including in Rule 16 discovery productions, as noted infra. The government is aware of and will comply with its obligations pursuant to Brady, including by continuing to review evidence in connection with its ongoing investigation.

I.     Legal Standard

A.     Brady Material

The government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001). "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence had been disclosed would have been different." Coppa, 267 F.3d at 142. "The rationale underlying Brady is not to supply a defendant with all the evidence in the [g]overnment's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment." United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).

16

In addition to the foregoing constitutional requirement, the government abides by the expanded disclosure policy set forth in the United States Attorneys' Manual ("USAM"), which, inter alia, "encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime" or that "establishes a recognized affirmative defense."   USAM §§ 9-5.001(F) & (C)(1).   This policy, moreover, recognizes that "information which is irrelevant or not significantly probative of the issues," or involves "spurious issues or arguments," is not subject to disclosure.   USAM §§ 9-5.001(C).

B.   Giglio Material

Among the categories of material favorable evidence that the government must disclose to defendants is evidence that is "useful for impeaching a witness."   Coppa, 267 F.3d at 135 (citing Giglio, 405 U.S. at 154; Brady, 373 U.S. at 87).   Although Giglio material must be disclosed in time for the defense to have an opportunity to make effective use of it at trial, several courts have held that Giglio material generally need not be produced before trial.   See, e.g., United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial."); United States v. Martinez-Perez, 941 F.2d 295, 301 (5th Cir. 1991); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988); United States v. Velasquez, No. 96-CR-126 (JFK), 1997 WL 414132, at *6 (S.D.N.Y. July 23, 1997); United States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996).   The government therefore objects to any of the defendants' requests for

17

immediate production of <u>Giglio</u> material.   The government will produce any <u>Giglio</u> material in its possession for its trial witnesses at a reasonable time before trial, <u>see</u> USAM § 9-5.001(D)(2), which has yet to be scheduled.

II.    <u>The July 5 Letter</u>

The government responds to the July 5 Letter's specific requests as follows:

<u>Request No. 1:</u> The government has produced information within this category by disclosure letters dated June 15, 2017, June 23, 2017 and June 30, 2017.

<u>Request No. 2:</u>   The government has produced in Rule 16 discovery all statements of the defendants to the government, the Federal Bureau of Investigation, the United States Postal Inspection Service, and the Securities and Exchange Commission (the "SEC") that are within the government's possession by letters dated January 1, 2017 and July 27, 2017.

<u>Request Nos. 3 and 4:</u>   These requests seek the identities and statements of witnesses under the pretext of a <u>Brady</u> request.   The government has not identified statements within this category that are subject to disclosure under <u>Brady</u>.   This request also calls for potential 18 U.S.C. § 3500 material.   <u>See</u> <u>supra</u> at 15 n.5.

<u>Request No. 5:</u>   This request is an attempt to uncover the identities of government witnesses, and is improper.   Statements by a witness that a defendant generally was a truthful person or a person of good character are not subject to disclosure under <u>Brady</u>.

<u>Request No. 6:</u>   This request again seeks the identities and statements of witnesses, including victims, under the pretext of a <u>Brady</u> request.   The government disputes that "any and all statements by a witness that a defendant never misled him/her by statement or omission," or "expressing doubt" that he did so, categorically are subject to disclosure under <u>Brady</u>.   Such statements, unless made by a victim of one of the charged crimes, do not constitute <u>Brady</u> material.

The government has not identified statements within this category that are subject to disclosure under Brady.

Request No. 7:   The government has produced information within this category by the disclosure letter dated June 30, 2017.

Request Nos. 8 through 17:   Certain of these requests call for information that proves a negative, including, for example, that a defendant "was unaware of false statements by other alleged co-conspirator[s]."   See, e.g., Requests No. 9-12.   The government has not identified information establishing such "unawareness."   Regarding the other information referenced in these requests, the government has not identified information within the enumerated categories that is subject to disclosure under Brady.

Request No. 18:   This request seeks information presented to the grand jury under the pretext of Brady.   This request is duplicative of the defendants' other requests for disclosure.

Request No. 19:   The government has produced information within this category by the disclosure letter dated June 23, 2017.[6]

Request Nos. 20 and 21:   The government has produced information within this category by the disclosure letter dated June 15, 2017.

---

[6]      At the July 7 Conference, counsel for Levy specifically requested the entire transcript of grand jury testimony that underlay the government's June 23, 2017 disclosure to the defendants.   That disclosure summarized the relevant portions of the witness's testimony, and provided detailed context for those portions, including the questions that elicited the relevant testimony and the Bates numbers of documents that were shown to the witness.   The government did not provide the witness's entire grand jury testimony, and the defendants are not entitled to receive all documentation of or work product regarding such information, including a witness's entire grand jury testimony.   See, e.g., United States v. Salerno, 868 F.2d 524, 542 & n.7 (2d Cir. 1989); LeRoy, 687 F.2d at 618, 619; Taylor, 17 F. Supp. 3d at 177.   Accordingly, the government opposes the defendants' manifestly improper request for production of the full transcript of the witness's grand jury testimony.

   <u>Request Nos. 22 and 23</u>: The government has produced information within this category by the disclosure letters dated June 15, 2017 and June 30, 2017.

   <u>Request Nos. 24–32, 34–35, 37–39, 42–44</u>: These requests are a sweeping attempt by the defendants to obtain prematurely a list of potential witnesses that the government may call at trial. As the Court recognized at the July 7 Conference, the defendants are not entitled to such information at this time.

   <u>Request Nos. 33 and 36</u>: These requests call for potential <u>Giglio</u> material and 18 U.S.C. § 3500 material for the government's trial witnesses. <u>See</u> <u>supra</u> at 15 n.5, 17-18.

   <u>Request Nos. 40 and 41</u>: These requests improperly call for potential <u>Giglio</u> material and 18 U.S.C. § 3500 material for non-witness declarants and informants acting in an undercover capacity, if any. <u>See</u> <u>supra</u> at 15 n.5, 17-18. The government is not required to produce 18 U.S.C. § 3500 material for individuals whom the government does not call as witnesses.

II. <u>Additional Requests by the Defendants</u>

 A. <u>The Nordlicht Letter</u>

   The government responds to Nordlicht's letter as follows (because Nordlicht did not number his requests, the government repeats their substance below):

  •  Nordlicht's first request, for any and all statements "that Nordlicht, his family, or both had a residence and/or were living in Israel for a period of time" does not call for statements subject to disclosure under <u>Brady</u>.

  •  Nordlicht's second request, which calls for "[a]ny and all statements (including attorney proffers) made by the individual identified as CW-1 in the June 21, 2016 Affidavit of Craig Minsky in Support of Application for Search Warrant . . . to the extent they do not contain

20

the specific representations that (1) Platinum Partners did not have sufficient 'assets' to meet the 'majority' of redemption requests and (2) Platinum Partners 'profited greatly' from 'fraudulent overvaluations,'" is an attempt, under the pretext of <u>Brady</u>, to obtain information to which the defendants are not now entitled, including the identity and all statements of a cooperating witness. <u>See</u> <u>supra</u> at 15 n.5, 17-18.   The government has not identified information within this category that is subject to disclosure under <u>Brady</u>.

- Nordlicht's final three requests seek statements, documents and information of "Bart Schwartz, as Court-appointed Receiver of certain Platinum Partners entities, or his employees, representatives, associates, agents, or advisors," regarding: (1) "any equity or debt position, derivative or hybrid security, and any other investment held by any Platinum Partners entity at any time"; (2) "valuations by Bart Schwartz . . . as well as his employees, representatives, associates, agents, or advisors, of any equity or debt position, derivative or hybrid security, and any other investment held by any Platinum Partners entity at any time"; and (3) "any aspect of Platinum Partners, including but not limited to its investments, operations, business practices, and/or financial condition."   Nordlicht Ltr. at 1.   This expansive request is an attempt by the defendants to obtain information, statements and documents outside the scope of Rule 16, under the pretext of <u>Brady</u>.   The government does not possess the requested statements, documents or information.[7]

---

[7]   At the July 7 Conference, counsel for Levy echoed this request.

B.  <u>The SanFilippo Letter</u>

The government responds to SanFilippo's letter as follows:

<u>Request No. 1:</u>   Statements "referencing Mr. SanFilippo's leave of absence from Platinum Partners . . . from May 2014 to July 2014 and then again from August 2014 to January 2015, and his subsequent resignation as CFO upon his return in January 2015" are not subject to disclosure under <u>Brady</u> because SanFilippo need not have been present at Platinum, nor have held the same title at Platinum, for the entirety of the charged time periods in order to be guilty of the crimes with which he is charged.

<u>Request Nos. 2, 4, 5 and 7:</u>   The government has produced the majority of the requested audit-related materials in Rule 16 discovery by letters dated May 11, 2017, June 16, 2017 and July 3, 2017, and will complete its Rule 16 productions of all audited financial statements and auditor communications and documents in its possession by the August 28, 2017 status conference in this case.

Many of the categories of documents demanded in the SanFilippo letter are not categorically subject to <u>Brady</u> disclosure.   For example, SanFilippo's Request 2 seeks "[a]ny and all statements and documents referencing or related to the disclosure of transactions and events alleged in the Indictment in the audited financial statements of any Platinum entity, as well as the review or approval of such transactions and events by auditors involved in the preparation of the audited financial statements, including the Beechwood transaction and all related-party loans referenced in paragraph 54 of the Indictment."   Request 4 seeks, <u>inter</u> <u>alia</u>, "[a]ny and all documents and statements" . . . "regarding Mr. SanFilippo's cooperation with [audits of Platinum]."   Request 5 seeks "[a]ny and all statements and documents provided by [a specific Platinum employee] referencing or reflecting the preparation of financial statements for

22

any Platinum entity, including PPVA, and specifically concerning the allegations in paragraph 65

of the Indictment," including "any and all statements and documents tending to support his

statements, including those showing that the final language contained in the 2014 audited

financial statements was drafted by or with the approval of the auditors."   Request 7 seeks

"[a]ny and all documents and statements from any accountant or auditor asserting that all intra-

party loan and other transactions and events alleged in the Indictment were properly accounted

for and disclosed in accordance with GAAP and all other laws and applicable guidelines in any

final audited financial statement issued by Platinum."   These requests are not categorically

subject to disclosure under Brady.   Any and all documents reflecting SanFilippo's purported or

apparent cooperation with one or more audits does not constitute evidence that is exculpatory as

to his participation in the charged crimes.   The undisputed involvement of auditing firms during

the time periods charged in the Indictment does not render the categories of demanded

documents Brady material.   The government has not identified information within this category

that is subject to disclosure under Brady.   Several of these requests also call for potential 18

U.S.C. § 3500 material.   See supra at 15 n.5.

> Request No. 3:   General principles of accounting, including pursuant to GAAP,

are not subject to disclosure under Brady.   In any event, the government has not identified

information within this category that is subject to such disclosure.

> Request No. 6:   To the extent that documents or statements within this category

exist and are in the government's possession, they will be produced to the defendants in Rule 16

discovery.   They will be provided in one or more productions by the government's Firewall

Team following the execution and so-ordering of the proposed stipulation and order relating to

production of potentially privileged materials.   The government still awaits information from the

defendants on relevant corporate privilege-holders to include in the stipulation and order, which the government understands is forthcoming.

Request Nos. 8 and 9:   SanFilippo seeks any and all statements or documents reflecting that SanFilippo's "job responsibilities did not include speaking with investors or potential Platinum investors and he never attempted to convince any investor to cancel or defer any redemption request," or that he "had no responsibility with respect to marketing or fundraising at Platinum and did not attempt to solicit investors."   Given that a defendant need not participate in every facet of a charged crime in order to be guilty of it, see United States v. Santana, 503 F.2d 710, 715 (2d Cir. 1974) (opining that "[o]ne need not participate in each act of a conspiracy in order to be a part of it," and "[a] single act may suffice, if that act is one from which knowledge of the general conspiracy can be inferred," and citing cases), the government has not identified any documents within this category that are subject to Brady disclosure.

Request No. 10:   The category of "[a]ny and all documents and statements related to or referencing that the PPNE 'investment' . . . was a loan, not an investment, and therefore it was appropriate for Platinum to repay lenders ahead of making investor redemptions," to the extent any such documents exist, would not be subject to disclosure under Brady because, inter alia, the Indictment does not allege that PPNE investors were, without exception, paid ahead of PPVA investors.   It alleges, instead, that Nordlicht, Levy, Landesman, SanFilippo and Mann, together with others, "agreed to selectively pay some PPNE investors ahead of others, contrary to the specific terms of the PPNE notes."   See Ind. ¶ 64.   Moreover, PPNE is defined in the indictment as "short-term note offerings." Id. ¶ 9.

24

C.  The Mann Letter

The government responds to Mann's letter as follows:

Request No. 1:   The government has not identified information within this category that is subject to disclosure under Brady.

Request No. 2:   Any and all documents and information "reflecting that Platinum or an individual acting on behalf of Platinum informed an investor or prospective investor (or their representatives) that a Platinum fund had limited liquidity; PPNE funds would be used at least in part for PPVA's general obligations; PPVA sought or obtained loans from related parties; or Platinum selectively paid some investors ahead of others" are not categorically subject to disclosure under Brady.   The government has not identified information within this category that is subject to disclosure under Brady.

Request No. 3:   None of the requested categories of statements is subject to disclosure under Brady.   See supra at 25 (response to Request Nos. 8 and 9 of SanFilippo).

D.  The Small Letter

The government responds to Small's letter as follows:

Request Nos. 1 and 2:   The government has not identified information "tending to show . . . that Mr. Small did not engage in any improper conduct [or] . . . acted . . . without criminal intent," or that he "did not have knowledge of or participate in" the schemes with which he is charged.   Information "that individuals other than Mr. Small were responsible for" schemes alleged in the Indictment is not Brady material.   See supra at 25 (response to Request Nos. 8 and 9 of SanFilippo).

Request Nos. 3 and 5:   These requests, comprising six sub-prongs, are another attempt to uncover the identities of witnesses who have assisted with the government's

25

investigation and seeks the statements of witnesses under the pretext of a <u>Brady</u> request.   The requested information, to the extent it exists, is not subject to disclosure under <u>Brady</u> given the allegations in the Indictment regarding the charged Black Elk bond scheme, including that the Black Elk Bondholders were defrauded as to the material fact of the amount of bonds Platinum controlled in the vote.   This request also calls for potential 18 U.S.C. § 3500 material.   <u>See</u> <u>supra</u> at 15 n.5.

Request No. 4:   The government has not identified information within this category.

Request No. 6:   <u>See</u> <u>supra</u> at 25 (Request No. 6 of SanFilippo).   The government has not identified information within this category that is subject to disclosure under <u>Brady</u>.

Request No. 7:   The government has not identified information within this category that is subject to disclosure under <u>Brady</u>.

Request No. 8:   The information requested regarding the Indenture Trustee or Tabulating Agent, to the extent any exists, would not be subject to disclosure under <u>Brady</u> because the existence of information "tending to suggest" any failure by a non-party "to ensure compliance with the terms of the indenture and/or Consent Solicitation," would not amount to exculpatory information.

Request Nos. 9 and 10:   The government has not identified any information within these categories.

E.  <u>The Shulse Letter</u>

The government responds to Shulse's letter as follows:

Request No. 1:   The government refers Shulse to its responses to Levy's requests, <u>supra</u>.

26

Request Nos. 2 and 3:   These requests prematurely call for potential Giglio material and 18 U.S.C. § 3500 material for the government's trial witnesses.   See supra at 15 n.5, 17-18.

Request No. 4:   The government has produced Shulse's statements by discovery letters dated January 12, 2017 and July 6, 2017.   Statements that Shulse's "desire was to restore the financial health of Black Elk," to the extent there are any, are not Brady if they are untethered to his participation in the scheme to defraud the Black Elk Bondholders.   The government has not identified information within this category that is subject to disclosure under Brady.

Request Nos. 5, 7 and 8:   See supra at 25 (Request No. 6 of SanFilippo).   The government has not identified information within these categories that is subject to disclosure under Brady.

Request No. 6:   Information "reflecting that, at the time of the [relevant] transaction, Black Elk's assets exceeded its liabilities," to the extent any exists, is not subject to disclosure under Brady because such fact does not bear on the defendants' guilt of the crimes charged.

Request Nos. 9 and 10:   See the government's response to Request No. 8 of Small, supra at 28.

.   Request Nos. 11 and 12:   See the government's response to Request Nos. 3 and 5 of Small, supra at 27.

F.  Levy's July 14 Letter

Levy's July 14 Letter requested that the government "confirm that [it] . . . will produce forthwith all materials it obtains from the SEC, including, but not limited to, all transcripts, memoranda, notes and files concerning any audit or interview conducted by the

SEC." Levy's July 14 Ltr. at 1. The government has produced, in Rule 16 discovery, materials it obtained from the SEC by discovery letters dated May 11, 2017 and July 27, 2017. <u>See</u> Gov't's Reply Mem. of Law in Support of App. To Intervene & To Stay Civ. Proceedings ("Gov't Reply"), No. 16-CV-6848 (DLI), ECF Docket No. 84, at 9 ("[I]n compliance with its criminal discovery obligations, the government will timely produce to the defendants all materials it has received from the SEC pursuant to a sharing order that are discoverable under Federal Rule of Criminal Procedure 16."); Mem. & Order dated July 7, 2017, No. 16-CV-6848 (DLI), ECF Docket No. 217, at 10 (citing Gov't Reply).

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that: (1) the defendants' motion for a bill of particulars should be denied in its entirety and (2) through the extensive materials produced by the government in discovery and the disclosure letters dated June 15, 2017, June 23, 2017 and June 30, 2017, the government is in compliance with its obligations

to disclose information pursuant to <u>Brady</u> and its progeny, and the defendants' disclosure requests to which the government objects should be denied.

Dated: Brooklyn, New York
July 28, 2017

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York

_____/s/_____
Alicyn L. Cooley
Lauren H. Elbert
Sarah M. Evans
Assistant U.S. Attorneys
(718) 254-6389/7577

Cc:    Clerk of the Court (DLI)
All Counsel (By ECF)