# EXHIBIT 1

# COMPLIANCE POLICIES AND PROCEDURES MANUAL

PLATINUM MANAGEMENT (NY) LLC

PLATINUM CREDIT MANAGEMENT LP

PLATINUM LIQUID OPPORTUNITY MANAGEMENT (NY) LLC

BAYBERRY CF MANAGEMENT LLC

MARBRIDGE MANAGEMENT II LLC

250 West 55th Street 14th Floor
New York, NY 10019

June 2015

DOC ID - 22589788.13

Confidential Grand Jury Materials

## SECTION IV

## BOOKS AND RECORDS

 4.1 <u>Maintenance Requirements</u>.

The Firm shall preserve its books and records for the time periods provided in Rules 204-2(e) and (f) under the Advisers Act, which requires that all records be retained for at least six (6) years after last used, the first two (2) of which should be in the offices of the adviser (or with a permitted service provider).

Books and records may be maintained in an electronic format if done in accordance with Rule 204-2(g) under the Advisers Act. Such records must be:

- Arranged in a way to permit the immediate location of any particular record;

- Arranged in a way that enables the Firm to enlarge, print or copy the information at request of the SEC;

- Stored separately from the original, one other copy of the computer storage medium for the time required; and

- Shall be stored in a way to ensure the maintenance and preservation of, and access to, records so as to reasonably safeguard records from loss, alteration, or destruction.

The Firm shall prepare and keep current the books and records relating to its investment advisory business as required by Rule 204-2 under the Advisers Act. A chart setting forth the books and records required to be maintained under the Advisers Act is attached as Exhibit 3 hereto. Such chart also sets forth the department within the Firm that is responsible for each record. The following is a summary of the books and records that are required to be kept by the Firm:

- Formation records of the adviser, including, as applicable, an adviser's organizational documents such as its articles of incorporation, charters, bylaws, partnership agreements and amendments, certificates of formation or incorporation, limited liability company agreements, and board minutes.

- Accounting records of the adviser, including general and auxiliary ledgers, journals, trial balances, checkbooks, and bank statements.

- Client records, including client contracts (e.g., limited partnership agreements), subscription agreements, investment advisory agreements, and any powers of attorney.

- Securities transaction records, including trade tickets (which must indicate, among other information, whether a trade was entered pursuant to discretionary authority), confirmation statements, and other trade reports.

- Communication records, including marketing materials, client (or investor) inquiries, client (or investor) complaints, customized research

- reports and other materials received from third parties and, if applicable, records supporting the use of performance in advertisements.

Confidential Grand Jury Materials PPEDNY00000709

- Compliance related records, including generally copies of compliance manuals, proxy voting information, gift log and reports by Employees of their personal securities holdings and transactions.

In addition, the Advisers Act provides the SEC with authority to examine all books and records held by an adviser, not just those required to be maintained pursuant to Rule 204-2. Specifically, Section 204 states that "all records" of an investment adviser are "subject at any time or from time to time, to reasonable periodic, special, or other examination by representatives of the Commission as the Commission deems necessary or appropriate in the public interest or for the protection of investors." Thus, during an SEC compliance inspection, the Firm may be asked and expected to produce any records that it maintains.

*Pending Legal Matters.* However, notwithstanding the time frames set forth in Exhibit 3, the Firm may be required to maintain books and records for a longer period of time if there is a "pending legal matter." A "pending legal matter" includes any existing, anticipated, or threatened investigation or other legal action concerning the Firm, any Fund or other client, or any Employee acting in his or her capacity as such. Pending legal matters include, but are not limited to, the following occurrences or events that are known or anticipated by the Firm, by any of the Funds or by any Employees:

- Correspondence making a demand or threatening litigation;

- Service of a civil complaint, criminal complaint or indictment;

- Service of a subpoena; or

- An investigation by any federal or state regulatory authority (such as an informal or formal investigation by the SEC, the CFTC, the Department of Justice, or a state Attorney General; a federal or state grand jury investigation; a tax audit by the Internal Revenue Service or state tax authorities, etc.) or by an exchange or a self-regulatory organization (such as FINRA or the CME).

If a "pending legal matter" arises, **all records related to the matter must be maintained until the Chief Compliance Officer determines that the records are no longer needed or until the end of the scheduled retention period.** (This applies even if the retention periods in Exhibit 3 have expired.)

Any Employee who believes that the retention period governing any type of record relating to a pending legal matter should be extended or suspended should contact the Chief Compliance Officer.

4.2    <u>Email and Instant Message Policy</u>.

(a)    *General*. All electronic communications, including e-mails and instant messages ("<u>IMs</u>"), that concern Firm business, or is to or from clients or investors in client funds, must be sent and received from or to a Firm e-mail address or Firm-approved instant messaging ("IM") service. Firm personnel may not use a personal email address to conduct Firm business or send communications to clients and investors in client funds. The Firm provides every person employed by the Firm with a Firm email address and enables such Employees to gain electronic access to the Firm's facilities from outside the office through secure remote connections and mobile devices. Employees who use both a Firm email address and a personal email address, particularly on a mobile device, must take extra care to ensure that the Firm email address is used to conduct all Firm business.

Access to the network is limited to Employees, and Employees must not disclose their individual access passwords to other Employees or third parties. Employees should not leave their computers logged on and unattended for extended periods of time.

Subject to certain exceptions, the Firm is required to maintain records of all written communication received and sent by the Firm relating to (i) any securities recommendations made or proposed to be made and any advice with respect to securities that is given or proposed to be given, (ii) any receipt, disbursement or delivery of funds or securities, and (iii) the placing or execution of any order to purchase or sell any security. Accordingly, all emails relating to the foregoing matters shall be saved by the Firm in an electronic medium.

The Firm has entered into agreements with Global Relay (a service provider that specializes in providing electronic storage of emails and other electronic communications) pursuant to which Global Relay will maintain all email and electronic communications sent and received through the Firm's network server. All emails and IMs will be archived and copied in a read-only format for at least six (6) years, even those that appear to have been deleted from a recipient's electronic mailbox. Global Relay provides the Firm with a web-based interface so that all emails and electronic communications sent and received through the Firm's network server may be searched and promptly retrieved by the Firm.

The Firm reminds its Employees that they have no expectation of privacy in their use of the Firm's systems or devices, and advises them to use discretion when using the Firm's e-mail system for business or personal matters and to minimize the use of the Firm's systems for personal matters. In addition, the email and computer systems belong to the Firm and access is granted solely at the discretion of the Firm. In using the Firm's email and computer systems, Employees waive any expectation of, or right to, privacy with regard to such use.

Emails and IMs have the same force and effect as written documents, and every Employee needs to consider them in that light. Restraint should be exercised and care should be taken before e-mail messages and IMs are created and sent intra-firm, inter-firm to clients or other individuals outside the Firm. Employees should not use adjectives and adverbs unnecessarily or make hasty or subjective judgments about the Firm, Employees, competitors, financial products, etc. Employees should think about whether placing their e-mail or IM on the front page of *The New York Times* (whether in context or not) would bring criticism to, reflect poorly on or cause embarrassment to the Employee or the Firm – if the reasonable answer to that questions would be "yes," the Employee should not send the message.

All Employees are prohibited from participating in chat room sessions, group e- mail, bulletin board postage or other on-line forums without the express prior approval of the Chief Compliance Officer.

Storing, transmitting or viewing certain electronic communications may lead to allegations against the Firm and the Employee of illegal harassment, defamation and related claims. Even if such conduct does not rise to the level of illegal harassment, it may violate the Firm's anti-harassment policy and give rise to disciplinary action up to and including termination. Employees may not use the Firm's electronic communications systems to store or transmit electronic images or text that includes pornography, ethnic slurs, racial epithets or offensive references to an individual's gender, race, religion, national origin, sexual orientation or disability. If an Employee receives any such materials, the Employee should promptly delete them.

(b) *External Email*. The Firm does not permit Employees to use external email accounts for business purposes.

(c) *Instant Messaging Systems*. The Firm permits Employees to use firm-authorized IM services through the Firm's computer network for Firm business; provided that the IM services are backed up and archived by Global Relay and are approved by the Chief Compliance Officer and Chief

Confidential Grand Jury Materials                                                                                               PPEDNY00000711

Technology Officer.  In using such IM system, Employees waive any expectation of, or right to, privacy with regard to such use.

(d)     *Retention of Emails and IMs*.  The Firm saves all emails and IMs sent and received through its systems in an electronic medium for a period of six (6) years.

4.3     <u>Compliance</u>.

The Chief Compliance Officer shall examine the Firm's records on a periodic basis to ensure compliance with record keeping and retention requirements.  The Chief Compliance Officer may periodically review Employee electronic communications for compliance with SEC rules and Firm policy.  These measures may include accessing Employee electronic mailboxes to review individual messages and conducting keyword searches.  The Firm has the right to monitor all activities involving its computers and the computer system.  The Firm may, at its sole discretion, access any and all information on any computer or any portion of the computer system.  The Firm's information systems and all messages sent or retrieved electronically are the property of the Firm.  All information created on, or with, Firm property belongs to the Firm and accordingly, Employees shall have no expectation of privacy in using email and/or IM services and the Firm's systems and devices.  The Firm has no obligation to notify any Employee that his or her emails or IMs have been accessed and reviewed for any of the foregoing purposes.  In certain circumstances, regulatory authorities may be given access to the Firm devices and computer system, or the information contained therein.

4.4     <u>SEC Compliance Inspections</u>.

As a registered investment adviser, the Firm expects the SEC to conduct periodic on-site inspections of the Firm's operations.  The inspection may be announced, in which case the SEC will likely forward to the Firm a list of documents for inspection upon arrival, or unannounced.  The inspection may last a few days or significantly longer.  During the inspection, the SEC staff will likely review the Firm's books and records, speak with various Firm personnel, and perhaps review specific operations at the Firm.

When any Employee is notified of an actual or pending SEC inspection, the Employee must contact the Chief Compliance Officer immediately.  The Chief Compliance Officer will be responsible for conducting the Firm's response to the inspection, including coordinating the production of documents and interview requests.  The Chief Compliance Officer and/or the Firm's legal counsel should participate in any interviews conducted by the SEC staff with Employees and complete necessary requests for confidentiality under the Freedom of Information Act.

Employees should treat the SEC staff with courtesy and respond fully, promptly and honestly to all requests and questions.  If an Employee has a question as to the propriety of a request or question, the Employee may respond to an SEC examiner by politely stating that the Employee will consult with the Chief Compliance Officer or the Firm's counsel before providing the information.  At the conclusion of the inspection, the Chief Compliance Officer and the Firm's counsel will request, and participate in, an exit interview with the SEC staff.  The exit interview will provide the Firm with an opportunity to address any concerns raised by the staff, clarify any misunderstandings, and, where appropriate, undertake immediate corrective action.

If an Employee has any questions regarding the SEC's compliance inspection process, the Employee should contact the Chief Compliance Officer.

Confidential Grand Jury Materials                                                                                      PPEDNY00000712

4.5     Regulatory and Other Inquiries.

Because the Firm operates in a highly regulated industry, it may receive inquiries from a variety of governmental, regulatory or self-regulatory agencies or authorities such as the SEC, the CFTC, the U.S. Department of Treasury, the U.S. Department of Labor, the Department of Justice, state agencies and other local authorities. All responses to such inquiries must be approved by the Chief Compliance Officer.

If an Employee is contacted by a government official or other industry regulator (such as a representative from FINRA), whether by telephone, letter or office visit, such Employee may not, *under any circumstances*, engage in discussions with the contacting party, or take any other action in response to such contact, other than (i) advising the contacting party that all Employees are under instructions to refer all such inquiries to the Chief Compliance Officer and (ii) promptly notifying the Chief Compliance Officer. (This does not apply to lawful communications, other than on behalf of the Firm, with any governmental or regulatory body or official regarding a possible violation of any U.S. fair employment practices law. You have the right to contact any such agencies or persons for any such purpose.)

## SECTION V

## SUBSCRIPTIONS TO FUNDS

The Firm manages the Accounts on a discretionary basis. "Discretion" is not defined in the Advisers Act. However, the Firm will be considered to exercise investment discretion over an Account if it can effect transactions for the client without first having to seek the client's permission. In order to protect the Firm, Employees involved in the account opening process must ensure that procedures are followed when opening advisory accounts.

Additionally, as the Firm ceases to act as investment adviser over terminated Accounts, Employees need to follow a process to close Accounts.

5.1     Summary Procedures for Accepting a New Subscription into one of the Funds.

(a)     A prospective investor contacts the Firm and requests information on one or more of the private investment funds managed by the Firm (each, a "Fund" and collectively, the "Funds"). After forming a reasonable basis for belief that a prospective investor is qualified to invest in the applicable Fund (the qualifying criteria for the Funds are set forth 5.1(d) below and in the subscription agreement for each Fund), the Chief Marketing Officer (or his or her designee) is authorized to forward the prospective investor the following documents:

(i)     With respect to domestic Funds:

(A)     The Firm's Marketing Booklet;

(B)     Private Placement Memorandum;

(C)     Limited Partnership Agreement;

(D)     Subscription Agreement; and

(E)     Form ADV, Part 2 for the Firm.

Confidential Grand Jury Materials                                                                                                            PPEDNY00000713