UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

                                                                        16 CR 640 (BMC)

       - against -

MARK NORDLICHT,
DAVID LEVY,
URI LANDESMAN,
JOSEPH SANFILIPPO,
JOSEPH MANN,
DANIEL SMALL and
JEFFREY SHULSE,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

                                                                        RICHARD P. DONOGHUE
                                                                        United States Attorney
                                                                        Eastern District of New York
                                                                        271 Cadman Plaza East
                                                                        Brooklyn, New York 11201

ALICYN L. COOLEY
LAUREN H. ELBERT
PATRICK T. HEIN
SARAH M. EVANS
Assistant U.S. Attorneys
(Of Counsel)

1

TABLE OF CONTENTS

| | |
|---|---:|
| FACTUAL BACKGROUND | 3 |
| ARGUMENT | 5 |
| I. The Motion to Dismiss Should Be Denied | 5 |
|    A. Applicable Law Regarding Motions to Dismiss an Indictment | 5 |
|    B. Discussion | 7 |
|       1. The Motion's Arguments Dispute Issues to Be Resolved by a Jury at Trial and Provide No Basis for Dismissal | 7 |
|       2. The Government's Allegations in Paragraph 67 Reflect a Reasonable Inference Drawn From the Evidence | 8 |
|       3. The Defendant's Challenge to the Indictment Fails as a Matter of Law | 11 |
|       4. Even If the Government Had Mischaracterized the December 2015 Emails, Dismissal Would Not Be Justified Under the Harmless Error Doctrine | 14 |
| II. The Defendants Have Failed to Meet their Burden for Inspection of Grand Jury Materials | 15 |
|    A. Applicable Law | 15 |
|    B. Discussion | 16 |
| CONCLUSION | 18 |


PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the joint motion of defendants Mark Nordlicht, David Levy, Uri Landesman, Joseph Mann and Daniel Small (collectively, the "defendants") to dismiss the Indictment. See ECF Docket No. 297 (Nordlicht's Motion to Dismiss) (the "Motion"); ECF Docket Nos. 298, 299 & 301 (letters on behalf of defendants Landesman, Levy, Mann and Small, respectively, joining Nordlicht's Motion).[1] In the Motion, the defendants argue that the government's characterization of certain email correspondence, as summarized in paragraph 67 of the 107-paragraph Indictment, was misleading, tainted the grand jury's decision to indict, and thus warrants dismissal of the Indictment. Alternatively, the defendants argue that the Court should inspect the record of the grand jury proceedings leading to the Indictment for additional evidence of misconduct.

The government categorically denies that there was any misconduct before the grand jury. Moreover, the defendants' Motion falls far short of establishing any entitlement to the requested relief. For the reasons set forth below, the Motion should be denied.

FACTUAL BACKGROUND

On December 20, 2016, a grand jury empaneled in the Eastern District of New York returned the Indictment in this case, which, in pertinent part, alleged that, in or about and between November 2012 and December 2016, Mark Nordlicht, the Chief Investment Officer and a founder

---

[1] The Motion does not challenge the Indictment's allegations as to any defendant other than Nordlicht. Even assuming arguendo that there was some merit to Nordlicht's argument regarding the allegations in paragraph 67 of the Indictment and their effect on the grand jury's assessment of Nordlicht's scienter, any error involving that paragraph would not have tainted the grand jury's decision to indict the other six defendants, or its decision to charge Nordlicht with the Black Elk Bond scheme. Neither Nordlicht nor the other defendants even attempt to argue as much. Because, as set forth herein, Nordlicht's challenge fails on its merits and as a matter of law, the issue of the other defendants' joinder in the motion is likely to be moot. In the event the Court is inclined to grant Nordlicht's motion, however, the government respectfully requests the opportunity to submit a supplemental brief on this narrow issue.

3

of Platinum Partners L.P. ("Platinum"), together with his co-defendants, perpetrated a scheme to defraud investors and prospective investors through material misrepresentations and omissions relating to, among other things: (i) the performance of some of the assets held by the Platinum Partners Value Arbitrage Fund, L.P. ("PPVA"); (ii) PPVA's liquidity; (iii) the purpose of certain short-term, high-interest-rate note offerings issued by Platinum and the use of the funds raised thereby; (iv) PPVA's preferential redemption process; and (v) related party transactions involving PPVA and another Platinum fund, Platinum Partners Credit Opportunities Master Fund, L.P. ("PPCO"). Ind. ¶¶ 25, 42. The Indictment also charged a second scheme to defraud the holders of certain bonds issued by Black Elk Energy Offshore Operations Inc. (the "Black Elk Bond Scheme"). Ind. ¶¶ 73-87.

Of the 107 paragraphs in the Indictment, the first 87 generally introduce and describe the charged fraudulent schemes and, at various points, summarize the content of email correspondence, documents and other evidence relevant to the charged offenses. As is pertinent to the instant Motion, paragraph 67 of the Indictment summarizes a chain of email correspondence among Nordlicht, Landesman and an individual identified as Co-Conspirator 1 in December 2015 (the "December 2015 emails"), and alleges as follows:

> On or about December 13, 2015, the defendants MARK NORDLICHT and URI LANDESMAN, as well as Co-Conspirator 1, engaged in an email exchange that contemplated NORDLICHT and Co-Conspirator 1 fleeing from the United States and illustrated their knowledge and awareness of the fraudulent scheme perpetrated on Platinum's investors and prospective investors. Specifically, Co-Conspirator 1 sent an email to NORDLICHT that stated: "Don't forget books. Assume we are not coming back to ny[.] Just to be safe. Depends on Miami[.] We can fly straiggt [sic] to europe from miami on Tuesday[.] Take passport." In response, NORDLICHT asked for $2.5 million to pay Platinum's brokers and noted that he was ready to take $7.5 million from a second mortgage on his house to deal with the liquidity crisis. A few hours later, NORDLICHT sent another email to Co-Conspirator 1 that stated, in part: "Am on my way to jfk with kids for their 6 pm flight to Israel. [Co-Conspirator 2] ducking my calls . . . [My wife] is

> literally making me get on Israel flight if we don't connect and agree what we are doing." NORDLICHT then forwarded his email exchange with Co-Conspirator 1 to LANDESMAN. Shortly thereafter, LANDESMAN responded: "You should get on the flight if there is no bridge [loan], probably even if there is, [Co-Conspirator 1] didn't set up any meetings for this week? We need to go through the mehalech of how we are going to share this with clients and employees, going to be very rough, big shame . . . it was nice seeing you, hopefully the girls will reacclimate [sic] quickly.

Ind. ¶ 67.

## ARGUMENT

I. The Motion To Dismiss Should Be Denied

    A. Applicable Law

The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De la Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citations omitted); see also United States v. Dyman, 739 F.2d 762, 768 (2d Cir. 1984) (dismissal of an indictment is "the most drastic remedy, and thus is rarely used"). "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).

The Federal Rules of Criminal Procedure require only that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). An indictment that tracks the language of the statute is sufficient to meet these notice requirements. See United States v. Flaharty, 295 F.3d 182, 198 (2d

5

Cir. 2002) ("[A]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusations against him . . . state time and place in approximate terms."); United States v. Citron, 783 F.2d 307, 314 (2d Cir. 1986) ("Where . . . an indictment tracks the statutory language and specifies the nature of the criminal activity . . . it is sufficiently specific to withstand a motion to dismiss."); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.").

An indictment is not subject to pre-trial challenge based on the quality or quantity of the evidence. United States v. Williams, 540 U.S. 36, 54 (1992); see also United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context[.]"). An indictment may, however, be subject to dismissal as a remedy where prosecutorial misconduct resulted in "a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." Williams, 504 U.S. at 46 (internal quotation marks omitted). In such circumstances, dismissal is only warranted where the misconduct "substantially influenced the grand jury's decision to indict or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 255-56 (1988) (internal quotation marks omitted). Additionally, to dismiss under such circumstances, the trial court must find that violation has "so compromised . . . the structural protections of the grand jury . . . as to render the proceedings fundamentally unfair." Id.

On a pre-trial motion to dismiss, the court must accept all factual allegations in the indictment as true, and must read them in the light most favorable to the government. Alfonso, 143 F.3d at 776-77; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952).

B. Discussion

1. The Motion's Arguments Raise Merely Factual Issues To Be Resolved by a Jury at Trial and Provide No Basis for Dismissal

The defendants neither argue that the Indictment fails to satisfy the pleading requirements of Rule 7 of the Federal Rules of Criminal Procedure, nor that it fails to adequately allege the charged offenses. Instead, the Motion claims that the allegations in paragraph 67 of the Indictment, which characterize the December 2015 emails as depicting Nordlicht's contemplating fleeing from the United States, were sufficiently "insidious," "outrageous," "duplicit[ous]" and "disingenuous" to amount to "flagrant misconduct" and justify dismissal of the Indictment. See Mot. at 1-2, 7-8. This claim is baseless. An indictment is not subject to dismissal simply because the defendants dispute an allegation contained therein, nor has the government committed flagrant misconduct any time a defendant disagrees with its characterization of evidence. The time and place to resolve such a dispute is at trial—not on a pre-trial motion to dismiss.

The allegations in paragraph 67 present a reasonable inference drawn from the December 2015 emails. While the defendants disagree with that inference, courts have held that disagreement does not transform a reasonable inference by the government into misconduct, let alone "flagrant misconduct." See United States v. Bonventre, 646 F. App'x 73, 88 (2d Cir. 2016) (observing, in context of appeal alleging misconduct in connection with government summation that defendant's "disagree[ment] with the strength of the government's inferences does not establish government misconduct"); United States v. Salameh, 152 F.3d 88, 138 (2d Cir. 1998) (government entitled to suggest reasonable inferences to trial jury on summation). It is no surprise

7

that the defendants disagree with the Indictment's allegations. At trial, the defendants presumably will challenge many, if not all, of the inferences the government has drawn from the evidence in this case, including that they participated at all in the charged fraudulent schemes. Indeed, convincing the jury to adopt or reject various inferences is likely to be one of the parties' paramount tasks. The appropriate venue for challenging the government's interpretation or characterization of evidence, however, is at trial, not on a motion to dismiss. See United States v. Buck, No. 13-CR-282 (VM), 2017 WL 4174931, at *5, *8 (S.D.N.Y. Aug. 28, 2017) (denying defendant's motion to dismiss where defendant attacked the indictment's characterizations of certain of his statements because "[w]hether these accusations are true or what intent underlay [the defendant's] statements or actions are precisely the kinds of evidentiary questions that should be evaluated by a jury"). The defendants' arguments in no way equate to a showing that the "structural protections of the grand jury [were] so compromised as to render the proceedings fundamentally unfair[;]" accordingly, the Motion fails to justify dismissal on its face. Bank of Nova Scotia, 487 U.S. at 257.

> 2. The Government's Allegations in Paragraph 67 Reflect a Reasonable Inference Drawn From the Evidence

A review of the Indictment demonstrates that the government has engaged in no duplicitous or disingenuous conduct in connection with the allegations in paragraph 67, but instead has premised those allegations upon a reasonable inference drawn from the evidence. The defendants argue that the fact that Nordlicht was living part-time in Israel at the time of the

8

December 2015 emails completely transforms their meaning, and even assert that Nordlicht's maintaining a residence in Israel at that time is somehow "exculpatory."[2] Mot. at 2. These arguments defy both the evidence and common sense.

At the time of the December 2015 emails, Platinum was facing a severe liquidity crisis. As Nordlicht's own words in the December 2015 emails reflect, Nordlicht was considering taking out a second mortgage on his home in order to provide Platinum with an influx of cash, and the fund was so desperate that it needed an influx of funds just to meet the next day's margin requirements. See Mot. Ex. A ("[I] am ready to take 7.5 from second mortgage . . . but I need 2.5 tomorrow to deal with margin. . . . Can't lose swap relationships or we are done . . . we have immediate issue tomorrow morning."). In this context of Platinum's peaking liquidity crisis, it is reasonable, if not unavoidable, to interpret Co-Conspirator 1's email instructing Nordlicht to "assume we won't be coming back to NY," "[j]ust to be safe," and to "[t]ake passport," as suggesting a contingency plan of flight in the event they were unable to raise more cash. Nordlicht's subsequent responses to Co-Conspirator 1, expressing that if he did not receive the necessary funding "we are done," and threatening that he would get on the plane to Israel if he did not "connect" with Co-Conspirator 1 and agree with him on a plan, likewise fairly can be interpreted as expressing Nordlicht's intention to flee from the United States—potentially permanently—in the event of the fund's collapse. Nordlicht's statements about traveling to Israel

---

[2] The defendants claim that Nordlicht was "living in Israel" at the time of the November 2015 emails, but cite several media reports reflecting that Nordlicht began "splitting his time" between New York and Israel and residing "part-time in Israel." Mot. at 4. The defendants also state that Nordlicht was in the midst of a worldwide marketing campaign at the time of the November 2015 emails. Id. The Motion does not detail what portion of his time Nordlicht claims he was spending in Israel, the United States, or elsewhere. To the government's knowledge, the defendant retained ownership of several homes in the United States at the time of the December 2015 emails, and he was ultimately arrested at his home in New Rochelle, New York in December 2016.

9

were not made in the context of an innocuous email about holiday plans—he expressly stated that he would travel to Israel "if" he and Co-Conspirator 1 did not "connect and agree on what we are doing." The government's interpretation of these emails as reflecting Nordlicht's intent to flee is accordingly reasonable. Furthermore, this interpretation is corroborated by Landesman's reply, as he appears to have interpreted the email similarly—advising that Nordlicht "should get on the flight if there is no bridge, even if there is . . . We need to go through the mehalech of how we are going to share this with clients and employees, going to be very rough, big shame." Based on Landesman's response, he, like the government, understood that Nordlicht's imminent potential departure to Israel would be in response to the anticipated collapse of the fund.

        While Nordlicht argues that the fact that he and his family lived in Israel at that time negates any inculpatory interpretation of the December 2015 emails, common sense dictates otherwise.[3] Any reasonable individual seeking to flee the United States would prefer to select a destination where he or she had housing, family ties, and a lawful basis to enter. That Nordlicht was residing in Israel at the time by no means renders it an impossibility that he might also seek to avoid liability in the United States by relocating to Israel and remaining there on a permanent basis.

        In sum, the government stands by its allegations in paragraph 67 and will present evidence in support of the Indictment's allegations at trial.

---

[3] Straining credulity, Nordlicht also alleges that the government's insertion of "[sic]" in its quotation from Landesman's email amounted to an "affirmative[] alter[ation]" of evidence. Mot. at 7. To the contrary, the universal meaning of "[sic]" is to acknowledge what appears to be an unusual or grammatically or semantically erroneous usage in a quotation <u>without</u> altering its text. <u>See</u> Oxford English Dictionary Online, "sic," <u>available at</u> https://en.oxforddictionaries.com/definition/sic (defining sic as "used in brackets after a copied or quoted word that appears odd or erroneous to show that the word is quoted exactly as it stands in the original").

### 3. The Defendant's Challenge to the Indictment Fails As a Matter of Law

The Motion should also be denied because it fails to allege a defect in the Indictment that would warrant dismissal. "Complaint[s] that the prosecutor's presentation was incomplete or misleading," such as those raised here, have been held not to supply a basis to dismiss an indictment. Williams, 504 U.S. at 53-54; see also United States v. Heredia, No. 02-CR-1246 (SWK), 2003 WL 21524008, at *8 (S.D.N.Y. July 3, 2003) ("[D]efendant's argument that the indictment was based on misleading information, even if correct, would not provide a ground to dismiss it."); United States v. Howard, 216 F.3d 1074, at *3 (2d Cir. 2000) (unpublished decision) ("A district court cannot dismiss an indictment because the prosecution presented unreliable, misleading or incomplete evidence to the grand jury."); United States v. Mejia, No. 11-CR-1032 (PAE), 2013 WL 3212299, at *3 (S.D.N.Y. June 26, 2013) (same); see also United States v. Jones, 164 F.3d 620, 1998 WL 708952, at *2 (2d Cir. 1998) ("A defendant's complaint that a government agent gave the grand jury misleading testimony—including an inaccurate summary of evidence—is in essence a challenge to the reliability or competence of the evidence and . . . will not support dismissal.").

In the Motion, the defendants assert that the government distorted the email exchange summarized in paragraph 67, engaged in "knowing and reckless misleading of the grand jury," and concealed the purportedly "crucial exculpatory fact" that Nordlicht was residing in Israel, at least on a part-time basis, in December 2015. Mot. at 1-2, 5-6. Alleging that the government misled the grand jury by omitting a fact that a defendant claims is exculpatory is precisely the type of argument the Supreme Court has held to be insufficient to justify dismissal. Williams, 504 U.S. at 54-55 ("Review of facially valid indictments on . . . the grounds . . . that the prosecutor's presentation was incomplete or misleading . . . would run counter to the whole history

11

of the grand jury institution, and neither justice nor the concept of a fair trial requires it." (internal quotation marks omitted)).   Therefore, the Motion should be denied as a matter of law.

None of the cases cited by the defendants requires a contrary outcome.  As an initial matter, the primary cases upon which the defendants rely for the proposition that dismissal is the appropriate remedy for the conduct they allege—United States v. Hogan, 712 F.2d 757, 759 (2d Cir. 1983); United States v. Bari, 750 F.2d 1169, 1176 (2d Cir. 1984); United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir. 1972); United States v. Hill, No. S1 88 Cr. 154, 1989 WL 47288, at *6-*7 (S.D.N.Y. Mar. 22, 1989); and United States v. Vetere, 663 F. Supp. 381, 383-387 (S.D.N.Y. 1987)—all predate the Supreme Court's decision in Williams, and therefore do not apply the current legal framework.  In each of these cases, the courts relied upon a broad interpretation of their supervisory power to dismiss indictments in response to perceived prosecutorial misconduct, including where the prosecutor is alleged to have misled the grand jury.  That supervisory power was considerably circumscribed by Williams.

Moreover, the cases cited by the defendants in which indictments were dismissed are all distinguishable as they involve conduct significantly more egregious than the conduct alleged by the defendants.  In Hogan, in response to a grand juror's question, the prosecutor characterized the defendant as a "real hoodlum" who should be indicted "as a matter of equity." 712 F.2d at 760.  The prosecutor also testified as an unsworn witness, presenting facts to the grand jurors about the defendant's involvement in unrelated crimes, and suggesting that he had information linking the defendant to uncharged offenses relating to bribes paid by gambling organizations.  Id.  The agents who served as testifying witnesses before the grand jury in that case were also shown to have presented false testimony.  Id.  Here, the defendants have disputed the government's characterization of a single email chain.  Even crediting their claims, the

12

conduct alleged is nowhere near the sort of "flagrant and unconscionable" conduct found to merit dismissal in Hogan.[4]  712 F.2d at 761-62; see also United States v. Feola, 651 F. Supp. 1068, 1131 (S.D.N.Y. 1987) (observing that Hogan should be limited to its "highly unusual facts" and should not be applied to cases where alleged misconduct fell short of the "flagrant and unconscionable" conduct complained of in Hogan).

Similarly, in Hill, the government presented inflammatory evidence of the defendant's unrelated narcotics activities to a grand jury considering firearms offenses and offered evidence of the defendant's erroneous statements regarding his prior criminal history, which the court found to be irrelevant and inflammatory. See 1989 WL 47288, at *5-*6. Even assuming, arguendo, that the government's characterization of the December 2015 emails was somehow inflammatory, see Mot. at 7, on its face, it was not nearly as inflammatory as the evidence presented in Hill.

More broadly, the defendants' allegations do not even meet the standard for dismissal applied by the cases to which they cite. The government's characterization of evidence, even if disputed by the defendant, is categorically distinguishable from the presentation of false evidence, which justified dismissal of the indictment in United States v. Peralta, 763 F. Supp. 14, 21 (S.D.N.Y. 1991), and the presentation of irrelevant and unduly inflammatory evidence, upon which the dismissals in Hogan and Hill were based. Moreover, and as will be discussed in further detail in Section I.4, infra, the fact that was allegedly mischaracterized was not essential to the establishment of probable cause, and thus cannot form the basis for dismissal in any event. Cf. Bari, 750 F.2d at 1176 (noting that "reckless misleading of the grand jury as to an essential fact"

---

[4] Likewise, in Estepa, the indictment was dismissed because the government misleadingly presented hearsay evidence as direct evidence. 471 F.2d at 1137. No such allegation was made here.

13

can warrant dismissal) (emphasis added). Thus, even under the defendants' own proposed legal standard, the allegations are insufficient to merit the relief sought.

> 4. Even If the Government Had Mischaracterized the December 2015 Emails, Dismissal Would Not Be Justified Under the Harmless Error Doctrine

Even if the Court were persuaded that the government mischaracterized the email exchange summarized in paragraph 67 of the Indictment, under the harmless error doctrine, the Indictment would not be subject to dismissal. See Bank of Nova Scotia, 487 U.S. at 254-56 (harmless error inquiry requires courts to find that an alleged violation "substantially influenced the grand jury's decision to indict, or that there is grave doubt that the decision to indict was free from the substantial influence" of such violations before dismissing the indictment) (internal quotation marks omitted) (citing United States v. Mechanik, 475 U.S. 66, 78 (1986)).

The defendants allege that "[b]eyond perfunctory and conclusory allegations that Mr. Nordlicht intended to defraud Platinum's investors, the government provides only one concrete factual allegation going to Mr. Nordlicht's mental state," namely, the December 2015 email exchange. Mot. at 1. To the contrary, the Indictment alleges that Nordlicht was a leader and one of the primary architects of a wide-ranging, complex and lengthy scheme to defraud the investors in PPVA.[5] Nordlicht was a co-founder of Platinum and the Chief Investment Officer of PPVA, and was primarily responsible for Platinum's investment decisions and the valuation of its assets for all funds. Ind. ¶ 25. Among other allegations relating to Nordlicht's fraudulent intent, the Indictment alleges that, together with others, Nordlicht affirmatively misrepresented the liquidity of PPVA's investments to investors on multiple occasions, Ind. ¶¶ 43, 56; affirmatively misrepresented and inflated the value of a number of PPVA's assets, including Black Elk Energy

---

[5] The Indictment also alleges that Nordlicht furthered a second scheme to defraud: the Black Elk Bond Scheme. See Ind. ¶¶ 73-87.

Offshore Operations Inc. and Golden Gate Oil, Ind. ¶¶ 45-47, 49-50; personally devised a fraudulent plan to conceal his overvaluation of these assets by engineering specific corporate transactions, Ind. ¶ 51; concealed from investors the gravity of PPVA's liquidity challenges, including by, among other things, engineering related party transactions with Beechwood and transferring funds between Platinum entities, at times at elevated interest rates, Ind. ¶¶ 54, 58-59; and personally directed the undisclosed preferential payment of investor redemptions, Ind. ¶¶ 60, 64.

Allegations that Nordlicht affirmatively and expressly lied to investors about the value and liquidity of the fund's assets, engineered fraudulent transactions in order to conceal liquidity challenges at the firm and directed the payment of preferential redemptions all show that he acted with fraudulent intent. Collectively, they allege that Nordlicht acted with the requisite culpable state of mind. No fair reading of the Indictment could lead one to believe that the allegations relating to the December 2015 email exchange comprise the Indictment's only allegations relating to Nordlicht's mens rea. Nor would introducing the fact of Nordlicht's part-time residence in Israel into the Indictment blunt its clear depiction of Nordlicht's intent to defraud.

At trial, the government will present abundant evidence of Nordlicht's knowledge, intent and willfulness. The defense will have the opportunity to challenge that evidence and to introduce evidence demonstrating Nordlicht's purported lack of scienter. The appropriate—and only—way to resolve these disputes is by presenting them to a trial jury.

II. The Defendants Have Failed To Meet Their Burden for Inspection of Grand Jury Materials

    A. Applicable Law

Grand jury proceedings "carry a presumption of regularity," United States v. Torres, 901 F.2d 205, 232 (2d Cir. 1990), abrogated on other grounds by United States v. Marcus,

15

628 F.3d 36, 41 (2d Cir. 2010). Consequently, "a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." United States v. Forde, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010); see also Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959) ("The burden . . . is on the defense to show that a 'particularized need' exists for the minutes which outweighs the policy of secrecy."). This is true where a defendant seeks in camera review as well as when they seek disclosure. United States v. Smith, 105 F. Supp. 3d 255, 261 (S.D.N.Y. 2015). To warrant the "extraordinary relief" of inspection of grand jury proceedings, a criminal defendant must make a specific factual showing of prosecutorial misconduct. United States v. Shaw, No. 06-CR-41 (CM), 2007 WL 4208365, at *6 (S.D.N.Y. Nov. 20, 2007); United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) (review of grand jury minutes "should not be permitted without concrete allegations of government misconduct"). "[H]ope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings." Smith, 105 F. Supp. 3d at 261; United States v. Crisona, 271 F. Supp. 150, 158-59 (S.D.N.Y. 1967) (mere speculation regarding potential irregularities did not require a trial judge to inspect grand jury minutes).

    B. Discussion

While peppered with hyperbolic language charging outrageous government misconduct, the Motion does not make the requisite factual showing of any misconduct. Unlike in the cases upon which the defendants rely in requesting dismissal, here, there are not even allegations, let alone factual evidence, that the grand jury was empaneled in a discriminatory fashion, or that the government presented false evidence, introduced irrelevant and extraneous

16

inflammatory facts, or violated Federal Rule of Criminal Procedure 6(e).[6]  The Motion merely disputes an allegation in the Indictment and articulates an anticipated defense to that allegation. Far from making a specific factual showing of irregularities, the Motion seeks disclosure of grand jury proceedings for the improper purpose of "determin[ing] whether any irregularities occurred." United States v. Barret, 824 F. Supp. 2d 419, 446 (E.D.N.Y. 2011).  On its face, the Motion does not supply a basis for such disclosure.

The scope of the Motion's request for disclosure evidences its true underlying motive—to further a fishing expedition for material to use in subsequent motions.  Rather than narrowly tailoring their request to cover only the material that is needed, as required, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988) ("A party moving for relaxation of the normal rule of secrecy should structure its request to cover only material that is needed."), they seek: "the government's instructions to the grand jury, any testimony related to Mr. Nordlicht's state of mind or consciousness of guilt, any testimony related to Israel and a description of the context in which such testimony was given."  Mot. at 10.  While the Motion fails to justify disclosure of any grand jury proceedings, at a minimum, the allegations in the Motion provide no conceivable basis for concluding that the legal instructions or "any testimony related to Israel" would be needed to prove the Motion's allegations.

The defendants have not met their burden for disclosure or in camera review of grand jury minutes, and their request is yet another attempt to seek material to which they are not entitled.  Nevertheless, the government's conduct before the grand jury in this case was proper in

---

[6] As the Court is aware, the defendants previously moved to dismiss the Indictment based on their allegation that the government violated Rule 6(e) by leaking grand jury material to the media.  ECF Docket Nos. 107, 112.  On October 16, 2017, the Honorable Dora L. Irizarry, who originally presided over this case, denied that motion.

17

all respects, and it does not object to an <u>in camera</u> review by this Court if the Court is inclined to conduct such a review.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should deny the defendants' Motion in its entirety.

Dated: Brooklyn, New York
　　　　March 1, 2018

　　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　RICHARD P. DONOGHUE
　　　　　　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　　　　　　Eastern District of New York

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　Alicyn L. Cooley
　　　　　　　　　　　　　　　　　　　　　　　　Lauren H. Elbert
　　　　　　　　　　　　　　　　　　　　　　　　Patrick T. Hein
　　　　　　　　　　　　　　　　　　　　　　　　Sarah M. Evans
　　　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys
　　　　　　　　　　　　　　　　　　　　　　　　(718) 254-7577 (Elbert)

Cc:　　Clerk of the Court (BMC)
　　　　All Counsel (By ECF)