UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
  UNITED STATES OF AMERICA,                             :
                                                               :
               - against –                         :  **MEMORANDUM DECISION &**
                                                               :  **ORDER**
  MARK NORDLICHT,                                        :
  DAVID LEVY,                                            :  16-cr-00640 (BMC)
  DANIEL SMALL,                                          :
  URI LANDESMAN,                                         :
  JOSEPH MANN,                                           :
  JOSEPH SANFILIPPO, and                                 :
  JEFFREY SHULSE,                                        :
                                                               :
               Defendants.                          :
-------------------------------------------------------------- X

**COGAN,** District Judge.

      This order addresses defendants'[1] motion to dismiss the Indictment charging them with perpetrating a scheme to defraud Platinum Partners L.P. ("Platinum") investors from 2011 to 2016. The Indictment also charged a second scheme to defraud the holders of certain bonds issued by Black Elk Energy Offshore Operations LLC. For the reasons discussed below, defendants' motion is denied.

### BACKGROUND

      A grand jury returned the 107 paragraph Indictment against defendants. Of those paragraphs, 87 described the alleged fraudulent schemes in which they participated, and the remainder described the counts against them. Some of the background paragraphs described emails, documents, and other evidence relevant to the counts.

---

[1] Defendant Mark Nordlicht filed the motion to dismiss the Indictment, which has been joined by defendants David Levy, Daniel Small, Uri Landesman, and Joseph Mann (collectively, "defendants"). Jeffrey Shulse and Joseph SanFilippo did not join the motion.

The sole focus of defendants' motion is paragraph 67 of the Indictment, which describes an email chain (the "Email Chain") between Mark Nordlicht, Uri Landesman, and an unindicted co-conspirator. The Email Chain has five relevant exchanges, quoted below with any typographical errors left uncorrected:

- The unindicted co-conspirator sent Nordlicht and another individual an email on December 13, 2015 at 11:23 am, stating: "Please let's all have just carry on for this trip. No check in luggage. Pls confirm," to which Nordlicht responded, "I never travel with anything but carry on."

- Shortly thereafter, the unindicted co-conspirator then sent another email, stating: "Don't forget books. Assume we are not coming back to ny Just to be safe. Depends on Miami we can fly straiggt to europe from miami on tuesday Take passport."

- Nordlicht responded 37 minutes later: "Listen. We need to get to jan 1. We have significant issues. I spoke to [my wife] and i am ready to take 7.5 from second mortgage (pay holdback, ppne interest and play a little offense on positions) but I need 2.5 tommorow to deal with margin. We had issues whole week last week, I pushed off as far as I can. Can't lose swap relationships or we are done. Will have more indo stock but not until later in week. Trying to reach d now but he not answering. This is what we need to give us chance and I am willing to do my part but can't manage alone and we have immediate issue tommorow morning."

- A few hours later, at 3:30 pm, Nordlicht emailed the unindicted coconspirator and another individual: "Am on my way to jfk with kids for their 6 pm flight to Israel. [Another individual is] ducking my calls. Major *shalom bayis* situation. [My wife] is literally making me get on Israel flight if we don't connect and agree what we are doing ."

- Nordlicht then forwarded this exchange to Landesman, who responded: "You should get on the flight if there is no bridge, probably even if there is, [the unindicted co-conspirator] didn't set up any meetings for this week? We need to go through the *mehalech* of how we are going to share this with clients and employees, going to be very rough, big shame, I suggest you partner with more reliable people if you ever do Nordlicht III, *tzeischem lishalom*, it was nice seeing you, hopefully the girls will reacclimate quickly."

The Indictment summarized the Email Chain and alleged that it illustrated Nordlicht's and the unindicted co-conspirator's "knowledge and awareness of the fraudulent scheme

perpetrated on Platinum's investors and prospective investors," and showed that they contemplated fleeing from the United States. It also excerpted and quoted portions of the Email Chain, including the following, from Landesman to Nordlicht: "We need to go through the *mehalech* of how we are going to share this with clients and employees, going to be very rough, big shame . . . it was nice seeing you, hopefully the girls will reacclimate [sic] quickly."

Defendants claim that the Government's interpretation of the Email Chain as showing Nordlicht's knowledge and awareness of the Platinum frauds and his attempt to flee was critical to securing charges, because otherwise, the Indictment "boils down to the government's disapproval of Platinum's valuations of a handful of oil and as investments, inter-fund loans, and challenging liquidity profile."

Defendants argue, however, that the Government has intentionally mischaracterized the Email Chain. Their argument is as follows: at the time of the Email Chain, Nordlicht lived in Israel. His return to that country was, accordingly, innocuous, and did not evince his intent to flee the United States.[2] The Government concealed this "crucial exculpatory fact" and instead "fabricat[ed] a plot to flee," which helped push the grand jury to indict defendants. The chief means by which the Government did so was its "insidious" insertion of "sic" into Landesman's statement that "hopefully [Nordlicht's] girls will reacclimate [sic] quickly." Defendants claim that the Government placed "[sic]" in the sentence to suggest that "reacclimate" was erroneous, and that Landesman actually intended to write "acclimate," as if Nordlicht's children had never been to Israel before, when, in fact, it was their home. Revealing that Israel was Nordlicht's home would, defendants suggest, have fully undercut the Government's argument that Nordlicht

---

[2] Furthermore, defendants claim that the trip was otherwise justified because Nordlicht was apparently "in the midst of a worldwide marketing campaign to raise additional investment in Platinum."

3

was fleeing the United States, thus eliminating what they claim to be the Government's single allegation of *scienter*.

## DISCUSSION

"Federal Rule of Criminal Procedure 7(c) requires only that an indictment be 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Id. (internal quotations omitted). Indeed, an indictment is required to only be "sufficiently specific to permit defendants to prepare their defense and to bar future prosecutions for the same offense." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).

Dismissal of an indictment is called for when prosecutorial misconduct results in "a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." United States v. Williams, 504 U.S. 36, 46 (1992). Even where that misconduct occurs, "dismissal is appropriate only if it is established that the violations substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that that decision was free from such substantial influence." Bank of Nova Scotia v. United States, 487 U.S. 250, 251 (1988) (internal quotations omitted). A court considering a motion to dismiss an indictment must take "the allegations of the indictment . . . as true." Boyce Motor Lines v. United States, 342 U.S. 337, 343, n.16 (1952); United States v. Buck, No. 13 CR. 0282, 2017 WL 4174931, at *5 (S.D.N.Y. Aug. 28, 2017) ("On a pretrial motion to dismiss an indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the Court takes the allegations in the indictment as true.").

However, "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). "[I]t is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence." United States v. Vernace, No. 11-CR-005, 2012 WL 12941698, at *1 (E.D.N.Y. Apr. 26, 2012) (internal quotations and alterations omitted). Allowing defendants to assert pre-trial challenges to indictments on the basis of allegedly inadequate evidence would mean that, "before [a] trial on the merits[,] a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." Costello, 350 U.S. at 363. "A defendant's complaint that a government agent gave the grand jury misleading testimony – including an inaccurate summary of evidence – is in essence a challenge to the reliability or competence of the evidence and, absent other prosecutorial misconduct, will not support dismissal of an indictment." United States v. Jones, 164 F.3d 620 (2d Cir. 1998). Significantly, a grand jury does not have an obligation to consider all exculpatory evidence, and a prosecutor seeking an indictment does not have a duty to present such evidence to the grand jury. See Williams, 504 U.S. 36, at 51.

Defendants' argument is unavailing for several reasons.

First, the Government did not improperly mischaracterize the Email Chain by claiming it supports defendants' "knowledge and awareness." The Email Chain arguably shows that (1) Platinum was limping from day to day – indeed, it appeared unable to meet the next day's margin requirements; (2) Nordlicht was considering taking out a second mortgage on his home to

5

provide short-term cash to the fund; (3) Nordlicht himself acknowledged that Platinum could be "done"; and (4) his co-conspirator advised him to take his passport and expect to not return to New York. It follows that the Government's interpretation of the Email Chain as suggesting *scienter* is a reasonable one.

Second, to the extent that defendants can construct an alternative reading of the Email Chain that carries with it an innocent meaning, they are free to do so, and may – and presumably will – present it at trial, which is the appropriate forum for such an argument. See United States v. Buck, No. 13 CR. 0282, 2017 WL 4174931, at *8 (S.D.N.Y. Aug. 28, 2017) ("Whether these accusations are true or what intent underlay Buck's statements and actions are precisely the kinds of evidentiary questions that should be evaluated by a jury, and not by this Court as a pre-trial matter."). A pre-trial motion is not, however, the vehicle to dispute the Government's interpretation or characterization of evidence.

Third, defendants' main contention – that the Government obscured the fact that Nordlicht lived in Israel – does nothing to help them.[3] That's because it stands to reason that someone fleeing law enforcement in one country would choose to emigrate to another with which he has some kind of ties, as opposed to a *terra nova* where he was a total stranger. The fact that Nordlicht had connections in Israel arguably makes it more likely that he would go there over anywhere else.

Fourth, the Court is puzzled as to the great weight that defendants put on the Government's insertion of "sic" when quoting the Email Chain in the Indictment, and their

---

[3] The Government disputes that Norlidcht lived full time in Israel, and points out that defendants cite media reports saying only that Norldicht was living "part-time in Israel." Furthermore, at the time of the emails, Nordlicht allegedly retained ownership of several homes in the United States. Finally, he was arrested in New Rochelle, New York.

6

argument that it compels a finding of prosecutorial misconduct. The very use of "sic" carries with it the implication that the Government left the text unaltered and reproduced exactly what was written in the Email Chain, supporting the conclusion that defendants' argument is essentially nothing but disagreement over the interpretation of evidence, and not a credible allegation of actionable prosecutorial wrongdoing.

The Court also notes that "reacclimate" is not a commonly used word, so the Government's insertion of "sic" to note Landesman's "odd" diction is not unreasonable.[4] Furthermore, had the Government intended to deceive the grand jury by obscuring from it Nordlicht's ties to Israel, it surely could have found a less oblique way of doing so.[5] Finally, as discussed above, because Nordlicht's apparently substantial relation to Israel only buttresses the idea that he was fleeing to that country, it seems implausible that the Government would attempt to misconstrue evidence in a way that undercuts its argument.

Fifth, even assuming *arguendo* that the Government drew improper inferences from the Email Chain or misconstrued its content, "dismissal is appropriate only if it is established that the violations substantially influenced the grand jury's decision to indict, or if there is grave doubt that that decision was free from such substantial influence." Bank of Nova Scotia, 487 U.S. at 251. Defendants claim that paragraph 67, which contains the Government's supposed mischaracterization of the Email Chain, is the only part of the Indictment that shows that defendants (specifically, Nordlicht) acted with *scienter*. That is not so. In fact, the Indictment is

---

[4] In fact, the online Oxford English Dictionary does not even list it as an entry. See [search results for "reacclimate"), available at http://www.oed.com/noresults?browseType=sortAlpha&noresults=true&page=1&pageSize=20&q=reacclimate&scope=ENTRY&sort=entry&type=dictionarysearch (last visited March 23, 2018).

[5] Defendants would have a stronger argument if, for example, the Government had paraphrased or summarized the disputed portion of the exchange by including language to the effect of, "Landesman expressed hope that Nordlicht's children would adjust well to their new life in Israel." The Government, of course, did not do that.

7

replete with allegations that Nordlicht (and the other defendants) lied to investors about the value and liquidity of Platinum's assets, conducted fraudulent transactions to mask Platinum's liquidity crisis, and improperly directed preferential payments of redemptions. Taken together, these allegations are more than sufficient to raise the issue that Nordlicht acted with the *scienter* required for the charges he faces. Accordingly, it is simply not plausible for defendants to contend that the one point they dispute occupied such an outsized place in the Indictment that it could give rise to a "grave doubt" about the grand jury's work.

Defendants also move the Court to review various grand jury materials, including "the government's instructions to the grand jury, any testimony related to Mr. Nordlicht's state of mind or consciousness of guilt, any testimony related to Israel, and a description of the context in which such testimony was given . . . ."

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Grand jury materials are entitled to a presumption of secrecy. See In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996). Indeed, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." United States v. Ulbricht, 858 F.3d 71, 106 (2d Cir. 2017). To rebut the presumption of secrecy, the party "seeking disclosure [must] show a particularized need that outweighs the need for secrecy." Id. at 107. For the reasons discussed above, defendants have not pointed to any ground that may exist to dismiss the Indictment because of anything that may have occurred before the grand jury.

8

## CONCLUSION

Defendants' motion [297] is DENIED.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       March 23, 2018