```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
UNITED STATES OF AMERICA,                            :
                                                     :
        -against-                                    :
                                                     :        **MEMORANDUM AND ORDER**
MARK NORDLICHT,                                      :        16-CR-640 (BMC)
DAVID LEVY,                                          :
DANIEL SMALL,                                        :
URI LANDESMAN,                                       :
JOSEPH MANN,                                         :
JOSEPH SANFILIPPO, and                               :
JEFFREY SCHULSE,                                     :
                                                     :
                        Defendants.                  :
----------------------------------------------------------------- x
```
**DORA L. IRIZARRY, Chief United States District Judge:[1]**

On December 14, 2016, an indictment was filed charging Defendants Mark Nordlicht ("Nordlicht"), David Levy ("Levy"), Daniel Small ("Small"), Uri Landesman[2] ("Landesman"), Joseph Mann ("Mann"), Joseph SanFilippo ("SanFilippo"), and Jeffrey Schulse ("Schulse") (collectively, "Defendants") with various counts of conspiracy to commit securities fraud, wire fraud and investment advisor fraud. *See*, Indictment, Dkt. Entry No. 1.[3] Specifically, Counts 1-5 of the indictment charge defendants Nordlicht, Levy, Landesman, SanFilippo, and Mann, together, with one count of conspiracy to commit securities fraud and investment advisor fraud, one count of conspiracy to commit wire fraud, two counts of securities fraud, and one count of investment adviser fraud. Defendants Nordlicht, Levy, Small, and Schulse also were charged together with

---

[1] This case was reassigned to United States District Judge Brian M. Cogan on October 16, 2017.
[2] On October 26, 2018, the Court terminated Landesman from the case due to his death on September 14, 2018. *See*, Dkt. Entry No. 420.
[3] On December 19, 2016, the Securities and Exchange Commission ("SEC") filed a civil complaint in this District against Defendants and certain related entities, Platinum Management (NY) LLC and Platinum Credit Management, L.P. *See generally*, Compl., *Securities and Exchange Commission v. Platinum Management (NY) LLC et al.*, Civil Action No. 16-cv-06848 (BMC) ("SEC Case"). The civil and criminal actions address essentially the same two alleged fraud schemes.

one count of conspiracy to commit securities fraud, one count of conspiracy to commit wire fraud, and one count of securities fraud in Counts 6-8.

In support of these charges, the indictment alleges that between November 2012 and December 2016, certain Defendants concealed a growing liquidity crisis at investment company Platinum Partners' flagship hedge fund, Platinum Partners Value Arbitrage Fund L.P. ("PPVA"), overvalued the performance of PPVA's assets, liquidity, and investments, and concealed the purpose of various transactions in violation of PPVA's governing documents. The indictment also alleges that select investors were paid requested redemptions of their investments in PPVA ahead of and/or in lieu of other investors, contrary to PPVA's governing documents.

The indictment further alleges that, between November 2011 and December 2016, certain Defendants defrauded third-party holders of Black Elk[4] bonds and deprived these bondholders of the proceeds of a Black Elk asset sale through misrepresentations regarding a Platinum Partners related entity's ownership and control over the bonds.

At a status conference held on March 23, 2017, counsel for Defendant Nordlicht alleged that confidential grand jury information had been leaked to the press during the course of the Government's investigation that led to the indictment. *See* Tr. of March 23, 2017 Proceeding, Dkt. Entry No. 103 at 32:24-35:18. On April 7, 2017, counsel for Nordlicht wrote to the Court stating that he had conferred with the Government about the alleged leaks and was informed that the Government was conducting an internal investigation, but the Government neither provided counsel with any further information nor conceded that any leaks had occurred. *See* Nordlicht Ltr. Mot. (the "April 7 Letter"), Dkt. Entry No. 107. Nordlicht requested that the Court conduct an

---

[4] Black Elk refers to Black Elk Energy Offshore Operations, LLC, together with Black Elk Energy Finance Corp. and its affiliates and subsidiaries, an oil and natural gas exploration company that was controlled for several years by Platinum Partners. *See*, Indictment at ¶ 6.

2

evidentiary hearing based on a series of news articles published in 2016 and attached to his letter (collectively, "Cited Articles") that he contends establish a *prima facie* case of grand jury leaks in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 6(e) ("Rule 6(e) violation" or "Grand Jury Secrecy Rule"). The Cited Articles are: Christie Smythe & Zeke Faux, *Platinum Partners Said to Be Raided by FBI Amid Bribes Probe*, Bloomberg, June 22, 2016 (Dkt. Entry No. 107-1); Kaja Whitehouse and Josh Kosman, *FBI Raids Hedge Fund Linked to Union Head's Kickback Probe*, N.Y. Post, June 22, 2016 (Dkt. Entry No. 107-2); Rob Copeland, *Fraud Probe Ricochets Through Platinum Partners, a Hedge Fund With Ties to Jewish Community*, Wall Street Journal ("WSJ"), July 25, 2016 (Dkt. Entry No. 107-3); Kevin Dugan, *Feds Probing Union Scandal Fund as a Ponzi Scheme*, N.Y. Post, July 28, 2016 (Dkt. Entry No. 107-4); Zeke Faux, *Platinum's California Oil Fields Said to Be Subject of Probe*, Bloomberg, Aug. 11, 2016 (Dkt. Entry No. 107-5); Rob Copeland & Rebecca Davis O'Brien, *Platinum Partners Plans to Unwind Main Hedge Fund Amid Kickback Probe*, WSJ, June 14, 2016 (Dkt. Entry No. 107-6); Kevin Dugan, *Hedge Fund Tied to Kickback Probe Used "Checkered" Valuation Firm*, N.Y. Post, July 31, 2016 (Dkt. Entry No. 107-7).

On April 10, 2017, the Court deemed the April 7 Letter a motion, set a briefing schedule and directed Nordlicht to file a supplemental letter setting forth the remedy he sought in the event that a Rule 6(e) violation was found. Nordlicht filed a supplemental letter on April 14, 2017, contending the facts submitted in the April 7 Letter satisfied Defendants' burden to establish a *prima facie* case for a Rule 6(e) violation and seeking discovery to determine the extent of the leaks and prejudice to Defendants. *See* Nordlicht's Apr. 14 Ltr. ("Apr. 14 Ltr."), Dkt. Entry No. 112. Nordlicht further seeks to: (1) dismiss Counts One through Five of the indictment, (2) suppress evidence seized during the June 22, 2016 search of Platinum's office, and (3) preclude the testimony of any government agents complicit in the leaks. *Id.* at 2-3. Defendants Mann,

Landesman, Sanfilippo, and Levy each filed letters joining Nordlicht's motion. *See* Dkt. Entry Nos. 113, 115, 116, 117, respectively. The Government opposed the motion. *See* Govt.'s Br. in Opp. ("Govt. Opp. Br."), Dkt. Entry No. 122. Small joined Nordlicht's motion (together with Nordlicht, Mann, Landesman, Sanfilippo, and Levy, the "Moving Defendants") after the Government's opposition was filed. *See* Small's May 3, 2017 Letter ("Small's Ltr."), Dkt. Entry No. 129.

In opposing Moving Defendants' requests, the Government contends that: (1) Moving Defendants have failed to make a *prima facie* showing that the Cited Articles reveal matters before the grand jury and rely on information obtained from government sources; and (2) even if the Cited Articles contain leaked grand jury information, Moving Defendants cannot demonstrate prejudice. *See* Govt. Opp. Br. at 8-9. Annexed to the Government's brief was a declaration by Assistant United States Attorney Alicyn Cooley describing certain facts related to the Government's internal investigation. Declaration of Alicyn Cooley ("Cooley Decl."), Dkt. Entry No. 122-1. Pursuant to a protective order issued by this Court on May 12, 2017, redacted versions of these documents were filed on the public docket[5] and unredacted copies were provided to defense counsel and filed under seal. *See* Protective Order, Dkt. Entry No. 141. The Government also opposed Defendant Small's letter, arguing that Small's additional arguments were unavailing, and that, in any event, he lacks standing to join the motion given the circumstances of his specific role in the alleged conspiracy and the offenses with which he is charged. *See* Govt.'s Ltr. in Opp. to Small ("Govt. Opp. to Small"), Dkt. Entry No. 137.

On May 3, 2017, Defendant Nordlicht filed a memorandum of law in reply supported by an affirmation to which further exhibits were attached. *See* Nordlicht's Mem. of Law,

---

[5] All references to facts contained in the Cooley Declaration are in the publicly filed redacted version. *See* Dkt. Entry. No. 122-1.

4

("Nordlicht's Reply"), Dkt. Entry No. 126; Declaration of William A. Burk[6] ("Burk Decl."), Dkt. Entry No. 127. Exhibit A contains an application for a search warrant, which was filed under seal (Dkt. Entry No. 127-1). Exhibit B is the subpoena the grand jury issued to Platinum Management (NY) LLC on June 8, 2016 (Dkt. Entry No. 127-2). Exhibit C is a copy of the court order from the U.S. District Court for the Southern District of New York granting the defendant's motion for an evidentiary hearing relating to alleged grand jury leaks in the criminal case of *United States v. Walters*, No. 16-cr-338 (PKC) (S.D.N.Y.) (Dkt. Entry No. 127-3). Exhibit D is an article entitled, Marion Halftermeyer, *Northstar Offshore Group struggling to keep afloat admit Black Elk restructuring, Platinum Partners dealings*, Debtwire, Aug. 9, 2016 (Dkt. Entry No. 127-4).

On October 16, 2017, this Court orally denied Defendant Nordlicht's motion, and found the joined Moving Defendants' motions for joinder moot, as the Court previously had granted their joinder motions.

On September 16, 2018, all Defendants filed a motion to reconsider "Chief Judge Irizarris [sic] Ruling Denying a Hearing on Prejudicial Leaks from Law Enforcement in Violation of Rule 6(E)(2)(B)." Defendants' Motion to Reconsider ("Defs.' Mot. to Reconsider"), Docket Entry No. 389.

This Memorandum and Order sets forth the Court's reasons for denying Defendant's original and reconsideration motions.

---

[6] All references to facts in the Burk Declaration and its exhibits are in the publicly filed portions of the documents.

# DISCUSSION

## I. Moving Defendants' Speculative Allegations Fail to Establish a *Prima Facie* Case for a Rule 6(e) Violation

### A. *Legal Standard*

Grand jury secrecy is crucial in order to protect potential witnesses and the reputation of persons investigated, but ultimately not indicted. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979). Federal Rule of Criminal Procedure 6(e)(2)(B) prohibits certain individuals, including "attorney[s] for the government" and "government personnel" involved in a grand jury investigation from "disclos[ing] a matter occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2)(B)(vi)-(vii) and 6(e)(3)(A) (the "Grand Jury Secrecy Rule").

A defendant seeking an evidentiary hearing on the grounds of an improper disclosure under Rule 6(e) first "must establish a *prima facie* case of the violation." *United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996) (citing *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989)). To establish a *prima facie* case, a defendant must show "(1) there has been disclosure of a matter or matters occurring before the grand jury; and (2) that the source of the disclosure was an attorney or agent of the government." *United States v. Skelos*, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (*citing Barry*, 865 F.2d at 1321). A defendant must meet both requirements before the burden shifts to the government to rebut the defendant's allegations. *Id.*; *See also*, *Rioux*, 97 F.3d at 662 ("Before a court will order a hearing on a possible breach of the Grand Jury Secrecy Rule, the defendant must establish a prima facie case of a violation of [Rule 6(e)].").

When the basis for the *prima facie* case consists of published news articles, the Court "should examine, among other factors: (1) whether the media reports disclose matters occurring before the grand jury; (2) whether the media report discloses the source as one prohibited under Rule 6(e); and (3) evidence presented by the government to rebut allegations of a violation of Rule

6

6(e)." *Rioux*, 97 F.3d at 662 (*citing In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 216-20 (5th Cir.1980)). If the defendant establishes a *prima facie* case, the burden then shifts to the Government to rebut the defendant's case at a "show cause" hearing. *Barry*, 865 F.2d at 1321; *Skelos*, 2015 WL 6159326, at *9.

Moving Defendants have failed to meet their burden for the reasons discussed below.

### B. *Moving Defendants Have Failed to Show that a "Matter Occurring Before the Grand Jury" Was Disclosed*

The Second Circuit and other circuit courts to consider the issue have held that, to fall within the scope of Rule 6(e)(2), "a matter occurring before the grand jury" is, at its core, "information actually presented to the grand jury," and, by extension, "anything that may tend to reveal what transpired before [the grand jury], such as summaries of grand jury testimony." *United States v. E. Air Lines,* 923 F.2d 241, 244 (2d Cir. 1991); *See also In re Grand Jury Subpoena,* 920 F.2d 235, 241 (4th Cir. 1990); *In re Grand Jury Investigation (Lance),* 610 F.2d at 216-17. The Second Circuit and other circuit courts also have held that Rule 6(e) does not apply to information disclosed independent of the grand jury process, even if the same information later is presented to the grand jury. *See, e.g.*, *In re Grand Jury Subpoena*, 103 F.3d 234, 238-39 (2d Cir. 1996) (collecting cases holding that information produced for purposes independent of grand jury proceedings is not subject to Rule 6(e)). This includes "information . . . produced by a criminal investigation that parallels but is independent of a grand jury investigation." *Id.* at 238; *See also, In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) (*citing Rioux*, 97 F.3d at 662) ("It is therefore necessary to differentiate between statements by a prosecutor's office with respect to its own investigation and statements by a prosecutor's office with respect to a grand jury's investigation, a distinction of the utmost significance."). Rule 6(e) does not require "that a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand

jury." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (J. Wright) (*en banc*).

In cases where federal courts have found violations of Rule 6(e), the violations were closely linked to improper disclosure of the inner workings of the grand jury, not simply information about some aspect of a related government investigation. *See Skelos*, 2015 WL 6159326, at *1 (*citing United States v. Rosen*, 471 F. Supp.2d 651, 655 (E.D. Va. 2007) (collecting cases)). For example, courts have held that Rule 6(e) was violated where disclosures revealed: the identity of grand jurors or prospective witnesses, witnesses' potential testimony or questions they would be asked, transcripts or the substance of testimony, the strategy or direction of a grand jury investigation, or report when the grand jury will return an indictment. *Id.*

Moving Defendants contend that the Cited Articles revealed that: (1) the investigation was being led by the US Attorney's Office for the Eastern District of New York and related to public corruption and Platinum's valuation methods; (2) Platinum's investment in Golden Gate Oil was under scrutiny; and (3) Mark Nordlicht, as well as Platinum, were under investigation. The Court disagrees. The information published in the Cited Articles does not reveal the secret inner workings of the grand jury process. As the Government correctly notes, much of this information is contained on the face of the search warrant and its attachments that was executed prior to the publication of the Cited Articles. *See* Govt. Opp. Br. at 3-4. The one piece of information that, arguendo, might possibly be connected to the grand jury process is the statement in a Wall Street Journal article that "the Brooklyn office [of the U.S. Attorney's Office] has sent subpoenas in connection with the probe." *See Platinum Partners Plans to Unwind Main Hedge Fund Amid Kickback Probe,* WSJ, June 14, 2016 (Dkt. No. 107-6 at 3). However, that article did not contain any specific information related to the grand jury process, e.g., it did not describe the date the subpoenas were issued or served, who was subpoenaed, or what information was sought. *Id.* A

8

violation of Rule 6(e) is not established by either the mere mention that subpoenas had been issued, a practice common in government investigations or the complained of statements contained in the Cited Articles.

    **C.**    *Moving Defendants Have Not Shown that the Source of the Disclosures Was a Government Attorney or Agent*

To determine whether disclosures in the Cited Articles were made by an attorney for the government or government agents, the Court must analyze the information contained in the articles. *See Skelos*, 2015 WL 6159326, at *1; *See also*, *Rioux*, 97 F.3d at 662. The articles need not expressly cite a government source, if the nature of the connection is clear. *See Skelos*, 2015 WL 6159326, at *1 (*citing In re Grand Jury Investigation (Lance)*, 610 F.2d at 218.

Moving Defendants contend that government agents were the sources of the disclosures based on the terms used in the Cited Articles to describe unnamed sources, such as persons "with direct knowledge of the matter", "briefed on the investigation", and "not authorized to speak publicly on the matter." *See* Apr. 7 Ltr. at 2-3. The Moving Defendants are grasping at straws. These descriptions do not warrant the conclusion that the sources in the Cited Articles were government agents or government attorneys. None of these phrases describe government agents exclusively. *See Rioux*, 97 F.3d at 662 ("Most of the media surrounding the *Rioux* investigation either: (1) failed to identify the source as one proscribed under Rule 6(e); or (2) discussed federal 'investigations,' without actually discussing matters before the grand jury."); *In re Grand Jury Investigation (Lance)*, 610 F.2d at 219 ("In such situations courts have been reluctant to find that references by newspaper articles to general sources, such as 'officials,' 'informed sources,' or 'sources close to the investigation,' sufficiently implicated persons associated with the government to warrant such relief where those persons swore they had not breached grand jury secrecy.").

Importantly, as the government notes, none of the Cited Articles used the term "grand jury" anywhere. Indeed, the Government has submitted records indicating that Defendant Nordlicht himself spoke to journalists, and, in one email exchange, a journalist offered to describe him as a "person familiar with the matter." Govt. Opp. Br., Ex. J at 1 (Dkt. No. 122-9). Notably, Nordlicht had many communications with the press concerning PPVA's economic health *before* the Government even began its investigation. Govt. Opp. Br. 6-8. A number of articles were published by the press, including the Cited Articles, based in large part on PPVA public filings and other non-law enforcement sources. To claim now that the press articles were based on grand jury leaks by government attorneys and/or agents is disingenuous at best and borders on the frivolous.

To satisfy the Rule 6(e) requirement that the grand jury disclosure be made by a government attorney or agent, Moving Defendants heavily rely on the finding of the Hon. P. Kevin Castel, U.S. District Judge for the Southern District of New York ("S.D.N.Y.") that FBI Special Agent David Chaves made unauthorized disclosures to the media in an investigation unrelated to this case. *See* Mem. & Order at 1, *United States v. Walters*, No. 16-cr-338 (PKC) (S.D.N.Y. Mar. 1, 2017) (Ex. H of Nordlicht Apr. 7 Ltr. (Dkt. No. 107-8)). At an evidentiary hearing held in that case, Special Agent Chaves admitted leaking information to media outlets between April 2013 and June 2014, and the court noted that these disclosures "may have continued as late as August 2015." *Id.* at 3. As a result of these disclosures, Special Agent Chaves is the subject of a criminal investigation led by the United States Department of Justice's Public Integrity Section. *Id.* at 2. However, despite finding clear evidence of Special Agent Chaves' unauthorized disclosures, the court declined to dismiss the charges against the defendant holding that, even if there were a pattern of illegal leaks by the FBI, "that pattern would not raise such serious questions about the fundamental fairness of the process that resulted in *this* indictment as to warrant dismissal" and

that such dismissal would be unprecedented. *Id.* at 16, 18. The court further declined to conduct further evidentiary hearings because Special Agent Chaves expressed his intent to exercise his Fifth Amendment rights in response to any further questioning. *Id.* at 16.

Here, the Government attests that "[d]uring the pendency of at least some of the investigation, Agent David Chaves held the position of Coordinating Supervisory Special Agent for certain FBI squads including the squad assigned to this case[.]" Cooley Decl. at ¶ 4. While the possible involvement in the investigation of this case by an agent under criminal investigation for making unauthorized disclosures may be troubling, aside from Moving Defendant's sheer speculation, there is no evidence whatsoever linking Special Agent Chaves to any of the Cited Articles. By contrast, the Government has affirmed that each of the government attorneys and agents who actively supervised the investigation did not disclose to any member of the press information obtained as a result of the grand jury investigation in this case. Cooley Decl. at ¶¶ 12, 13. This Court properly may consider such declarations in deciding Defendant's motion. *Rioux*, 97 F.3d at 662; *See also*, *United States v. Skelos*, 2018 WL 284972, at *2 (S.D.N.Y. Jun. 8, 2018) ("When the government submits an affidavit denying any wrongdoing, the court may consider that affidavit in determining whether the defendant made out a *prima facie* case.").

Given the scope and nature of the investigation, many individuals undoubtedly had access to and could have been, the sources of information contained in the Cited Articles. The indictment indicates that many non-government individuals spoke to the Government, including whistleblowers, who may have had significant knowledge of Platinum's operations. *See generally*, Indictment (citing throughout evidence provided by unnamed investors and alleged co-conspirators). These same individuals may well have been sources for the Cited Articles. The Cited Articles themselves identify numerous non-government sources of information, and, in articles published in 2015 and 2016, before the publication of the Cited Articles, the press

11

identified many of the issues Moving Defendants claim resulted from the alleged leaks. *See* Gov. Opp. Br. Exs. C-E (Dkt. Entry Nos. 122-3, 122-4, 122-5).

## II. Moving Defendants Fail to Establish Prejudice

Even assuming, arguendo, that Moving Defendants have established a *prima facie* case for a violation of the Grand Jury Secrecy Rule, they have not suffered prejudice from the alleged disclosures. In order to be entitled to a remedy for a violation of grand jury secrecy, a defendant must establish that the disclosure was not harmless and that he has been prejudiced as a result of the alleged misconduct. *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). Any remedy imposed by the Court should be tailored to the alleged misconduct and not result in "a windfall for the unprejudiced defendant." *Id.* at 255. Federal Rule of Criminal Procedure Rule 6(e) provides a remedy that deters misconduct, but avoids such a windfall: contempt of court charges against anyone who knowingly commits a violation. *See* Fed. R. Crim. P. 6(e)(7); *United States v. Regan*, 706 F. Supp. 1102, 1220 (S.D.N.Y. 1989). The drastic remedies sought by Moving Defendants are unwarranted under circumstances here.

Moving Defendants seek dismissal of Counts One through Five of the indictment, claiming that illegal conduct alleged therein is "the focus of the leaks." Nordlicht Apr. 14 Ltr. at 2; Nordlicht Reply at 9. This argument is flawed in several respects.

Dismissal is an extreme remedy that only should be adopted in response to prosecutorial misconduct when "it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor" or "when the pattern of misconduct is widespread or continuous." *United States v. Fields*, 592 F.2d 638, 648 (2d Cir. 1978). It is well settled that even if a *prima facie* case of a violation of the Grand Jury Secrecy Rule is established, dismissal only should be granted "if a violation substantially influenced the decision to indict or if there is a grave doubt regarding the absence of such substantial influence." *United States v. Bellomo*, 944 F. Supp.

1160, 1168 (S.D.N.Y. 1996) (*citing Bank of Nova Scotia*, 487 U.S. 250)). Even if the Cited Articles were composed *entirely* of leaked grand jury information, Moving Defendants have failed to demonstrate how the violation would cause such concern that the allegedly leaked information led to the issuance of the indictment here. Rather, as described below, dismissal would be a windfall to Moving Defendants who have shown no prejudice whatsoever.

Moving Defendants further have failed to explain how the fact that news articles concerning alleged "overvaluation, payment of redemptions with new investor subscriptions, loans among funds" and other fraudulent conduct was a cause of the ultimate charges contained in the indictment. As the Supreme Court stated in *Bank of Nova Scotia*, it is not necessary to dismiss an indictment where "the [indictment] would have been obtained notwithstanding the asserted error." 487 U.S. at 225.

First, while Moving Defendants contend that the publication of the Cited Articles "suppressed valuations" of Platinum's funds, they do not identify any assets that were "prevented from realizing their full value" as a result of the Cited Articles. Nordlicht Apr. 14 Ltr. at 2. As the Government points out, the factual allegations contained in the indictment contradict the theory that these problems were the result of negative press coverage. Govt. Opp. Mem. at 22. According to the indictment, as early as 2014, long before the Cited Articles were published in June 2016, Platinum was struggling to make redemptions, a problem that only worsened in 2015 and 2016. Indictment ¶¶ 53-56. In reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004). To credit the theory of Moving Defendants, the Court must assume the opposite: that these allegations are false and the inability to pay redemptions and other issues at Platinum were the direct result of the Cited Articles. As

already noted, the conduct underlying the charges in the indictment that go to the heart of the Government's case occurred prior to the publication of the Cited Articles.

Second, Moving Defendants contend they have been prejudiced because the Cited Articles irrevocably have "poison[ed] the jury pool." Nordlicht Apr. 14 Ltr. at 2. While this case has received press coverage, Moving Defendants have failed to demonstrate how a series of now two-year-old articles relating to the investigation of their clients are "poisonous" when similar, far more detailed allegations are contained in the public indictment filed against them. Whether or not prospective jurors have been influenced by any press coverage of this case is a matter that can be addressed during voir dire. There is no reason to believe that a fair and impartial jury cannot be picked given this Court's experience with high profile trials in this District.

Next, Moving Defendants argue that, if they were to discover evidence of Rule 6(e) violations but are denied dismissal, they should be granted a lesser sanction such as suppression of the evidence seized during the June, 22, 2016 search of Platinum's office, which was discussed in the Cited Articles. *Id.*

This remedy, too, though less severe than dismissal, is inappropriate because there has been no showing of prejudice caused by any alleged Rule 6(e) violation. Each of the Cited Articles was published *after* the June 22 search was conducted, and Moving Defendants have not presented any evidence that the search warrant was tainted by any misconduct or that the search otherwise was improper in any respect.

Finally, Moving Defendants request recusal of all government agents found to be responsible for the alleged leaks. *Id.* There has been no suggestion that the agents who principally were involved in the investigation leaked any confidential information in this or any other proceeding. As noted above, the Government has submitted a declaration avowing that these individuals have not disclosed to any member of the press any information obtained as a result of

the grand jury investigation in this case. Cooley Decl. ¶¶ 12 and 13. "Relying on . . . a government affidavit is particularly appropriate where the source of the information in a news article is not 'definite.'" *Skelos*, 2018 WL 284972, at *2 (citing *In re Grand Jury Investigation*, 610 F.2d at 219). Given the lack of potential prejudice demonstrated by Moving Defendants, the remedies they seek, dismissal of Counts One through Five of the indictment, suppression of seized evidence, preclusion of testimony, discovery or an evidentiary hearing are not warranted. Moving Defendant' contentions are nothing more than frivolous speculation.

## III. Moving Defendants' Motion to Reconsider

Moving Defendants ask the Court to reconsider its ruling, advancing the same or similar arguments that they previously presented in their moving papers. "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted). Typical grounds for reconsideration include "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)). "[A] motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp.2d 261, 287 (E.D.N.Y. 2013) (internal citations omitted).

Moving Defendants have not met the standard for reconsideration. They rely primarily on Special Agent Chaves' actions in the *Walters* case to establish their *prima facie* case for an

15

evidentiary hearing. However, as discussed above, while the possible involvement in the investigation of this case by an agent under criminal investigation for making unauthorized disclosures may be troubling, the Government has affirmed that none of the government attorneys and agents who actively supervised the investigation disclosed information obtained as a result of the grand jury investigation in this case to any member of the press.

Moving Defendants also refer to a new report issued by the Inspector General of the Department of Justice to assert that they have evidence of "both specific misconduct by an agent who was probably involved in this case and that there is a pervasive culture among law enforcement of improperly leaking information." Defs.' Mot. to Reconsider at 14. The referenced passage of the report reads in pertinent part:

> [A]lthough FBI policy strictly limits the employees who are authorized to speak to the media, we found that this policy appeared to be widely ignored during the period we reviewed. We identified numerous FBI employees, at all levels of the organization and with no official reason to be in contact with the media, who were nevertheless in frequent contact with reporters.

Office of the Inspector Gen. U.S. Dep't of Justice, Oversight and Review Div., *A Review of Various Actions by the Federal Bureau of Investigation and Dep't of Justice in Advance of the 2016 Election*, 430 (June 2018) *available at* https://www.justice.gov/file/1071991/download. However, nothing in this report indicates that FBI employees violated the Grand Jury Secrecy Rule generally, much less in this case. The Moving Defendants have pointed to no new facts supporting what the Court has already deemed speculative allegations.

Accordingly, Defendants' motion for reconsideration is denied.

## **CONCLUSION**

For the reasons discussed above, the Moving Defendants' motion for dismissal of Counts One through Five of the indictment, suppression of evidence, preclusion of testimony, discovery, and an evidentiary hearing based on alleged violations of the Grand Jury Secrecy Rule and motion for reconsideration are denied.

SO ORDERED.

Dated: Brooklyn, New York
November 21, 2018

/s/
DORA L. IRIZARRY
Chief Judge