JMK:ALC/DCP/PTH
F. #2016R00505

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    16 CR 640 (BMC)

    - against -

MARK NORDLICHT,
DAVID LEVY,
JOSEPH SANFILIPPO and
DANIEL SMALL,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS THE INDICTMENT

                                                          RICHARD P. DONOGHUE
                                                          United States Attorney
                                                           Eastern District of New York
                                                           271 Cadman Plaza East
                                                           Brooklyn, New York 11201

ALICYN L. COOLEY
DAVID C. PITLUCK
PATRICK T. HEIN
Assistant U.S. Attorneys
      (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the motion of the defendants Mark Nordlicht, David Levy, Joseph SanFilippo and Daniel Small to dismiss the above-captioned indictment on the basis of allegations of prosecutorial misconduct. See Def. David Levy's Mot. To Dismiss for Prosecutorial Misconduct, dated Nov. 21, 2018, ECF Docket No. 443 ("Defendants' Motion to Dismiss" or "Def. Mot."); Ltr. of Def. Daniel Small To Join Motion To Dismiss Indictment Filed by Co-Defendants, dated Nov. 21, 2018, ECF Docket No. 445.  For the reasons stated below, the defendants' motion is wholly without merit and should be denied in its entirety.

ARGUMENT

I. The Defendants' Motion to Dismiss the Indictment Should Be Denied In Its Entirety Because Their Claims of Prosecutorial Misconduct Are Baseless

The defendants argue that the government purportedly (1) made repeated representations to the Court in ex parte filings dated August 25, 2017 and April 2, 2018 that were not supported by any evidence; (2) failed to abide by orders of the Court to produce materials pursuant to Brady v. Maryland, 373 U.S. 83 (1963); and (3) repeatedly misrepresented the scope and status of Federal Rule of Criminal Procedure 16 ("Rule 16") discovery to the Court and the defense. Defendants' Motion to Dismiss ("Def. Mot.") at 20-26. As a result of this alleged prosecutorial misconduct, the defendants move to dismiss the above-captioned indictment (the "Indictment"), or, in the alternative, to suppress the materials contained in the government's October 5, 2018 sensitive discovery production and to preclude the cooperating witnesses who provided those materials from testifying at trial. Id.

The defendants' arguments are meritless. First, the government accurately presented the grounds in its August 25, 2017 and April 2, 2018 ex parte applications for deferred disclosure of materials relating to the cooperating witnesses. Second, the government at all times complied with its Brady obligations, and none of the three required elements of a Brady violation is present: the materials to which the defendants cite were not exculpatory, the government did not suppress them and the defendants were not prejudiced. Finally, the government did not make any misrepresentations regarding Rule 16 discovery. Accordingly, the defendants' Motion to Dismiss should be denied in its entirety.

A.  Background

1.  The Government's *Ex Parte* Filings

The government's August 25, 2017 ex parte application for a protective order authorizing deferred production of certain discovery (the "Ex Parte Application") related to four witnesses— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ —who had previously worked at Platinum and were cooperating and proffering with the government. Among the topics discussed by the government and the witnesses and their counsel over the course of their interactions was each witness's membership in a small Orthodox Jewish community, the powerful stigma cooperating witnesses carried and each witness's palpable concerns regarding the ostracism and harassment he, and by extension his family, would face in their community if his cooperation were revealed.[1]

As noted in the Ex Parte Application, two of these witnesses— ▮▮▮▮▮ ▮▮▮ —pleaded guilty in closed courtrooms on separate dates in early December 2016 pursuant to cooperation agreements with the government. Consistent with the concerns expressed by these witnesses and their counsel, and with counsel's agreement, the government took precautions on the dates of both guilty pleas to prevent the cooperating witnesses from being seen in the public areas of the courthouse.

In the summer of 2017, Nordlicht, through his counsel, engaged in witness intimidation of ▮▮▮▮▮ by sending ▮▮▮▮▮ 's attorney a letter. Upon learning of the letter, the government alerted Chief Judge Irizarry to it, see Letter by the Gov't, dated Aug. 9, 2017, ECF Docket No. 188, after which Chief Judge Irizarry scheduled a status conference. Chief

---

[1]  Summaries of the specific concerns of the witnesses, as expressed by them and their counsel, are delineated in the Ex Parte Application at pages 4 and 5.

Judge Irizarry chastised Nordlicht and his counsel for their obstructive conduct at the August 18, 2017 status conference and indicated that such conduct could justify remanding Nordlicht prior to trial.  See Tr. of Aug. 18, 2017 Status Conference at 2-3 (stating that the Court was "appalled" by the letter sent to ▮▮▮▮▮▮▮▮'s attorney, which was "tantamount to witness intimidation or interference with a witness, possible obstruction of justice"); id. at 3, 5 (describing Nordlicht's and his counsel's conduct as "reprehensible" and "appalling"); id. at 5 (noting that if such conduct recurs, "Mr. Nordlicht will lose his privilege of being out on bond").  This status conference occurred one week before the government filed the Ex Parte Application.

Based on the foregoing information, the government made the good-faith determination that submitting the Ex Parte Application to the Court for deferred production of the relevant materials was warranted.

On April 2, 2018, pursuant to the Court's direction at an earlier status conference, the government filed an ex parte letter with the Court providing the basis for its request to produce the 18 U.S.C. § 3500 material for its cooperating witnesses 30 days prior to trial (the "April 2018 Letter").  See ECF Docket No. 325-1.  That letter incorporated by reference the Ex Parte Application and the previous filings relating to the same subject.  See id. at 2-3 n.4.  The April 2018 Letter summarized additional statements of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  See id. at 4-5.  The Court thereafter denied the government's request to produce its cooperating witnesses' Section 3500 material 30 days before trial, ordering that it be produced on the same schedule as other potential witnesses'.

    2.    The Government's Statements to the Court

Since the defendants were charged in December 2016, the government has on several occasions stated to the Court and defense counsel that it is aware of its obligations under

Brady and Rule 16 and that it has complied and continues to comply with these obligations. These statements were truthful and accurate.

    B.    Applicable Law

        1.    Legal Standard Regarding Dismissal of Indictment

A court has the authority to dismiss an indictment based on a due process violation or under its supervisory powers. United States v. Wang, No. 98–CR–199, 1999 WL 138930, at *37 (S.D.N.Y. Mar. 15, 1999); United States v. Turner, 23 F. Supp. 3d 290, 319 (S.D.N.Y. 2014). However, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment [due to government misconduct] is plainly inappropriate, even though the violation may have been deliberate." United States v. Morrison, 449 U.S. 361, 365 (1981); see also United States v. Casamento, 887 F.2d 1141, 1183 (2d Cir. 1989) ("[D]ismissal of an indictment based on a prosecutor's conduct or misconduct is warranted only where a substantial right of the defendant has been jeopardized.") "Because of this exacting standard, courts rarely dismiss indictments based on governmental misconduct." Turner, 23 F. Supp. 3d at 319 (citing United States v. Bellomo, 944 F. Supp. 1160, 1168 (S.D.N.Y. 1996) ("Dismissal of the indictment for prosecutorial misconduct is an exceedingly rare sanction.")); see also United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979) (Second Circuit has "upheld the dismissal of an indictment only in very limited and extreme circumstances[, where] [1] there was a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions, or [2] to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct").

The defendants cite to several cases in support of their argument that the indictment in this case should be dismissed. See Def. Mot. at 20-22. In nearly all of those cited

cases, however, the courts declined to dismiss the indictment. See, e.g., Broward, 594 F.2d at 351 (reversing the district court's dismissal of the indictment because "[defendants] suffered no prejudice by the misconduct that was found to have occurred" and "[t]here [wa]s simply no need to thwart the public interest in prosecuting serious crimes unless the government misconduct is widespread or extraordinarily serious"); United States v. Schmidt, 105 F.3d 82, 92 (2d Cir. 1997) ("[W]e cannot say the government's conduct here reached a demonstrable level of government outrageousness so as to deprive Schmidt of her liberty without due process of law."); United States v. Palmisano, 104 F.3d 354, 1996 WL 680774, at *3 (2d Cir. 1996) (upholding district court's denial of motion to dismiss indictment where defendant had "no proof [that government conduct] prejudiced his case").

The only cases to which the defendants cite in which the indictment was dismissed involved egregious prosecutorial misconduct that inalterably prejudiced the defendant. See United States v. Wang, No. 98–CR–199, 1999 WL 138930, at *37, *44, *52 (S.D.N.Y. Mar. 15, 1999) (dismissing the indictment before trial because the government "reckless[ly]" waited until one week before trial to disclose exculpatory statements made by a potential witness and then allowed that witness to disappear, making it impossible under the Sixth Amendment for the defendants to receive a fair trial); United States v. Chapman, 524 F.3d 1080, 1087 (9th Cir. 2008) (affirming dismissal of the indictment after trial was already underway because the government had acted "flagrantly, willfully, and in bad faith" and "the defendants would suffer substantial prejudice if the case were retried" because the government's case to date had been "quite weak" and the defendants would thus suffer "substantial prejudice" if the case were retried).

2. <u>Legal Standard Regarding *Brady* Disclosures</u>

The Supreme Court held in <u>Brady v. Maryland</u> "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. That duty applies to impeachment evidence as well as exculpatory evidence. <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972). "There are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

"Whether evidence is suppressed is often a question of timing." <u>United States v. Espinal</u>, 96 F. Supp. 3d 53, 65-66 (S.D.N.Y. 2015). "[T]he timing of disclosure under <u>Brady</u> and <u>Giglio</u> may be of critical importance in many criminal cases." <u>United States v. Coppa</u>, 267 F.3d 132, 138 (2d Cir. 2001). A defendant has no constitutional right to receive <u>Brady</u> material prior to trial. <u>See</u> <u>United States ex rel. Lucas v. Regan</u>, 503 F.2d 1, 3 n.1 (2d Cir. 1974). The scope of a defendant's right is analyzed retrospectively. <u>Strickler</u>, 527 U.S. at 281-82; <u>see</u> <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 870 (2006). "[A]s long as a defendant possesses <u>Brady</u> evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." <u>Coppa</u>, 267 F.3d at 144. Courts have found that producing <u>Brady</u> material to defense counsel only days before trial is not sufficient for defense counsel to be able to put it to "effective use." <u>See, e.g.</u>, <u>Espinal</u>, 96 F. Supp. 3d at 65-66 (holding that the government's disclosure of <u>Brady</u> material four days before the start of the rescheduled trial was "unduly late" because "[t]his material could not have been effectively used

at trial, if the trial had proceeded as scheduled," but nonetheless finding no Brady violation); Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001) (holding that the government's disclosure, nine days before trial, of Brady material consisting of the name and address of a witness of whom the defense was not aware "was too little, too late").

With respect to Giglio material, information bearing on witness credibility may be turned over at the same time as material under the Jencks Act, 18 U.S.C. § 3500 (1986). United States v. Feldman, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990); United States v. Biaggi, 675 F. Supp. 790, 812 (S.D.N.Y. 1987). As in the Southern District of New York, in the Eastern District of New York Giglio material is customarily produced "with Section 3500 material in recognition of the fact that this type of Brady material does not ordinarily require any independent investigation to use it effectively at trial. Consequently, neither the courts nor the parties in criminal cases have assumed that there is any pretrial right to disclosure of Giglio material." United States v. Jacques Dessange, Inc., No. 99-CR-1182, 2000 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000).

    C.    Argument

The defendants argue that the indictment should be dismissed because the government purportedly (1) made representations ex parte that are not supported by any evidence; (2) failed to abide by orders of the Court to produce materials pursuant to its Brady obligations; and (3) made misrepresentations about the scope and status of Rule 16 discovery to the Court and the defense. Def. Mot. at 2-3, 20-26. In sum, the defendants contend that the government has conducted "a campaign of falsehoods" that has "secured for the Government strategic yet improper advantages by withholding from the defense critical evidence, including exculpatory

material." Id. at 2-3.  For the reasons discussed below, the defendants' motion is baseless and should be denied its entirety.

> 1. The Government Accurately Presented the Grounds for Deferred Disclosure In Its *Ex Parte* Applications

The defendants argue that the government's Ex Parte Application, which sought a protective order authorizing deferred production of certain discovery related to its cooperating witnesses, contained representations that are not supported by any evidence.  Def. Mot. at 2.  Specifically, according to the defendants, these unsupported statements included the following: (1) that the "Defendants posed a serious risk to the safety of cooperating witnesses and their families"; (2) that "the Defendants and the cooperating witnesses were all part of the same small Orthodox Jewish community"; and (3) that the cooperating witnesses "had articulated the identical fear of 'ostracism and harassment' because the defendants and their communities were Jewish, and as such, would retaliate against the cooperators."  Id.  The defendants also contend that the government repeated these purported unsupported representations in the April 2018 Letter, which the government filed ex parte to seek deferred disclosure of Section 3500 material of its cooperating witnesses.  Id. at 2-3.  In sum, the defendants argue that these two ex parte applications, "rather than seeking to protect witness safety," were "intended to gain an improper strategic advantage for the Government by delaying the disclosure of keenly relevant materials to the defense until much closer to trial."  Id. at 22.

The Court should reject the defendants' inflammatory arguments regarding the government's Ex Parte Application and April 2018 Letter because the government accurately presented legitimate grounds to delay disclosure of sensitive Rule 16 discovery and Section 3500 material related to its cooperating witnesses.  Tellingly, the defendants do not claim that the government's cooperating witnesses and their counsel did not tell the government prior to

submission of the Ex Parte Application that these witnesses feared ostracism and harassment within their Orthodox Jewish communities if their status as cooperators were publicly revealed. And the defendants have good reason for not making this claim—because the cooperating witnesses and their counsel did in fact communicate those concerns to the government.

Rather, the defendants argue that they are entitled to a hearing because the government's representations in the Ex Parte Application and April 2018 Letter are purportedly not supported by any evidence. See Def. Mot. at 4 n.3, 23 n.8. But this argument carries no weight. The government was entitled to proffer its cooperating witnesses' and their counsel's concerns ex parte to the Court in seeking deferred disclosure of certain Rule 16 discovery and Section 3500 material. Moreover, the ex parte submissions contained, and public events in this case serve as, compelling evidence of the soundness of the government's applications and the legitimacy of the concerns that animated them.[2]

---

[2] As discussed above, the ex parte applications summarized statements and concerns expressed by the cooperating witnesses and their counsel, as well as the intimidation of ▓▓▓▓▓—disturbing conduct that had occurred just before the government's submission of the Ex Parte Application and further supported the need for the application. That conduct also was explored and condemned in a status conference before Chief Judge Irizarry, also just before the filing of the Ex Parte Application. ▓▓▓▓▓

The defendants' other arguments in support of a hearing are also unfounded. They have argued that (1) the cooperating witnesses and the defendants are "not in fact members of the same community," Def. Mot. at 12-13; (2) the government failed to include in the Ex Parte Application that there was "little if any chance that the defendants were not already aware of the identities of the cooperating witnesses" and in the eight months following the unsealing of the indictment, "not one of the cooperating witnesses had suffered the slightest harm to their safety, that of their families, or any kind of 'ostracism or harassment,'" id. at 13; and (3) the government did not move to remand the defendants, which purportedly shows that it did not believe the defendants posed a risk to the witnesses' safety, id. at 2 n.2. Defendant Small has additionally argued in a separate motion that (1) there was no basis to defer production of the sensitive discovery as to him, (2) "the only reason" he was included in the Ex Parte Application "appears to be his and the cooperators' Jewish faith," which violates his constitutional rights, and (3) there is "affirmative evidence" that at least one of the cooperators did not voice "any concern as to Mr. Small at all" because that cooperator allegedly shared the same counsel as Small in a civil case in Texas, and "[i]t is inconceivable that an attorney for one of the Government's witnesses, who purportedly feared retribution for his decision to cooperate, would represent another client in the same matter who was the purported source of the fear of retribution." Small Mem. at 2.

The defendants wholly, and self-servingly, miss the point. The Ex Parte Application and the April 2018 Letter articulated the concerns of the cooperating witnesses about facing ostracism and harassment in their Orthodox Jewish communities if their cooperation with the government were revealed publicly; these applications did not assert that the defendants posed a threat of physical violence to the cooperating witnesses. This distinction is critical because it undercuts the defendants' and Small's arguments in support of a hearing. In other words, the Ex

Parte Application was focused on the witnesses' legitimate fear of public disclosure of their cooperation, not the danger of physical violence that any defendant posed, and the Court permitted delayed disclosure on that ground.  Further, although the defendants seek to obfuscate and inflame in their portrayals of the government's ex parte submissions, including by characterizing safety concerns as exclusively concerns of physical violence, the ex parte submissions, on their face, make clear that the safety concerns were tied to potential ostracism and harassment—consequences that already had been visited upon ███████ mere weeks before the government submitted the Ex Parte Application.

In addition, regardless of whether the cooperators and the defendants were part of precisely the same small Orthodox Jewish community, the witnesses' and the government's concerns were based on how these witnesses would be treated in their communities if their status as cooperators were publicly disclosed.  Moreover, in any criminal case involving unindicted—or even indicted—co-conspirators, defendants and others may speculate as to who, if anyone, is cooperating with the government.  Such speculation and its effects are worlds apart from the effects of the government's public confirmation of such cooperation, paired with the government's release of sensitive discovery exposing the cooperators and the extent of their usefulness to the government's case.  Further, as the ex parte applications made clear, the concerns of the cooperating witnesses were not specific to harassment by the defendants themselves; rather, they pertained to painful repercussions in their broader communities.

Finally, Small's arguments in further support of dismissal are likewise unavailing and baseless.  First, even assuming arguendo that Small somehow was differently situated from his co-defendants or belonged to a different community from them, producing the sensitive materials only to Small and not his co-defendants would have defeated the purpose of the Ex

Parte Application by revealing nonetheless the cooperating witnesses' identities. The government could not reasonably have expected such information not to be released at least to Small's co-defendants, if not more broadly, especially given the publicly acknowledged routine and free communication among the members of the defense in this case. See, e.g., Transcript of Oct. 29, 2018 Status Conference at 9 (Mr. Sommer: "[W]e devoted our collective resources to wading through as many of those millions of documents as we could to try to get ready, and we spent thousands of hours doing that we spent the Platinum insurance money doing that, and, you know, that was a decision we made collectively . . . ."). In addition, the Ex Parte Application was based on information the government received from the cooperating witnesses and their counsel and was not propounded in violation of any defendant's constitutional rights; the reckless and offensive suggestion that improper animus drove the application is completely unsupported by the substance of the applications. Finally, whether an attorney represented Small in a civil case at some point on the one hand, and a cooperating witness in this investigation on the other, has no impact on the validity of the specific information the government proffered in good faith in the ex parte applications.

        In sum, the government accurately presented the bases for the delayed disclosure it sought in the Ex Parte Application and the April 2018 Letter, and the defendants have not made a sufficient showing entitling them to a hearing regarding these two ex parte applications.

        2.        The Government Has At All Times Complied with Its *Brady* Obligations and There Has Been No *Brady* Violation

        The defendants argue that the government repeatedly misrepresented to them and the Court "that there was no additional Brady material contained in any of the witness statements the government had prepared in the course of the investigation." Def. Mot. at 3. The defendants assert that the witness statements that were produced on October 24, 2018 "are in fact replete with

obvious exculpatory evidence that the Government had been ordered to turn over to the defense more than a year ago." Id.

The defendants' assertions have no merit. The government undertook a good-faith Brady review, made multiple resultant disclosures to the defendants and spoke truthfully to the Court about that process and the government's compliance with its obligations. Furthermore, the government disputes that the statements to which the defendants now point, see Def. Mot. at 10-11, constitute Brady material.[3] The individuals whose Section 3500 materials the defendants cite include: ▓▓▓▓ and ▓▓▓▓▓▓▓, all of whom worked at Platinum in relevant positions during the charged scheme; and ▓▓▓▓, the attorney who represented Black Elk Energy Offshore Operations LLC ("Black Elk") in connection with the Black Elk bond consent solicitation, and whom defense counsel for Levy deposed for nearly 11 hours on July 11,

---

[3] The defendants requested permission from the Court "to be heard *ex parte* so that we can detail for the Court the full scope of what is contained in the 3500 material" that they claim is Brady material, without "compromis[ing] our defense strategy." Levy Sealed Br. at 11. The government objects to the defendants' request to submit such information to the Court ex parte, both because it is inconsistent with defense counsel's already having cited to a number of specific examples of what they deem Brady material in open court at the October 29, 2018 status conference, and also because, in light of the relief the defendants are seeking, it is necessary for the government to respond to whatever arguments they make to the Court on this issue. See, e.g., United States v. Carton, No. 17-CR-680 (CM), 2018 WL 4360781, at *1-*2 (S.D.N.Y. Sept. 6, 2018) (denying defendant's request to file brief ex parte "to avoid disclosing defense trial strategy to the Government in advance of trial" because nature of defendant's defense already had been disclosed "by counsel in open court," it was "impossible to make a truly proper assessment of the issue without giving the Government . . . an opportunity to respond," and the government "cannot respond to a brief that they have never seen"). Moreover, it undermines the defendants' argument that such witness statements contain obvious Brady material for the defendants also to claim that revealing those examples to the government now would expose an otherwise indiscernible defense strategy.

2018 in a state action in Texas relating to the same conduct, see id. at 11. The defense has long been aware of the significance of these four individuals to this case.[4]

Accordingly, none of the three components of a Brady violation is present: (1) the evidence at issue is not exculpatory, (2) the government did not suppress it, and (3) there has been no prejudice to the defendants. See Strickler, 527 U.S. at 281-82. First, as discussed above, the statements the defendants cite from the Section 3500 materials are not exculpatory. Second, the government appropriately produced the statements as Section 3500 material pursuant to its obligations under Brady, Giglio and the Jencks Act. Finally, and critically, the Section 3500 materials were produced 75 days before the original trial date of January 7, 2019, and 118 days before the new trial date of February 19, 2019, and thus the defendants have had ample time to make effective use of the materials (to the extent they have not already obtained the same information from those witnesses independently) and have in no way been prejudiced. See Coppa, 267 F.3d at 144 ("[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."); cf. Espinal, 96 F. Supp. 3d at 65-66 (holding that the government's disclosure of Brady material four days before the start of the rescheduled

---

[4] Furthermore, the examples of purported Brady material listed in the defendants' motion are presented without important context, including context for the statements themselves or the roles or breadth of knowledge of the speakers. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the cited statement of ▮▮▮▮▮▮ —on a subject that defense counsel for Levy explored in detail at the July 2018 civil deposition in Texas—misleadingly suggests that ▮▮▮▮▮ was given full and accurate information and acted to immunize the fraud committed by the defendants in the Black Elk bond scheme, none of which is correct.

trial was "unduly late" because "[t]his material could not have been effectively used at trial, if the trial had proceeded as scheduled," but nonetheless finding no Brady violation).

### 3. The Government Has At All Times Complied with Its Rule 16 Obligations

The defendants also argue that, despite the government's representations that the "vast majority" of Rule 16 discovery had been produced to the defendants, those representations were false because the government thereafter produced "hundreds of thousands of pages of communications and hours and hours of recordings" on October 5, 2018. Id. at 25-26. This argument is baseless.

Contrary to the defendants' contention, the government has always been truthful with the defendants and the Court regarding the status of the government's discovery. In particular, the defendants claim that the government misled them and the Court in connection with the October 5, 2018 production. Def. Mot. at 25-26. This claim has no merit. The government deferred production of the sensitive discovery enumerated in the Ex Parte Application until October 5, 2018 pursuant to Chief Judge Irizarry's sealed and ex parte order granting that application. The government at all times acted pursuant to this sealed, ex parte court order. It would have been improper and would have defeated the purpose of that order if the government had made reference on the public record to the deferred production. Moreover, the ex parte order was visible to the Court on the docket and was referenced in the April 2018 Letter (along with the deferred production that it authorized). These facts prove that the government did not make false statements about the status of Rule 16 discovery.

### 4. Because the Defense's Prosecutorial Misconduct Claims Are Baseless, None of the Remedies the Defense Seeks Is Warranted

For the reasons discussed above, there is no merit to the defendants' arguments that the government has committed prosecutorial misconduct with respect to its August 2017 and

April 2018 <u>ex parte</u> applications, its <u>Brady</u> disclosures or its Rule 16 discovery. Accordingly, none of the remedies the defense seeks is warranted.

There is no basis to dismiss the indictment because the government has not committed misconduct, let alone egregious misconduct, and the defendants have not been prejudiced, let along inalterably prejudiced. <u>See</u> <u>Morrison</u>, 449 U.S. at 365 (holding that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment [due to government misconduct] is plainly inappropriate, even though the violation may have been deliberate"); <u>Casamento</u>, 887 F.2d at 1183 ("[D]ismissal of an indictment based on a prosecutor's conduct or misconduct is warranted only where a substantial right of the defendant has been jeopardized."). To the extent that the defendants are arguing that they were prejudiced by the October 5, 2018 production because they had devoted their limited resources and time to previous discovery productions, <u>see</u> Def. Mot. at 3, the government disputes this argument but notes that such minimal, if any, prejudice does not warrant dismissal of the indictment. <u>See</u> <u>Espinal,</u> 96 F. Supp. 3d at 58, 70-71 (holding that "the extraordinary remedy of dismissal of the indictment is not warranted" because the government did not act "flagrantly, willfully, or in bad faith" and "[n]o jury has been empanelled, no conviction has been obtained, and no witnesses have died or become unavailable"; "[w]hile some prejudice remains—the delay and increased effort and cost—the answer is not to dismiss the charges").

Suppression of the sensitive materials produced on October 5, 2018 pursuant to the Court's order permitting delayed disclosure is also not warranted given that the government sought and obtained the <u>ex parte</u> order in good faith, the deferred production was authorized by that order and the defendants received those materials well in advance of trial. There is likewise no basis for preclusion of the testimony of the cooperating witnesses whose materials were

included in the October 5, 2018 production, and the defendants cite to no authority suggesting the appropriateness of such a remedy.

    D.    <u>Conclusion</u>

For the foregoing reasons, the defense's motion to dismiss the Indictment, or, in the alternative, to suppress the materials contained in the government's October 5, 2018 production and preclude the cooperating witnesses who provided the materials in the October 5, 2018 production from testifying at trial, should be denied in its entirety.

<u>REQUEST FOR SEALING</u>

The government respectfully requests permission to submit this memorandum of law under seal. The government is mindful of the need to minimize the amount of information in a criminal case that is filed under seal. <u>See, e.g.</u>, <u>United States v. Aref</u>, 533 F.3d 72, 83 (2d Cir. 2008) (noting the "requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 119-20 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). Sealing is warranted here, however, because the memorandum of law discusses in detail the names of the government's cooperating witnesses, statements they made to the government and the extent of their cooperation. <u>See</u> <u>United States v. Amodeo</u>, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including safety of witnesses and the identities of cooperating witnesses, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing).

As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch</u>, 435 F.3d at 120, the government respectfully requests that the Court record those findings and file this memorandum of law and any order entered thereon that names or makes specific reference to the witnesses described herein, under seal.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendants' motion to dismiss the indictment should be denied.

Dated: Brooklyn, New York
December 7, 2018

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

By:   /s/
Alicyn L. Cooley
David C. Pitluck
Patrick T. Hein
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (BMC)
Defense Counsel (By ECF)