UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
    UNITED STATES OF AMERICA,

                - against –

    MARK NORDLICHT,
    DAVID LEVY,
    DANIEL SMALL,
    JOSEPH MANN,
    JOSEPH SANFILIPPO, and
    JEFFREY SHULSE,

                Defendants.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

16-cr-00640 (BMC)

**COGAN,** District Judge.

Defendants have moved to dismiss the indictment or, in the alternative, to suppress materials withheld from defendants and preclude certain cooperating witnesses from testifying. Defendants also request hearings in connection with these requests. For the reasons stated below, defendants' motion is denied.

## BACKGROUND

The following facts are taken from defendants' motion to dismiss for prosecutorial misconduct and from other documents filed with the Court. Defendants argue three ways in which the Government has engaged in prosecutorial misconduct: first, it failed to properly disclose material under Brady v. Maryland, 373 U.S. 83 (1963); second, the Government made misrepresentations to the Court in two *ex parte* applications; and third, the Government made misrepresentations to the Court and to defendants about its Rule 16 discovery.

Defendants' allegations are based on the following events:

- On December 14, 2016, defendants were indicted.

- On March 27, 2017, the Government assured the Court and defendants during a status conference that it would produce any material under Brady but did not specify the timeframe for its production of Brady material.

- On May 12, 2017, during a status conference, the Court ordered the Government to review its records for Brady material and provide a letter to the Court by June 30, 2017 with a status report. The Government claimed that the "vast majority" of its Rule 16 discovery had been produced.

- On June 30, 2017, the Government provided a letter to the Court indicating that it reviewed its records and provided Brady material regarding four individuals.

- On July 5, 2017, defendant Levy wrote a letter to the Government requesting all material under Brady and its progeny, including 44 categories of Brady material. Two days later, the Court ordered the Government to respond to each request for the 44 categories of Brady material by July 28, 2017.

- On July 28, 2017, the Government replied to the July 5, 2017 letter, responded to each request for each category of Brady material that defendant Levy identified, and indicated that there was no additional Brady material to disclose.

- Around August 2017, a cooperating witness interacted with a man in his religious community who heard that the witness was cooperating with the Government in this case. The Government described this incident in the April 2, 2018 *ex parte* application to the Court described below.

- On August 8, 2017, defendant Nordlicht sent a letter to the same cooperating witness identified above about statements that the witness made to the Government. The Government obtained this letter and provided it to the Court the next day.

- On August 25, 2017, the Government made an *ex parte* application to the Court to defer disclosure of Rule 16 materials for four cooperating witnesses until three months before jury selection to protect the safety of those four witnesses and their families. In its application, the Government claimed that these cooperating witnesses expressed fear that they would be subject to ostracism and harassment if their cooperation against fellow members of their religious community was revealed. The Court granted this application in an *ex parte* order three days later.

- On August 28, 2017, the Government confirmed during a status conference that it would provide any Brady material it uncovers.

- On October 17, 2017, the Government reiterated during a status conference that it produced "the vast majority of everything" in the Government's possession.

2

- On November 27, 2017, the Government claimed during a status conference that there would be no additional non-privileged productions from the search of Platinum Partners' offices, but the Government will be producing "non-voluminous" nonparty productions.

- On April 2, 2018, the Government filed an *ex parte* application to delay its disclosure of Section 3500 material for sensitive witnesses until 30 days before trial on a similar basis as the August 25, 2017 *ex parte* application. The Court denied this application during a status conference held on April 9, 2018.

- On June 29, 2018, the Government informed the Court and defendants during a status conference that the Government was "up to date" with discovery and confirmed the Court's understanding that there would not be "any more 120,000-document productions to occur in the case at this stage." The Court also ordered the Government to provide its Section 3500 material 75 days in advance of trial.

- On September 21, 2018, the Government stated during a status conference that there were only "minimal productions left to be made."

- On October 5, 2018, the Government informed defendants that it had withheld Rule 16 materials, including close to 300,000 pages of documents and numerous recordings, under the *ex parte* order allowing defendants to defer production of Rule 16 material until three months before trial. Three days later, defendants could order the documents from the Government's vendor.

- On October 24, 2018, the Government produced its Section 3500 material, including witness statements from 122 witnesses, consistent with the Court's order to produce the Section 3500 material 75 days before trial. Defendants describe this production as "voluminous" but do not provide further information about the size of the production. Defendants claim that these statements contain <u>Brady</u> material that had not been previously disclosed and that is responsive to defendant Levy's July 5, 2017 request.

- Trial was originally scheduled to begin on January 7, 2019. It was adjourned on November 30, 2018.

- Trial is scheduled to begin on February 19, 2019.

## **DISCUSSION**

Dismissal of an indictment due to prosecutorial misconduct is appropriate "only in very limited and extreme circumstances" in which "there [is] a need either to eliminate prejudice to a defendant in a criminal prosecution, where it [is] impossible to do so by imposition of lesser sanctions, or to deter a pattern of demonstrated and longstanding widespread or continuous

3

official misconduct." United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979). But "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." United States v. Morrison, 449 U.S. 361, 668 (1981). "Because of this exacting standard, courts rarely dismiss indictments based on governmental misconduct." United States v. Turner, 23 F.Supp.3d 290, 319 (S.D.N.Y. 2014).

## I. Brady Material

Under Brady, the Government is required to disclose material evidence favorable to a criminal defendant. The Government violates Brady if it suppresses evidence, either willfully or inadvertently; the evidence is favorable to the accused; and prejudice ensued. See Strickler v. Greene, 527 U.S. 263, 281 (1999). Because prejudice is required for a Brady violation, "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. at 281-82.

For that reason, Brady does not require the disclosure of evidence before trial. Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001). "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." U.S. v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001); see Leka, 257 F.3d at 100 (holding that the Government's disclosure, nine days before trial, of Brady material consisting of the name and address of a witness of whom the defense was not aware violated Brady because this disclosure was too late for defendants to effectively use the material).[1]

---

[1] It is well established that the Government's obligations under Brady extend to material impeachment evidence. See Giglio v. United States, 405 U.S. 150, 154 (1972). It is also well-established that "there is no pretrial constitutional right to disclosure of Giglio material." U.S. v. Jacques Dessange, Inc., No. 99-CR-1182, 2000 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000). Defendants do not explicitly contend that the Government has withheld

4

Here, even assuming that the Government's production of Section 3500 material contained Brady material, the Government produced it approximately three months before the original trial date and approximately four months before the current trial date. Defendants have ample time to make effective use of these materials, to the extent they have not already. Other than timing, defendants cannot point to any other identifiable prejudice that they have faced. The Court cannot say, then, that the Government has violated its Brady obligations merely by not producing this material earlier. As a result, the Government's production of Brady material in its production of Section 3500 material does not provide a basis to dismiss the indictment or suppress the materials contained in the deferred production.[2]

Defendants also claim that, separate from whether there was a Brady violation, the Government made affirmative misrepresentations to the Court in response to the Court's orders directing the Government to review its files and produce Brady materials, and for that reason the indictment should be dismissed. Defendants have not provided sufficient evidence for the Court to conclude that the Government possessed – but chose not to disclose – Brady material at the time it made its representations to the Court. The Court will not infer that the Government acted in bad faith without more convincing evidence.

## II. *Ex Parte* Applications

The Government has stated, and continues to maintain, that the cooperating witnesses have expressed concerns that they would be subject to ostracism and harassment in their community if their cooperation with the Government was revealed. But the Government has not provided any evidence to this effect – only its representations of what the cooperating witnesses

---

any Giglio material here, but to the extent their motion can be read to include Giglio material, the same analysis would apply.

told the Government – because those statements were never memorialized. As a result, defendants argue that these *ex parte* representations to the Court regarding the threats to witness safety were false.

The Government's position would be stronger if it could point to tangible evidence that the witnesses expressed the concerns the Government attributes to them. But the absence of such evidence does not warrant dismissal of the indictment. Although these statements are not contained in any writing that the Government has identified, the Government insists that they were made. And although the Government's failure to memorialize the statements that its cooperating witnesses made is not a best practice, the Court will not presume that the Government acted in bad faith in its *ex parte* applications to the Court without further evidence.

Once again, defendants received the deferred Rule 16 production sufficiently in advance of trial to obviate any prejudice resulting from the delayed disclosure of these materials. Therefore, neither dismissing the indictment nor precluding the cooperating witnesses or related material is warranted.

### III. Rule 16 Discovery

Before the Government made its deferred Rule 16 production to defendants under the *ex parte* applications discussed above, it repeatedly misrepresented the scope of its outstanding discovery to the Court and to defendants. The Government claimed that any remaining productions were "minimal" and were limited to nonparty productions, when in fact it later produced close to 300,000 pages and numerous records that it deferred under the *ex parte* order.

The Government argues that it would have defeated the purpose of the *ex parte* applications and order if the Government publicly referenced the deferred Rule 16 production. But the order did not authorize the Government to misrepresent the scope of its remaining

productions. The Government could have accurately represented the anticipated scope of future productions without revealing that these documents relate to the cooperating witnesses who were subject to the *ex parte* order. There are many ways to address *ex parte* discovery applications without revealing their contents, to avoid this precise situation. At the very least, the Government could have provided *ex parte* communications to the Court explaining that public representations about the remaining discovery did not include documents subject to the *ex parte* order.

Although the Court does not appreciate the Government's lack of candor, the Government's conduct does not warrant the dismissal of the indictment. Defendants received the Rule 16 materials over four months before trial, so they have not shown the necessary prejudice required for dismissal of the indictment or to preclude the materials from trial. But the Government is strongly cautioned to be candid in all representations it makes to the Court in the future.

## IV. Request for Hearings

The "key determinant in whether a hearing is required" to decide a motion to dismiss for prosecutorial misconduct "is whether, given the nature and circumstances of the case, the parties had a fair opportunity to present relevant facts and counter the opponent's submissions," including the opportunity to brief the relevant issues. United States v. Walters, 910 F.3d 11, 29 (2d Cir. 2018) (internal quotation marks and alterations omitted). No hearing is required "where the relevant facts can be ascertained from the record." U.S. v. Pavloyianis, 996 F.2d 1467, 1475 (2d Cir. 1993).

Defendants request to be heard *ex parte* to detail for the Court the full scope of Brady material they allegedly received in connection with the Section 3500 material. The Court

recognizes that defendants would like an opportunity to explain further (in a way that will not show their hand to the Government) how this delayed disclosure of Brady material prejudices them, but because defendants have not suffered any prejudice due to the timing of the productions of the relevant material, any additional details about the contents of the production would not change the outcome.

Defendants also request a hearing regarding the Government's assertions in support of its *ex parte* applications. But the parties had ample opportunity to brief the Government's alleged misconduct with respect to the *ex parte* applications, as their extensive and detailed briefing demonstrates. The Court has also heard the parties' views on this issue in status conferences and prior submissions with the Court. Defendants have not shown that there are additional facts to add to the record, and there is no need for a hearing for the parties to reargue these same positions.

Defendants' request for these hearings is therefore denied.

## **CONCLUSION**

Defendants' [443] motion to dismiss for prosecutorial misconduct is denied.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      January 15, 2019