UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
                - against –                        :    **MEMORANDUM DECISION AND**
                                                               :    **ORDER**
MARK NORDLICHT,                                                :
DAVID LEVY,                                                    :    16-cr-00640 (BMC)
DANIEL SMALL,                                                  :
JOSEPH MANN,                                                   :
JOSEPH SANFILIPPO, and                                         :
JEFFREY SHULSE,                                                :
                                                               :
                    Defendants.                  :
-------------------------------------------------------------- X

**COGAN,** District Judge.

Defendants SanFilippo, Nordlicht, and Levy have moved to dismiss count IV of the indictment or, in the alternative, to preclude the Government from referring to the PPNE Notes (defined below) as securities. For the reasons below, defendants' motion is denied.

## BACKGROUND

Count IV of the indictment charges defendants with securities fraud in connection with notes offered by Platinum Partners Northstar Equity (the "PPNE Notes") at annual interest rates of 16 percent and 12 percent. Platinum issued three PPNE Notes: two on September 18, 2014 and one on August 12, 2015.[1] The two September 18, 2014 notes matured in three years and the August 12, 2015 note matured in one year, yet all three PPNE Notes permitted the lender to

---

[1] Defendants' opening brief includes a promissory note issued on July 1, 2014 as a PPNE Note, but in the subsequent briefs the parties agree that this July 1, 2014 note is not a PPNE Note. Accordingly, the Court will not treat the July 1, 2014 as a PPNE Note for purposes of this order. Defendants also dispute that the August 12, 2015 note is a PPNE Note because it was not explicitly referenced in the indictment or in the Government's exhibit list. The Court finds that the indictment's references to the PPNE Notes are sufficient to provide notice of all three notes. However, the Court cautions the Government that any exhibits it intends to use as part of its case-in-chief at trial should be included in its exhibit list.

demand prepayment of the principal amount after six months. The agreements underlying the PPNE Notes also provided that, before the PPNE Notes are transferred, they must be registered with the borrower, PPVA, and also registered or exempt under the Securities Act of 1933.

According to the indictment, Platinum marketed PPNE Notes to new and existing Platinum investors, as well as to Platinum employees and insiders, as a way to raise capital for Northstar, one of the largest portfolio companies of Platinum Partners Value Arbitrage Fund ("PPVA"). The indictment alleges that instead of raising capital for Northstar, Platinum primarily used the PPNE Notes to raise funds to pay PPVA's redemptions and other obligations. The indictment also alleges that Platinum provided certain PPNE Note investors "preferential redemptions" by selectively paying them ahead of other investors.

In light of these allegations, count IV of the indictment charges defendants with securities fraud in violation of 17 C.F.R. § 240.10b-5 and 15 U.S.C. § 78j(b). Defendants have moved to dismiss count IV because they dispute the Government's characterization of the PPNE Notes as securities in light of their maturity date, among other characteristics. Defendants contend that, because the PPNE Notes are not securities, the indictment has failed to allege an essential element of securities fraud, so count IV should be dismissed.

## DISCUSSION

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed.R.Crim.P. 7(c). Under Federal Rule of Criminal Procedure 12(b)(3)(B)(V), a defendant may bring a motion to dismiss for "failure to state an offense." A court "accept[s] as true all of the allegations of the indictment" when deciding a motion to dismiss the indictment. U.S. v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985).

An indictment must "set forth all the elements necessary to constitute the offence intended to be punished." U.S. v. Santeramo, 45 F.3d 622, 624 (2d Cir. 1995) (internal quotation mark omitted). In securities fraud cases, the indictment must allege each element of securities fraud. U.S. v. Teyibo, 877 F. Supp. 846, 861 (S.D.N.Y. 1995). "First and foremost, to state a valid claim of securities fraud under Section 10(b), the allegedly fraudulent conduct must involve a 'security.'" U.S. v. Zaslavskiy, No. 17-cr-647, 2018 WL 4346339, at *4 (E.D.N.Y. Sept. 11, 2018).

### I. Maturity Date

The definition of a "security" is interpreted "[i]n light of Congress' broader purpose in the [Securities] Acts of ensuring that investments of all descriptions be regulated to prevent fraud and abuse . . . ." Reves v. Ernst & Young, 494 U.S. 56, 73 (1990). A court "begins with a presumption that any note with a term of more than nine months is a 'security.'" Id.

Here, because the PPNE Notes matured in over nine months, they are presumed to be securities. See id. Defendants contend that the Court should treat the maturity date of the PPNE Notes as six months – which is when the lender could demand prepayment – because under New York Uniform Commercial Code § 3-122, a "cause of action . . . accrues . . . in the case of a demand instrument upon its date . . . ."

However, the accrual of a cause of action under state law does not control the maturity date under federal securities laws. Reves, 494 U.S. at 71. Rather, the maturity date of a note is a question of federal law because, if state law controlled, then "a particular instrument [would be] a 'security' under the 1934 Act in some States, but . . . the same instrument [would] not [be] a 'security' in others." Id.

## II. <u>Reves</u> Factors

Even if a note has a maturity date of more than nine months, an issuer may "rebut the presumption that a note is a security if it can show that the note in question bears a strong family resemblance to an item on the judicially crafted list of exceptions . . . or convinces the court to add a new instrument to the list." Id. at 64 (internal quotation marks and alterations omitted). The types of notes on this list of exceptions include, but are not limited to, notes secured by mortgages on homes, notes delivered in consumer financing, and notes evidencing character loans to bank customers. Id. at 65.

To determine whether a note bears such a "strong family resemblance," courts look to the following factors: (1) "the motivations that would prompt a reasonable seller and buyer to enter into it" since a note is more likely to be a security if "the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate"; (2) the "plan of distribution of the instrument . . . to determine whether it is an instrument in which there is common trading for speculation or investment"; (3) "the reasonable expectations of the investing public"; and (4) "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." Id. at 66-67 (internal quotation marks omitted).

Here, the <u>Reves</u> factors reinforce the presumption that the PPNE Notes are securities. First, the 12 and 16 percent interest rates and expectation that the PPNE Note proceeds would raise money to invest in Northstar – or, more broadly, to sustain PPVA – were significant inducements that would prompt a reasonable seller and buyer to issue and invest in the PPNE

Notes. Although the interest rates were fixed – suggesting investors would earn the same returns regardless of Northstar's performance, as defendants have observed – the Second Circuit has directed that a fixed rate of return does not "cut against the presumption that the notes are securities." Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 813 (2d Cir. 1994).

Second, the PPNE Notes were marketed to new investors as well as to existing Platinum investors, insiders, and employees. Defendants observe that the PPNE Note agreements provide that any transfer must be registered with the borrower, thereby restricting the distribution of the PPNE Notes to the public. However, the requirement that the borrower register any transfer of PPNE Notes – which is not a particularly onerous restriction – should be read in conjunction with the agreements' requirement that any transferred PPNE Note be registered or exempt under the Securities Act of 1933. This suggests that the parties to the PPNE Notes contemplated that the notes may be transferred to members of the public who would be protected by federal securities laws. Such a plan of distribution weighs in favor of classifying the PPNE Notes as securities.

Third, the reasonable expectations of the investing public appear to have been that the PPNE Notes represented a profitable investment opportunity in light of their high interest rates and the expectations for Northstar. In light of the underlying agreements' requirement that the PPNE Notes be registered or exempt under the Securities Act of 1933 before being transferred, the reasonable expectations of investors would also include the protections afforded under federal securities laws.

Fourth, no other regulatory scheme renders the application of federal securities laws unnecessary. Although defendants claim that New York state law – in particular, the New York Uniform Commercial Code and the New York Penal Law – provides a sufficient regulatory

5

scheme for the PPNE Notes, it appears that the PPNE Notes "would escape federal regulation entirely if [federal securities laws] were held not to apply." Reves, 494 U.S. at 69. Allowing defendants to escape federal regulation of the PPNE Notes by applying only New York law would be inappropriate in light of the scope and sophistication of defendants' alleged misconduct.

Because defendants have failed to rebut the presumption that the PPNE Notes are securities, their motion to dismiss count IV of the indictment is denied, as is their request to preclude the Government from characterizing the PPNE Notes as securities.

## **CONCLUSION**

Defendants' [432] motion to dismiss count four of the indictment is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 22, 2019