*Lisabeth J. Fryer, P.A.*
250 International Pkwy, Suite 134
Lake Mary, Florida 32746
Telephone: 407-960-2671
lisabeth@lisabethfryer.com

January 27, 2019

**VIA CM/ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re: *United States v. Mark Nordlicht, et al., No. 1:16-cr-00640-BMC*

Dear Judge Cogan,

     We write in reply to the government's January 25, 2019 filing which makes clear that Winston Paes, and perhaps others within the government, wrongfully disclosed to the press information learned during the grand jury investigation into Platinum. Indeed, the government's response makes clear that not only did these leaks occur, but the office is not interested in learning about and instead intends to preclude further disclosure or inquiry of the relevant facts surrounding these incidents. It is striking that the United States Attorney for the Eastern District would take the position that this court should not hold a hearing to conclusively establish what occurred. Indeed, whether individuals within the government were illegally disclosing information relating to a grand jury investigation is among the most critical issue to confront our justice system today. It is inconceivable that the government is not fully supportive of the need for a hearing to ensure that the public has faith in its attorneys and agents in the Eastern District. Given Ms. Cooley's prior assertions that her office conducted a full investigation, spoke with

relevant witnesses and examined relevant documents before reporting to this Court no leak from that office had occurred, it makes no sense that the government would not welcome a hearing to prove that each of its agents complied with the law and conclusively put this matter to bed.[1]

This Court ordered amended briefing on Mr. Nordlicht's assertion of government leaks based on newly disclosed communications between former lead AUSA Paes and members of the media – information that the government has been intentionally withholding for the past two years. This Court specifically requested additional briefing that addressed the FOIA information as it related to the leaks at issue. In its response, the government has asserted that Mr. Nordlicht's Amended Motion was too wide in scope because he did not focus exclusively on the FOIA disclosure but reminded this court of the salient facts. Mr. Nordlicht did not read this Court's Order to limit his arguments to a vacuum devoid of context. Understanding the connections between the recent FOIA disclosure and the publication of leaked grand jury material was a necessary and proper exercise. In fact, Judge Irizarry's Order denying a hearing was a very close call, as evidenced by her initial ruling on April 10, 2017 that a hearing was necessary. It was only after the declaration by Ms. Cooley that her investigation ended with a finding that Mr. Paes did not disclose any grand jury evidence that the Court made the determination that a hearing was not necessary. Based on the government's most recent filing, however, it is

---

[1] It would appear particularly important for Mr. Paes to want to clear his name given the seriousness of the allegations being made again him here, but when contacted by a reporter from Law360 for comment, and given an opportunity to defend himself, he is reported to have only said "no comment." We would submit that Mr. Paes' declining to defend himself in the press when asked whether he violated Rule 6(e) is itself evidence that he in fact wrongfully disclosed grand jury information to these reporters. It is also worth noting that neither Bloomberg nor the Wall Street Journal despite being aware of these events has asserted that its reports are based on dogged reporting and following proper leads.

unclear exactly what the Cooley Declaration represents, and whether it can be relied on for any factual assertion made that are not supported by other evidence.

Further, had Judge Irizarry known that Mr. Paes had dinner the night before the raid with Bloomberg reporter, Christie Smythe, and that Ms. Smythe (who had never written on Platinum before) was aware of the raid simultaneous with agents arriving at Platinum offices, then co-authored an article on the raid, we respectfully submit this would have changed Judge Irizarry's ruling in favor of a hearing. The government's response that no improper dissemination of information regarding the Platinum investigation occurred that night because the dinner was pre-planned to celebrate Ms. Smythe is unpersuasive.

Other facts support reconsideration now, as there were numerous other matters that came to light after the leaks motion and motion for reconsideration were filed that would have certainly altered Judge Irizarry's view.  For example, the government provided the defense with extensive *Brady* disclosure on Murray Grenville's favorable testimony to the defense before the Grand Jury, but only included testimony related to Black Elk valuation. The government concealed the fact that the focus of that testimony was Golden Gate Oil, the primary subject of Zeke Faux's August 11, 2016 article. Therefore, the leaks to Bloomberg reporters indisputably involved matters occurring before the Grand Jury. The defense could not introduce this previously in relation to the leaks because the government withheld the information until the production of 302 interviews, which occurred well after the leaks motion and motion for reconsideration had been filed. This one deception by the government completely undermines their argument that Judge Irizarry has irreversibly ruled in their favor.

3

Furthermore, Judge Irizarry was unaware of events surrounding Mr. Paes' emails with Patricia Hurtado, another Bloomberg reporter. Mr. Nordlicht had been pleading with his counsel Andrew Levander and Mr. Levander approached Mr. Paes to express his extreme concern about the leaks.  Mr. Paes then told Ms. Hurtado two days later "I can't talk about Platinum." The evidence in the record irrefutably proves that the leaks that continued unabated for four months, and the government has failed to provide this court with any evidence that they stopped at any time.  Nor was Judge Irizarry aware that Mr. Paes was "pitching" articles to reporters to try and get them to write an article as to how many cases he brought versus how many cases were brought in the Southern District to further the image Mr. Paes was attempting to cultivate of himself in the press that must have contributed to his terrible lapses in judgement that contributed to Platinum investor losses. It is thus clear that the government held back much information that would have altered Judge Irizarry's view. They cannot not be expected to police themselves.  If Mr. Nordlicht is not granted a hearing given these facts, it would appear that the right to such a hearing once a *prima facie* case is established is illusory.

## THE FOIA DISCLOSURE ESTABLISHES THAT WINSTON PAES LEAKED GRAND JURY MATERIAL. A HEARING IS NOW REQUIRED

Winston Paes leaked confidential information about the investigation into Platinum Partners and Mr. Nordlicht to the media.  There is now evidence that Mr. Paes (and possibly others in the government) revealed the targets of the investigation, the theories of criminal activity being presented to the grand jury, and specific activities that the grand jury was investigating, specifically the focus on valuation of level three assets, and the value of Golden Gate Oil.  These leaks caused damage to the funds themselves.

The connection between Mr. Paes' communications to specific reporters, plans to meet or speak, and the corresponding published articles containing leaked material is now evident. What is troubling now is not only that this information exists, but that the information in the FOIA disclosure would have never been produced to the court absent a separate FOIA request and litigation. This is not a game.

The government's argument in opposition to a hearing is that the defense has not established that there was leaking on matters occurring before the grand jury. This assertion is belied by the record. First, Murray Grenville's testimony on Golden Gate establishes without any doubt that the Grand Jury was investigating Platinum's valuation into Golden Gate and that Zeke Faux's article involved matters occurring before the grand jury. Patty Hurtado thanked Mr. Paes for speaking with her the day after this article was published.

Furthermore, in examining the governments explanation of Mr. Paes' dinner with Ms. Smythe, the government's interpretation is that the leaks are not specifically apparent from emails, but if a leak occurred, it does not involve matters occurring before the grand jury. In terms of the leak not being explicit in the emails, that is not the standard of a *prima facie* case and that is exactly why a hearing and further production of communications is necessary. The government's claim that the lead AUSA leaking an office raid seeking the same materials requested in a prior grand jury subpoena does not involve a leak as to the direction of the grand jury investigation is astounding. The government has previously represented that the vast majority of evidence presented to the grand jury was derived from the raid of Platinum's offices. The raid was therefore the epitome of the direction of the grand jury investigation.

The June 22 Bloomberg article further revealed that Platinum offices had been "raided by federal agents looking into the hedge fund's operations…according to a person familiar with the matter." The article also revealed that the "investigation, also involves the U.S. Attorney's office in Brooklyn." The article then explains that "[t]he raid is separate from the bribery probe, the person said." Again, the article explains "[b]oth people requested anonymity because they're not authorized to speak publicly on the matter." The government has provided no alternative theory to who these "two people" were if not part of the prosecution team.

Faced with a clear leak of grand jury information that Ms. Cooley has sworn to this court did not occur, the government attempts to argue that the disclosures related to a separate law enforcement investigation, rather than the grand jury.  The government makes much of *United States v. Skelos*, No. 15-cr-317, 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015), which dealt with leaks that, for example, pre-dated the convening of the grand jury and related to a pre-indictment "draft… criminal complaint being prepared by the Government" to support a court-issued arrest warrant.  *Id*. at *10–*11; Opp. 10.  Such materials plainly do not implicate the grand jury. *Skelos* thus stands for the unremarkable proposition that information regarding a government investigation that is independent of and predates the grand jury does not become Rule 6(e) material, "even if the same information might later be presented to the grand jury." 2015 WL 6159326, at *10. The search warrant in this case, however, was on its face, designed to obtain evidence for use by the grand jury and in fact was ultimately part of the grand jury.

Indeed, the search warrant itself which facilitated the raid, illustrates how the investigations were intertwined.  In the affidavit offered in support of the warrant, FBI Special Agent Craig Minsky explained that the grand jury had subpoenaed Platinum, but

the government appeared to be concerned that Platinum would not respond.    Special Agent Minsky explained that although Platinum had "informed the government that they will respond to the subpoena," Platinum had also announced to investors (but not to the government) that it "intends[ed] to unwind its main hedge fund." *Id*.  As a result, the government sought a warrant to "seiz[e] the information called for by the June 8, 2016 subpoena ...." *Id*. Indeed, the property to be seized was nearly identical to the materials subpoenaed by the grand jury itself.  In other words, the June 22 search was specifically designed to obtain the evidence subpoenaed by the grand jury. The government's attempt to distinguish between the grand jury's and law enforcement's investigations thus is unavailing.   Far from conducting a "truly independent" investigation, the evidence suggests that law enforcement was acting as an adjunct of the grand jury.

The specific grand jury leaks included:

- Mr. Nordlicht was a target of the grand jury investigation;
- The grand jury was looking at potential securities fraud, not public corruption;
- Prosecutors in the Eastern District of New York, not the Southern District, were leading the grand jury's investigation;
- The grand jury was investigating Platinum's use of new investor subscriptions in part to satisfy redemption requests;
- The grand jury was investigating Platinum's valuation methods;
- The grand jury was looking specifically at Platinum's investment in Golden Gate; and
- The grand jury was investigating whether Platinum used unreliable outside valuation experts.

Moreover, the leaks tainted the very evidence the grand jury considered in determining whether indictment was appropriate. The government's indictment focuses Funds' liquidity issues. However, the results of the aforementioned leaks resulted in news articles that caused damaging publicity and ultimately tainted the evidence available to the grand jury by causing a further run on the Funds which – as consistently disclosed to

7

investors in the funds' published audited financial reports – had been facing severe liquidity constraints due to a high concentration of level three assets that had accumulated over the prior few years.[2]  This is not conjecture. (*See* Amended Motion, Exhibits C and D).

The government's argument that the content of the leaked articles and the FOIA disclosures could be subject to a different interpretation is further gamesmanship. This is a fine subject for argument after a leaks hearing when prejudice is at issue, but right now there is credible evidence the lead former lead prosecutor in this case leaked a grand jury material. The government should be leading the charge in assuring the integrity of the process, rather than obstructing a thorough inquiry for the sole purpose of protecting a former Assistant in the office (and perhaps other current employees as well).

<u>ANY CONSIDERATION OF PREJUDICE AS A BASIS TO DENY A HEARING IS A DEPARTURE FROM THE REQUIREMENTS OF THE LAW. NOTWITHSTANDING, PREJUDICE EXISTS</u>

As this Court is aware, there is no requirement that Mr. Nordlicht establish prejudice at this phase of the proceeding. *See Barry v. United States,* 865 F.2d 1317, 1321 (D.C. Cir. 1989). However, Mr. Nordlicht established prejudice in this matter early and often. To the extent the government asserts the lack of prejudice as a basis for denying a hearing, such an argument is in direct conflict with long established law. Instead, a hearing on the grand jury leaks is the proper forum for such an argument. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 2, 108 S. Ct. 2369 (1988) "[t]he prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to

---

[2] At hearing, Mr. Nordlicht will have the opportunity to present witness testimony supporting this assertion.

indict."[3] But, this inquiry occurs after the show cause hearing because a "Rule 6(e)(2) plaintiff could not be "expected to do more at this juncture of the litigation" given that he or she would "almost never have access to anything beyond the words of the news report." *In re Sealed Case No. 98-3077,* 151 F.3d 1059, 1067 (D.C. Cir. 1998).  At this stage, Mr. Nordlicht's burden is "relatively light." *Id.*

### THE *WALTERS* DECISION EMPHASIZES THE NECESSITY OF A HEARING

The recent *Walters* decision supports the requirement of a hearing in this matter. *Walters v. United States*, 910 F.3d 11 (2d Cir. 2018).  Indeed, the level of governmental investigation and transparency in *Walters* stands in stark contrast to the government's obstruction in the present case.

In *Walters*, the Court reviewed whether a hearing should be held post-trial for a Rule 6(e) violation. *See* 2018 WL 6314126, at *11-12. The Court ruled that the District Court did not abuse its discretion in denying Walters's request for a hearing because there was already sufficient evidence on which to base a decision. *See id.*

Significantly, in *Walters*, the Government had admitted that Special Agent Chaves was the leaker and had provided the District Court with information including its findings from an internal inquiry of 14 individuals. Moreover, the District Court disclosed the

---

[3] In footnote 4 of its letter, the government informs this court that Christopher Matthews did not contribute to the June 14, 2016 Wall Street Journal Article, which is accurate. But it was the July 25, 2016 article, which he did contribute to that provides further evidence of the leaks coming from the government in this case. The government also notes that one of the authors of the June 14 article, is Rebecca O'Brien, the daughter of Mr. SanFilippo's lawyer, Kevin O'Brien.  While the government's point in raising this is not clear, to the extent there is any suggestion that the leaks about the case may have come from Mr. O'Brien to his daughter and there is therefore a factual dispute as to where the leaks stemmed from, we (including Mr. O'Brien) enthusiastically support the court ordering a hearing that calls all relevant witnesses to the stand so the court can determine who leaked the grand jury information.

grand jury minutes to the defense.[4] *See Id.* Moreover, Mr. Chaves planned to assert his Fifth Amendment rights so the Court found that a hearing would not obtain any more information.

None of that is found here. Unlike in *Walters*, where the Government admitted the leaker was Chaves, and so his assertion of his Fifth Amendment rights meant that a hearing would not provide any further information, here, there is no such guarantee.  In fact, here, Ms. Cooley continues to assert that her former colleague Mr. Paes did not disclose grand jury evidence, as she has represented to the court that he has explicitly told her, nor is there any suggestion that he intends to plead the Fifth Amendment when called if a hearing is granted.

Likewise, the only information provided to the defense is a declaration from the Government claiming that they did not leak information – much like the government's unsupported assertions made to the court in its application for an order permitting the government hide the most critical Rule 16 evidence until ninety days before trial. However, based on the nuanced distinction of the actual inquiry, it is unclear exactly what was asked of Ms. Cooley's collogues and if the questions were sufficiently probing. In fact, the district court in *Walters* specifically found "denials from limited sources" insufficient to avoid a hearing.

Unlike here, the prosecutors in *Walters*:

- "[C]ollected and reviewed thousands of emails and text messages, and records of phone calls sent or received by" (1)the individuals "involved in

---

[4] Chaves worked on this case as well. Knowing that a government agent with a history of leaking information was involved with this case bolsters the *prima facie* case that a government actor committed the leaks. Indeed, it is possible that a hearing would confirm that the "two people" referenced in the June 22 Bloomberg article are Messrs. Paes and Chaves.

the [i]nvestigation" of Mr. Walters, (2)"the individuals likely to have had contact with the press regarding" that investigation, and (3)"the individuals to whom they reported";

- "After collecting and reviewing that material," interviewed seven individuals from the U.S. Attorney's Office during the relevant time period, including, among others, the United States Attorney, the Deputy United States Attorney, the Chief Counsel to the United States Attorney, and the senior leadership of the relevant unit;

- And interviewed seven individuals from the FBI during the relevant time period, including, among others, the Assistant Director in Charge of the New York Field Office (the highest-ranking member of the New York Field Office), the Special Agent in Charge of the Criminal Division of the New York Field Office, and other supervisors including Special Agent Chaves (but not Special Agent Razzagone). Dkt. No. 107-9, at 2–3.

Here, the defense has not received the grand jury minutes, and there appears to have been no serious, meaningful inquiry into the leaks. As the Second Circuit Court of Appeals has explained "the key determinant in whether a hearing is required is whether, given the nature and circumstances of the case, the parties had a fair opportunity to present relevant facts and counter the opponent's submissions" *Id.* Therefore, an "evidentiary hearing is not required where the 'paper record is quite extensive.'" *Id.* (citation omitted). Since the defense does not have an extensive paper record like in *Walters*, and does not have a fair opportunity to present relevant facts without a hearing, *Walters* demonstrates the importance of holding a hearing in this case.

*Walters* is also inapposite on other grounds. That decision is *post-trial* rather than pre-trial. In *Walters*, the government admitted that there was leaking and the issue was over prejudice, here the government insists – without evidence – no leaks occurred. Unlike here, in *Walters*, the defense had a voluminous record. But *Walters* demonstrates the importance of holding a hearing in the instant case. Simply put, without all the unique facts that existed in *Walters*, it is impossible to say that a hearing would not "assist in the resolution of the issues" raised in the Motion. *Id.* Furthermore, "a hearing is the preferred

course of action where disputed factual issues exist" and, here, surely there are disputed factual issues. *Id.* (quoting *United States v. Cuervelo*, 949 F.2d 559, 567 (2d Cir. 1991)).

Leaks such as the ones alleged here are "deeply troubling." *Id. Walters* had unique facts that allowed the Court to find that it was not an abuse of discretion to "forego a hearing" – post-trial. *Id.* But in a pre-trial proceeding, with none of those unique facts – we do not know who all of the leakers may be, that they will "take the 5th," there was no meaningful internal inquiry with the findings presented to the court, and the defense was not given the grand jury minutes – denying a hearing goes against the *Walters* decision.

## THE GOVERNMENT MUST BE COMPELLED TO DISCLOSE ADDITIONAL EVIDENCE OF LEAKS AND ALL *BRADY* AND *GIGLIO* MATERIAL

In its response, the government argues that Mr. Nordlicht has failed to make a showing that he is entitled to the requested material in his motion to compel. Interestingly, the government never reveals to the court whether further information of communications between named members of the investigation and named members of media actually exist. The silence on this point is deafening. If the government has some confusion about the about the materiality of the requested communications, it is two-fold: (1) leaks by government agents to the media affected the health and liquidity of the Funds at issue in the Indictment during the relevant time frame. Any evidence of such leaks, including communications, is relevant and necessary to a full and fair defense as exculpatory evidence; and (2) the accusations of government leaks allows this court to order discovery, standing alone, from trial obligations. *See United States v. Pimental*, 199

F.R.D. 28, 37 (D. Mass. 2001) (defendants "entitled to discovery to determine the scope and possible impact of the Rule 6(e) violations").[5]

Again, this is not a game. The prosecutors in *Walters* provide this court with an example of a government team attempting to root out misconduct. Here, the government has made no meaningful attempts at a true investigation, has obstructed all requests for documents in its possession, and has attempted to limit inquiry with an illusory declaration. Under these circumstances, with what was previously a close call and no help from the government, a hearing is necessary and all related materials should be produced. As Judge Castel in the *Walters* case in the Southern District has noted on the record in relation to grand jury leaks, "a known willingness to refer special agents for investigation and prosecution for their own misconduct may be bad for business, but it is essential to the federal prosecutor's role in seeing that justice is done according to a process that respects the rights of others." Accordingly, the undersigned respectfully requests this court issue an Order to Show Cause for a hearing on the matter and grant Mr. Nordlicht to Compel.

Sincerely,

*/s/ Lisabeth Fryer*
Lisabeth Fryer
(on behalf of Mark Nordlicht)

cc: All Counsel of Record (via CM/ECF)

---

[5] As Mr. Paes made clear during the plea colloquy of Naftali Manela, the government intends to attempt to prove that the losses resulting from the alleged conduct exceeds $500 million. While loss amount is not an element of any crime, and has been precluded from trial by this Court's prior order, the issue does go to punishment and therefore must be produced under *Brady* and *Giglio*.