UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                            :

   UNITED STATES OF AMERICA,          :

                                              :

                  - against –           :   **ORDER**

                                              :

   MARK NORDLICHT,               :   16-cr-00640 (BMC)
   DAVID LEVY,                   :
   DANIEL SMALL,                :
   JOSEPH MANN,                 :
   JOSEPH SANFILIPPO, and      :
   JEFFREY SHULSE,            :

                                                :

                    Defendants.      :
------------------------------------------------------------ X

**COGAN**, District Judge.

    1.       Defendants have moved for reconsideration of the Court's January 15, 2019 order

denying defendants' motion to dismiss the indictment or, in the alternative, to suppress materials

withheld from defendants and preclude certain cooperating witnesses from testifying.  In denying

defendants' motion, the Court also denied defendants' related request for an evidentiary hearing

on the issues it presented.

    2.       A motion for reconsideration may be granted where there is "an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent a manifest injustice."  Official Comm. of Unsecured Creditors of Color Tile, Inc. v.

Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted).

"The standard for granting such a motion is strict, and reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court

overlooked – matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

3.      Defendants raise four arguments in support of their motion for reconsideration. First, defendants argue that a hearing on the Government's *ex parte* submissions is warranted to resolve the factual dispute over whether certain cooperating witnesses and their counsel expressed concerns that they would be subject to ostracism and harassment if their cooperation with the Government was revealed.  As the Court noted in its January 15 order, the Government has confirmed that the cooperating witnesses expressed these concerns but the cooperators' statements were never memorialized.  The fact that the Government does not possess memorialized evidence of the cooperating witnesses' statements is not in dispute.[1]  A hearing would only allow the Government an additional opportunity to reiterate its position that the cooperators expressed these concerns to the Government, and it would not add anything more to the record.  Further, no hearing would alter the Court's finding that, because defendants received the productions that were deferred because of concerns about witness harassment and ostracism sufficiently in advance of trial, they cannot show any prejudice that would warrant dismissal of the indictment.

4.      Second, defendants argue that the Court's January 15 order failed to address defendants' argument that the Government repeatedly violated Court orders to disclose <u>Brady</u> material.  Defendants claim that such repeated violations of Court orders constitute a pattern of prosecutorial misconduct that warrants dismissal of the indictment and reiterate their request to be heard *ex parte* to detail the full scope of the <u>Brady</u> material that the Government disclosed in its production of Section 3500 material.

---

[1] Nor is this fact enough to suggest that in other instances (for example, statements subject to the Government's <u>Brady</u> obligations), the Government also failed to memorialize statements made by its cooperating witnesses, giving rise to the need for a hearing to discover the propriety of all the Government's disclosures to date.  Although the Court agrees with defendants that the Government did not follow best practices in this instance, the record reflects that the Government's failure to memorialize these statements is contained to one specific issue that has been fully explored and exhausted.  A hearing on anything else would simply be a fishing expedition.

5.        However, as the Court found in its January 15 order, there is no need for a hearing since defendants did not suffer prejudice from the timing of the Government's disclosures of Brady material.  No evidence defendants could present or elicit at a hearing could undermine this finding that the timing – notwithstanding the content – of the Government's Brady disclosures indicates that the Brady disclosures did not lead to prejudice that would warrant dismissal of the indictment.  Defendants' position seems to be that if they can amass at an evidentiary hearing a significant number of facts suggesting that the prosecution repeatedly withheld Brady material from them after reassuring defendants and the Court that it had complied with its Brady obligations, it will establish a pattern of misconduct that would warrant dismissing the indictment.  As the Court said before, this puts the cart before the horse:  defendants received the Brady material months in advance of trial, and as a result, they have not suffered the prejudice necessary to warrant dismissal.  No amount of new facts can change that, and absent a showing of such prejudice, dismissal of the indictment is unwarranted.[2]

6.        Third, defendants contend that the Court should reconsider its January 15 order in light of United States v. Walters, 910 F.3d 11 (2d Cir. 2018).  The Court already considered Walters in its January 15 Order (although defendants did not cite it in their motion papers).  The case supports the Court's ruling.  In Walters, the Second Circuit affirmed the district court's denial of the defendant's request for an evidentiary hearing because the record and briefing on the prosecutorial misconduct alleged in that case were sufficient and a hearing would not have meaningfully developed the record.  Defendants argue that Walters compels the Court to hold a

---

[2] In certain circumstances – such as racial discrimination in grand jury selection and exclusion of women from the grand jury – errors may be deemed so fundamental to the process that prejudice is presumed.  United States v. Walters, 910 F.3d 11, 25 (2d Cir. 2018).  These cases are "isolated exceptions" to the requirement that the Court assess prejudice when deciding whether to dismiss an indictment.  Bank of Nova Scotia v. U.S., 487 U.S. 250, 256 (1988).  The alleged prosecutorial misconduct here neither falls into these narrow categories nor is otherwise so fundamental to the process that prejudice may be presumed.

hearing because there the Second Circuit counseled that a hearing is preferred when there are factual disputes.  They contend that factual disputes exist and should be explored because:  (1) the Government did not conduct an internal investigation or provide the Court and defendants with detailed summaries and chronologies, as the Government did in Walters; (2) because the cooperators' statements were not memorialized, neither the Government, the Court, nor defendants know what transpired; (3) the record might still be developed because the Government has yet to make any evidentiary disclosures to defendants and has not indicated that the relevant witnesses would refuse to answer questions under oath (as was the case in Walters).

7.        The Court disagrees with each of defendants' attempts to distinguish this case from Walters.  First, the parties have provided the Court with a detailed chronology of what transpired, as evidenced by the concise version of the timeline set forth in the Court's January 15 order.  Second, the Government has represented what the cooperating witnesses said, and the Court has already addressed the Government's failure to follow best practices in not memorializing the witnesses' statements.  There is nothing to suggest that anything more exists. Third, for those reasons, a hearing would not meaningfully develop the record.  The parties have had ample opportunity to present their positions on the alleged prosecutorial misconduct in briefs, status conferences, and various other submissions.  Even if a hearing would adduce some marginal amount of additional facts, a hearing would not alter the Court's finding that defendants received all of the documents at issue sufficiently in advance of trial as to obviate any prejudice, as the Court explained above and in its January 15 order.

8.        Defendants also suggest that the Government's lack of candor – which the Court acknowledged in its January 15 order – provides an additional reason to require a hearing. However, no lack of candor about the Government's prior productions would alter the Court's

4

determination that these productions occurred sufficiently in advance of trial that defendants have not been prejudiced by the Government's alleged misconduct.  To the extent defendants are concerned about the Government's lack of candor regarding additional matters beyond the scope of defendants' motion to dismiss the indictment, the Court will consider these matters separately, rather than conduct a fishing expedition, in the form of a hearing, into any potential prosecutorial misconduct.

9.      Fourth, defendants note that there is newly-discovered evidence of prosecutorial misconduct:  documents received in response to defendant Nordlicht's FOIA request that purportedly suggest that the Government was improperly leaking confidential information to the press, which contradicts the Government's repeated representations to defendants and the Court on this point.  As defendants note, the Court has established a separate briefing schedule and tentative hearing date regarding this issue.  Because defendants have not connected this newly-discovered evidence to the Court's January 15 order – and no connection is apparent – this information does not provide a reason to reconsider the Court's January 15 order.

10.      Defendants' motion for reconsideration [493] is therefore DENIED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 25, 2019

5