UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA


                                                              16 CR 640 (BMC)

       - against -

MARK NORDLICHT, et al.,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X




GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT DANIEL SMALL'S MOTIONS *IN LIMINE*




                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


ALICYN L. COOLEY
DAVID C. PITLUCK
PATRICK T. HEIN
Assistant U.S. Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the motions in limine of the defendant Daniel Small, filed on February 11, 2019 in the above-captioned case.   See Mem. Law Supp. Small's Mots. In Limine, dated Feb. 11, 2019 ECF Docket No. 541-1 ("Mot.").

Small's motions seek: (1) to preclude the government from introducing "evidence relating to the Fraudulent Investment Scheme" against Small at trial, Mot. at 1; (2) to preclude the government from "presenting any evidence or argument relating to any Black Elk creditors other than the bondholders," id. at 2; (3) to preclude the government from "presenting any evidence of the Black Elk bankruptcy," id.; and (4) to exclude any evidence regarding Small's "compensation, including any amounts he is owed or received while at Platinum," id. at 3.   These motions predominantly rehash the arguments from Small's motion to sever, see Mem. Law Supp. Small's Mot. for Severance, dated Nov. 21, 2018, ECF Docket No. 444 -1 ("Small Severance Motion"), which itself recycled the arguments of the defendant Jeffrey Shulse's motion to sever, see Shulse's Mot. to Sever, dated Sept. 15, 2017, ECF Docket No. 213 ("Shulse Severance Motion").   The Court has already considered and rejected these arguments twice.   See Decision & Order on Def. Shulse's Mot. to Sever, dated Oct. 17, 2017, ECF Docket No. 203 at 3 ("Shulse Order"); Tr. of January 11, 2019 Status Conf. at 4:21-5:7 ("Small Order").   To the extent Small's motions can be read to advance new arguments, those arguments are equally without merit, and Small's motions should be denied in their entirety.

ARGUMENT[1]

ALL OF SMALL'S MOTIONS IN LIMINE SHOULD BE DENIED

I.    Legal Standard

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.   Relevant evidence generally is admissible, see Fed R. Evid. 402, and there is a "very low standard for relevance."   United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008); see, e.g., United States v. Quattrone, 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry.").   Further, consistent with Old Chief, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

Relevant evidence may be excluded based on the potential for unfair prejudice only when the risk of unfair prejudice "substantially outweighs" its probative value.   Fed. R. Evid. 403. The Supreme Court has observed that "[t]he term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."   Old Chief v. United States, 519 U.S. 172, 180 (1997). Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant

---

[1]    The government has summarized the charges in this case in prior submissions, see, e.g., Gov't's Response in Opp. to Certain Defs.' Mot. for Suppression, dated Dec. 20, 2017, ECF Dkt. No. 269, at 4-12; Gov't's Response in Opp. to Def. Jeffrey Shulse's Mot. for Severance, dated Oct. 6, 2017, ECF Dkt. No. 226, at 5-6; and incorporates those summaries by reference herein.

beyond tending to prove the fact or issue that justified its admission into evidence." <u>United States v. Figueroa</u>, 618 F.2d 934, 943 (2d Cir. 1980). "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." <u>Costantino v. Herzog</u>, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original). "The prejudice resulting to defendants from the fact that introduction of" relevant evidence is "damaging to their case is, of course, not the kind of prejudice against which Fed. R. Evid. 403 protects defendants." <u>See</u> <u>United States v. DeLillo</u>, 620 F.2d 939, 947 n.2 (2d Cir. 1980).

A trial judge's evidentiary rulings, including determinations of relevance and assessments of whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, are reviewed only for abuse of discretion. <u>See, e.g.</u>, <u>United States v. Abreu</u>, 342 F.3d 183 (2d Cir. 2003); <u>United States v. Khalil</u>, 214 F.3d 111, 122 (2d Cir. 2000). "[S]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." <u>United States v. Awadallah</u>, 436 F.3d 125, 131 (2d Cir. 2006).

II.   <u>Motion In Limine No. 1:  Evidence Relating to the Investment Scheme Is Inextricably Intertwined with the Black Elk Bond Scheme and Should Be Admitted.</u>

Small's first motion argues that "the Government should be precluded from introducing any evidence relating to the Fraudulent Investment Scheme under Rule 403 because such evidence would cause significant 'spillover prejudice' to Mr. Small." Mot. at 3. This is simply a second attempt to get the relief the Court has already denied him, and even expand such relief to preclusion of <u>all</u> evidence relating to Counts One through Five. <u>See</u> <u>id.</u> Small has provided absolutely no basis for such sweeping preclusion, and as the Court already has found in this case, there is likewise no basis to preclude such evidence as to Small alone, given its high probative value to the Black Elk Bond Scheme, with which Small is charged.

A.    Evidence Relating to Small's Role As a Portfolio Manager at Platinum, Including His Intimate Knowledge of Black Elk's Problems, Is Critically Relevant to the Black Elk Bond Scheme

The government will present ample evidence at trial that relates to and proves both of the charged schemes.   The limited examples of "Fraudulent Investment Scheme" evidence to which Small points in his motion prove this point; indeed, all of them are unequivocally and powerfully probative of the Black Elk Bond Scheme.

Small first takes issue with evidence "reflecting that [he] was the portfolio manager who covered Black Elk and responded to requests from senior Platinum employees about Black Elk's valuation."   Mot. at 8.   Despite Small's conclusory assertion to the contrary, such evidence is central to the Black Elk Bond Scheme and completes the story of that crime.   See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted) (evidence of uncharged criminal activity is not considered "other acts" evidence under Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial"); United States v. Gonzalez, 110 F.3d 936, 941-42 (2d Cir. 1997) (admitting evidence of uncharged burglary because, inter alia, it provided "crucial background evidence that gave coherence to the basic sequence of events that occurred on the night" of defendants' arrest); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) ("The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.   Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or

4

intent with which certain acts were performed." (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)).

Small's unique ability to effectuate the Black Elk Bond Scheme derived from his position as portfolio manager of Black Elk.   As a result of that position, which Small shared for some time with his co-conspirator, the defendant David Levy, Small frequently was present at Black Elk's offices in Houston, Texas, interacted with and was updated by its management regularly, reported on the condition of the company to his co-conspirators at Platinum, the defendants Mark Nordlicht and Levy, and ensured that Platinum's interests at Black Elk were served.   Further, the need to extract as much cash as possible out of the Black Elk investment before the company went into bankruptcy, and to use such cash to address and mitigate PPVA's dire liquidity crisis, drove Small and his co-conspirators to commit the Black Elk Bond Scheme. Evidence demonstrating Small's extensive knowledge of and responsibility for the Black Elk position—which, for a significant part of the charged time period, was PPVA's largest asset—and his indispensability to Platinum with respect to the Black Elk investment therefore is critical direct evidence of the Black Elk Bond Scheme.   Small offers no support for his conclusory assertion that such evidence is irrelevant to the Black Elk Bond Scheme, likely because it is directly at odds with the facts in this case, and the Court accordingly should reject it.

Small also complains that three of the overt acts alleged in the Indictment with respect to the Investment Scheme improperly name Small.   Mot. at 8-9 (citing Ind. ¶¶ 90(c), (g) & j).   Rather, the emails that form the basis of these overt acts prove the inextricable connection between the liquidity crisis at PPVA—a central part of the Investment Scheme—and the Black Elk Bond Scheme, see Ind. ¶ 90(c) (Nordlicht writes to Small: "This is also the week I need to figure out how to restructure and raise money to pay back 110 million of [Preferred Equity] which

if unsuccessful, [would] be the end of the fund.  This 'liquidity' crunch was caused by our mismanagement – yours David and I – of the black elk position . . . ."), and the state of mind and motive of the Black Elk Bond Scheme conspirators mere weeks before the fraudulent consent solicitation occurred, see id. ¶ 90(g) (email in late June 2014 in which Nordlicht acknowledges that "the equity in black elk" at that time "is not worth that much because of debt overhang and payables overhang").  The third referenced email, sent by the defendant Joseph Mann on November 25, 2014 to Small, along with a co-conspirator, demonstrates Small's ongoing responsibility for the Black Elk investment in the aftermath of the fraudulent consent solicitation. See id. ¶ 90(j).  The same is true of evidence regarding Northstar, another oil and gas company controlled by PPVA, which Small participated in managing and which, in a transaction facilitated by Small and his codefendants that involved the use of Black Elk bonds as consideration, acquired Black Elk's last passable assets.   Northstar is another important chapter in both charged schemes, and Small figures prominently in that chapter.   Accordingly, the foregoing evidence is probative of both charged schemes and should be admitted at trial.

      B.     <u>The Court Has Already Held That The Challenged Evidence Is Not Unduly Prejudicial.</u>

Small's claim of spillover prejudice is well-tread ground for Small and the Court. That same claim was the primary basis of both Small's and Shulse's prior motions for severance. Small Severance Mot. at 11 ("[S]everance is required to prohibit prejudicial spillover [to Small]."); Shulse Severance Mot. at 12 ("Shulse will suffer substantial spillover prejudice [absent severance].").

In denying Shulse's motion, the Court explicitly "reject[ed] Shulse's 'spillover' concern," explaining that the two alleged schemes are "intertwined," with substantially overlapping evidence.   Shulse Order at 3-4.   To the extent any evidence regarding the Investment

Scheme was inadmissible as to any particular defendant, the Court held that limiting instructions would "suffice to cure any risk of prejudice."   Id. at 3.   Small's severance motion was denied for the same reasons.

Those rulings — which Small largely ignores — are controlling here.   As there is no risk that the challenged evidence would cause undue prejudice that could not be addressed through a limiting instruction, there is no basis to exclude the evidence under Rule 403.

Nothing has changed since those rulings that would justify revisiting the Court's rejection of Small's arguments.[2]

C.       The Court Should Not Reconsider Its Prior Holdings.

There is also no reason for the Court to reconsider its prior holdings. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."   United States v. Nordlicht, No. 16-CR-640 (BMC), 2018 WL 6106707, at *7 (E.D.N.Y. Nov. 21, 2018) (Irizarry, C.J.) (internal quotation marks omitted).   Small has made no attempt to meet this standard.

Moreover, the Court's prior holdings were based firmly in well-settled law and should not be revisited.   Evidence that would independently be admissible against Small is "neither spillover nor prejudicial."   United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997); see also United States v. Kahale, 789 F. Supp. 2d 359, 393 (E.D.N.Y. 2009) ("there is no risk of [spillover] prejudice where much of the evidence pointed to by defendants would be admissible in separate trials against each defendant"), aff'd sub nom. United States v. Graham, 477 F. App'x 818 (2d Cir. 2012).   As the government has noted in its prior motions, the Investment Scheme is

_____

[2]       Indeed, Small's motion, much of which is based on the face of the indictment, could have been made much earlier in the case.

7

necessary background to understanding the background of the Black Elk Bond Scheme and Small's and his co-conspirator's motives to engage in the Black Elk Bond Scheme.  Had the Investment Scheme not occurred, PPVA would have been less desperate to obtain an infusion of liquid funds from Black Elk, and Small and his co-conspirators would have had less motive to engage in a fraud to obtain those funds.

Nor is there merit to Small's arguments challenging the Court's prior conclusion that the two schemes are "intertwined."  ECF Dkt. No. 230, at 3.  As Small recognizes, conduct is "inextricably intertwined" when "details of the uncharged transaction are necessary to understand the charged transaction."  Mot. at 6 (internal quotation marks omitted).  And that is precisely the case here — as noted, the Investment Scheme was a driving part of the motive for the Black Elk Bond Scheme and is therefore importantly completes the story of Small's conduct. United States v. Thristino, 47 F. App'x 7, 9 (2d Cir. 2002) (evidence of drug dealing was "inextricably intertwined" with felon-in-possession-of-ammunition charge "to show [defendant's] motive for possessing ammunition as a 'tool' of the drug trade"); United States v. Tarantino, No. 08-CR-0655 (JS), 2012 WL 1458197, at *1 (E.D.N.Y. Apr. 27, 2012) (evidence of past crimes was "inextricably intertwined" with charged murder where motive for murder was covering up the past crimes).[3]

---

[3]     United States v. Schmidt, No. 14-CR-506 (RRM), 2016 WL 660880 (E.D.N.Y. Feb. 18, 2016), is not to the contrary.   In that case, the government sought to introduce evidence of a prior scheme by the defendant that had served as a model for the charged scheme.  Id. at *1. Although the two schemes were separated by a "temporal break, caused by two significant intervening events" — the intervention of the SEC to stop the earlier scheme and the joining of the new scheme by a new supposed conspirator (an undercover FBI agent) — the court held that the two schemes were "arguably" inextricably intertwined.  Id. at *2.   The court did not decide the issue, however, as it held that evidence of the prior scheme was "squarely" admissible under Rule 404(b).  Id.   The case says nothing about whether conduct that creates the motive for the charged conduct is inextricably intertwined with the charged conduct.

Small's fallback request — that only evidence connecting him or Black Elk specifically to the Investment Scheme be excluded — fares no better.  Mot. at 7-9.  Again, the fact that the Investment Scheme involved misstatements and omissions about Black Elk in particular is central to understanding the motive to extract cash from Black Elk at any cost.  And evidence of Small's involvement is highly probative of Small's own knowledge of PPVA's need for liquidity and his intent to commit fraud.  Without this evidence, it would be impossible to tell the jury the complete story of the two frauds, their intertwining relationship, and Small's role overall.

>    D.    Small's Remaining Arguments Are Meritless.

As part of his motion, Small includes a number of other arguments, none of which have merit.

>    1.    Small asserts that "co-conspirator statements in the Fraudulent Scheme are not admissible in the Black Elk Bond Scheme."  Mot. at 4.  That is incorrect, as demonstrated above with respect to overt acts alleged as part of the Investment Scheme.  Many, if not all, of the statements Small seeks to preclude would be admissible, inter alia, as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), as evidence of the state of mind or knowledge of persons hearing those statements, see United States v. Detrich, 865 F.2d 17, 21 (2d Cir. 1988), or as statements of the declarants' state of mind or future intent offered for the non-hearsay purpose of "indicat[ing] circumstantially the state of mind . . . of the declarant[s]," Smith v. Duncan, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (internal quotation marks omitted).

>    2.    Small argues that the government "should be prohibited from introducing any evidence or argument related to an oil and gas company called Northstar."  Mot. at 4.  This is yet another attempt to keep the full story from the jury.  Platinum's transferring of insolvent Black Elk's assets to Northstar, which it controlled, was part and parcel of the overarching effort

to extract assets and cash from Black Elk for PPVA's benefit.   Further, Small offers no reason why discussion of Northstar would unfairly prejudice him.

3.      Small claims that the case against him should be analogous to the trial against Shulse, which is expected to be considerably narrower.   Mot. at 7.   But Small ignores a key difference:   while Shulse was an employee of Black Elk, Small was a longtime employee of Platinum and played a significant role at the fund, especially as the portfolio manager of some of PPVA's largest assets.   The Court should not accept Small's effort to minimize his role in the charged crimes.

4.      Small also claims that, if his motion is denied, he will make "extensive" objections at trial on a "document-by-document and witness-by-witness basis" to all evidence of the Investment Scheme.   Mot. at 9.   This is no basis for granting Small's motion and, indeed, the Court is equipped to respond to the parties' objections at trial and, where appropriate and if requested, provide limiting instructions.

III.   <u>Motion In Limine No. 2:   Evidence Relating to Black Elk's Unpaid Creditors Is Relevant and Admissible</u>

Small also moves to preclude any evidence relating to Black Elk's failure to pay its vendors and creditors, other than the Black Elk bondholders.   Mot. at 9-10.   Small asserts that because none of these other creditors was a victim of the Black Elk Bond Scheme, their non-payment is irrelevant to the scheme.   That argument flies in the face of the facts and should be rejected.

Evidence relating to the failure of Black Elk—reported by Platinum to be worth hundreds of millions of dollars, and among the top two largest positions in PPVA's portfolio in the relevant years—to pay its vendors and creditors is highly probative of both charged schemes, given the centrality of Black Elk's problems and dire financial condition to those charges.   Black

Elk's decreasing ability to pay its bills, and PPVA's inability to resuscitate it in the midst of its own liquidity crisis, are essential to the government's proof of both the Investment Scheme and the Black Elk Bond Scheme.   The government's evidence at trial will demonstrate that the defendants, including Small, were intimately familiar with these damning indicia of Black Elk's condition and its status on the precipice of bankruptcy, and such knowledge motivated their agreement to commit the Black Elk Bond Scheme.

Indeed, Black Elk's inability to pay its vendors and creditors is highly probative of Small's and his co-conspirators' motive to engage in the Black Elk Bond scheme.   Small and his co-conspirators knew that Black Elk was unable to pay its vendors, which is a key part of the evidence of their knowledge of Black Elk's dire financial situation.   Those deteriorating finances are what motivated Small and his co-conspirators to employ the Black Elk Bond Scheme to loot the company following the sale of its most valuable assets and ensure that Platinum—not the company's creditors—received the lion's share of the cash proceeds.   See Ind. ¶ 77; see also id. ¶¶ 44-52.   This evidence is thus highly probative of both charged schemes and should be admitted. See, e.g., United States v. Abdallah, 840 F. Supp. 2d 584, 620-21 (E.D.N.Y. 2012) (Bianco, J.) (testimony that subsidiary was bouncing checks "provided highly probative evidence that defendant was aware of financial problems at [the company], which goes to defendant's motive to enter the scheme to defraud"), aff'd, 528 F. App'x 79 (2d Cir. 2013).

For the foregoing reasons, this motion should be denied.

IV.     Motion In Limine No. 3:   Evidence Relating to Black Elk's Bankruptcy Is Admissible to Show Small's Motive and to Complete the Story of the Black Elk Bond Scheme.

Small also moves to preclude any evidence relating to the Black Elk bankruptcy, including evidence as to the effect of that bankruptcy on Black Elk bondholders.   Mot. at 10-13. Small claims that "there is a very real risk that the jury will be misled into believing that the Black

Elk bankruptcy was caused by the Black Elk Bond Scheme" and that he will have to respond to that "risk" with "mini-trials" on the true causes of the bankruptcy.   Id.

Small's concerns are misplaced and run counter to the facts.   As discussed above, and as the government alleged in the indictment, see Ind. ¶ 77; see also id. ¶¶ 44-52, the evidence will show that the Black Elk Bond Scheme was motivated in part by the already looming prospect of Black Elk's bankruptcy, which was precipitated by, inter alia, the explosion on Black Elk's oil production platform, the steep drop in oil prices, insufficient cashflow and funding and low production.

Moreover, Small is incorrect that evidence concerning the bankruptcy is irrelevant or otherwise inadmissible.   First, once again, the bankruptcy is relevant to motive.   Small and his co-conspirators knew that once Black Elk went bankrupt, PPVA's equity position would be wiped out.   Thus, the bankruptcy provided a motive to extract any valuable assets and cash out of Black Elk before it was too late, even by fraudulent means.

Evidence that the bankruptcy subsequently in fact occurred supports the government's case that Black Elk was failing and that Small and his co-conspirators were aware of its dire position.   Leaving the story incomplete by failing to address whether the bankruptcy actually occurred would leave jurors confused about what happened next and whether Black Elk's problems were really as serious as the government argued they were.   See United States v. Rigas, No. 02-CR-1236 (LBS), 2004 WL 360444, at *1 (S.D.N.Y. Feb. 26, 2004) (testimony regarding victim's loss "simply completes the story:  the failure to allow the witness to testify as to this would simply leave the matter up in the air, inviting the jury to speculate as to what happened next").

Second, evidence concerning the bankruptcy and its effect on bondholders is admissible to demonstrate that the fraud was not a victimless crime or an abstract business maneuver without real-world meaning.  As the Supreme Court has explained, "the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault."  Old Chief, 519 U.S. at 187-88.   The jury should be permitted to know (and Small should not be permitted to hide) that Small and his co-conspirator's actions had real consequences for bondholders.

As the evidence relating to the bankruptcy is relevant and as the only prejudice Small points to is unlikely to occur, this motion should be denied.

V.    Motion In Limine No. 4:  Evidence Relating to Small's Compensation Is Admissible to Establish His Motive.

Finally, Small moves to preclude any evidence concerning Small's compensation at Platinum — including work in connection with the Black Elk Bond Scheme — as an improper "appeal[] to class prejudice."  Mot. at 12 (internal quotation marks omitted).   The Second Circuit has repeatedly rejected similar arguments, recognizing that evidence of compensation may be admitted where probative of motive and that any unfair prejudice can be addressed by appropriate limiting instructions.

The evidence at trial will show that Small profited personally and substantially not only as a result of his management of the Black Elk investment over the course of the charged Black Elk Bond Scheme, but also directly as a result of the success of the fraudulent consent solicitation, which resulted in the payback of Black Elk's Series E preferred equity holders, including a Platinum fund in which he was invested.   Moreover, the lucrative compensation Small received as a managing director of Platinum, and his desire to retain that source of compensation

by helping PPVA survive its liquidity crisis by any means necessary—even fraud—are essential evidence of Small's motive to participate in the Black Elk Bond Scheme.

To support preclusion of these facts, Small relies on United States v. Quattrone, 441 F.3d 153 (2d Cir. 2006), which he claims stated that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations."  Mot. at 12-13.  But Small fails to inform the Court of Quattrone's actual holding, or even the full text of the quoted sentence.  Far from suggesting that compensation evidence should be precluded, as Small suggests, Quattrone affirmed the *admission* of such evidence, holding that "[w]hile evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations*, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth.*"  Quattrone, 441 F.3d at 187 (emphasis added).

In that case, the government offered evidence of the defendant's compensation to argue that his "substantial salary" established a motive for him to obstruct justice into an SEC investigation.  Id.  While the defendant argued that "wealth is always irrelevant to motivation" and that evidence of compensation "invited the jury to engage in class-based bias," the Second Circuit was unconvinced.  Id.  The court held that such compensation evidence is "not unduly prejudicial" where it is "used for the limited purpose of establishing a motive" and as long as it is not "used to convict [a defendant] simply because of his wealth."  Id.; see also United States v. Peters, 543 F. App'x 5, 10 (2d Cir. 2013) (affirming admission of evidence of wealth where "evidence of the defendant's wealth was relevant to the question of motive" and "district court appropriately limited the prosecution's references to the defendant's lifestyle").

That holding squarely applies here.  If government seeks to admit evidence of Small's compensation, it will only be for the purpose of establishing his motive for participating

14

in the Black Elk Bond Scheme.   Moreover, if such evidence is admitted, the government would have no objection to the Court providing an appropriate limiting instruction reminding the jury that such evidence can only be used in considering Small's motive and that the jury cannot convict Small based on his wealth.

There is no merit to Small's suggestion, echoing the failed argument in Quattrone, that "usual forms of compensation that are common to most corporate officers" and "bonuses based on corporate earnings" cannot establish motive to commit fraud.   Mot. at 13.   The only case Small cites in support of this argument is ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198, 201 (2d Cir. 2009).   But ECA — an appeal from a motion to dismiss — held that allegations concerning common forms of executive compensation, standing alone, are inadequate to satisfy the heightened standards for pleading a "strong inference of scienter" under the Private Securities Litigation Reform Act.   Id. at 200-01.   That holding in an entirely different context does not suggest that evidence of compensation is irrelevant to establishing motive at trial.   To the contrary, as Quattrone and other cases have recognized, such evidence can be highly probative and is properly presented to the jury.[4]   Moreover, here, Small received compensation that was directly tied to his management of the Black Elk position, and, as discussed above, directly received proceeds of the fraudulent consent solicitation when Black Elk's Series E preferred equity was repurchased.

---

[4]       See also, e.g., United States v. Logan, 250 F.3d 350, 369 (6th Cir. 2001) ("[W]e find that the income evidence was relevant to demonstrate that financial gain was the motive for the crimes charged."); United States v. Schnabel, 939 F.2d 197, 202 (4th Cir. 1991) (evidence of defendant's "substantial income" admissible to prove motive); United States v. Rand, No. 3:10-CR-182, 2011 WL 4914962, at *2 (W.D.N.C. Oct. 17, 2011) ("Evidence of compensation may be introduced when it is relevant and admissible to prove motive, especially in conjunction with a limiting instruction.") (citing Quattrone).

Similarly meritless is Small's argument that evidence of his compensation "would be incredibly misleading because [he] has not actually been paid." Mot. at 12. Irrespective of whatever amounts Small claims was due to him at the time that he left Platinum, it is indisputable that he received substantial compensation during the course of the Black Elk Bond Scheme, and that he received funds directly as a result of the success of the fraudulent consent solicitation. Moreover, with respect to any compensation that was due to him at the time of his separation from Platinum in 2015, such amounts due, irrespective of whether they ultimately were paid, are probative of Small's motive to commit the charged scheme.

The single case Small cites for this argument — United States v. Ferguson — once again offers him no support and, in fact, undermines his position. In Ferguson, then-District Court Judge Droney held that "[e]vidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud." No. 06-CR-137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007). Under the facts of that case, Judge Droney held that evidence of certain compensation that was not dependent on the company's stock price was not probative of a motive to inflate the stock price, while evidence of other compensation that did depend on the company's stock price was probative and admissible. Id. at *1.

Small does not dispute that his compensation was tied to the success of Platinum, which in turn depended on the success of the Black Elk Bond Scheme. Thus, as in Ferguson and Quattrone, evidence of his compensation is probative of his motive to commit fraud and is admissible when paired with an appropriate limiting instruction. Small's motion in limine No. 4 should be denied.

<u>CONCLUSION</u>

For the reasons set forth above, Small's motions <u>in</u> <u>limine</u> should be denied.

Dated: Brooklyn, New York
       February 16, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/_____
       Alicyn L. Cooley
       David C. Pitluck
       Patrick T. Hein
       Assistant U.S. Attorneys
       (718) 254-6389/6108/6284

cc:    Clerk of the Court (BMC) (by ECF)
       Defense counsel (by ECF)