**Ronald S. Sullivan Jr.**
**Counselor at Law**
**712 H. Street, NE**
**Suite 1354**
**Washington, DC 20002**
**Direct: (202) 873-9120**
**Fax: (202) 863-1459**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza
East Brooklyn, New York 11201

Re: United States v. Mark Nordlicht et al. Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

      The defense respectfully asks the Court to deny the government's in limine motion, (Dkt. # 557). If granted, it will deny Mr. Nordlicht's constitutional right to a fair trial. Moreover, the government's motion is patently premature and overbroad.

      Evidence should be excluded on a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." United States v. Morel, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010); see also Potenza v. City of New York, Dep't of Transp., No. 04–CV–2434, 2009 WL 2156917, at *3 (E.D.N.Y. 2009). Courts reviewing a motion in limine may reserve judgment until trial so that the motion is placed in the appropriate factual context. Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp., 937 F.Supp. 276, 287 (S.D.N.Y. 1996). The defense respectfully asks that the Court reserve such judgement here.

      As this Court is aware, Supreme Court precedent makes clear that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense. See Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). "Whether rooted in the Due Process Clause of the Fifth Amendment or in the Compulsory Process Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the right to present a defense." United States v. Blum, 62 F.3d 63, 67 (2d Cir.1995) (citing United States v. Almonte, 956 F.2d 27, 30 (2d Cir.1992)); see also Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense"). Defendants have the right to present a defense to every element of the charges against them. Blum, 62 F.3d at 67 (emphasis added); see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970); Wade v. Mantello, 333 F.3d 51 (2d Cir. 2003) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right.")

      Accordingly, the government is not free to apply arbitrary rules to prevent a material witness from testifying for the defense, nor may it "apply a rule of evidence that permits a witness to take the stand, but

arbitrarily excludes material portions of his testimony." Rock, 483 U.S. at 55, 107 S.Ct. 2704. As the Court has repeatedly emphasized, " 'at a minimum, ... criminal defendants have the right ... to put before a jury evidence that might influence the determination of guilt.' " Taylor v. Illinois, 484 U.S. 400, 407, 108 S.Ct. 646, 652 (1988) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987)); see also United States v. Johnson, 994 F.2d 980, 988 (2d Cir.), cert. denied, 510 U.S. 959, 114 S.Ct. 418 (1993) ("[a] criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence") (citing United States v. GAF Corp., 928 F.2d 1253, 1262 (2d Cir. 1991)).

The plausibility of a defense theory is a question of weight, rather than one of admissibility. Such questions are therefore properly the province of the trier-of-fact, not the Court. In other words, "a criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." United States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990) (emphasis added); see also United States v. Pedroza, 750 F.2d 187, 205 (2d Cir. 1984) ("'[a] criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be'") (quoting United States v. O'Connor, 237 F.2d 466, 474 n.8 (2d Cir. 1956)) (emphasis added).

Moreover, evidence offered by an accused for defensive purposes, such as to negate an element of the offense, is governed by an easier admissibility standard than government evidence. See United States v. Aboumoussallem, 726 F.2d 906, 911 (2d Cir. 1984) ("the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword."). Specifically, prejudice under Rule 403 is not a factor in such circumstances. See Government of the Virgin Islands v. Carino, 631 F.2d 226, 230 (3d Cir. 1980) ("[E]vidence produced by the defense cannot have a prejudicial effect to the defendant, and there should be no balancing of prejudice to the prosecution") (citations and internal quotes omitted).

Early and often, Nordlicht has brought this Court and the government's attention to the constant improper communications between government actors and the media. Counsel for Nordlicht has been clear that the issue is not ancillary, but fundamental to a proper defense in this matter. It should come as no surprise that Mr. Nordlicht may call, at a minimum, former AUSA Winston Paes. Others from the government are listed in an abundance of caution and may be called after proper notice under *Touhy*. While this Court determined a hearing was not warranted for purposes of a 6(e) violation, here, the admissibility is governed under constitutional prerogatives for a criminal defendant to adduce evidence in support of his theory of the case. The deleterious effect of the newspaper articles on the health (i.e. liquidity) of the fund is factually supported. Further, Mr. Nordlicht, through cross-examination and, potentially, through direct witness testimony, will be able demonstrate that investors sought redemptions because of negative press related to Platinum – media stories caused by government actors. To preclude Mr. Nordlicht from asserting a robust defense is a violation of Mr. Nordlicht's right to a fair trial.

The record at this point is insufficient to find that the government has shown "the evidence is clearly inadmissible on all potential grounds." Morel, 751 F. Supp. 2d at 428. By contrast, there are compelling reasons to believe such evidence will be probative of core elements of our defense theory. The relevance

of the evidence at issue therefore should be determined at trial, "so that the motion is placed in the appropriate factual context." Nat'l Union Fire Ins. Co., 937 F.Supp. at 287.

The government claims that testimony from past or current prosecutors would be inadmissible under the Second Circuit's ruling in United States v. Regan, 103 F.3d 1072 (2d Cir. 1997). However, the government's reliance on Regan is plainly misplaced. Regan involved charges against a police officer for providing perjurious testimony to a grand jury which was investigating police misconduct. At trial, the defendant police officer sought to argue that he had been improperly targeted by prosecutors, and called into the grand jury for the express purpose of "trapping" him into the commission of perjury. Notably, the defendant did not claim his testimony in the grand jury had been truthful, but instead sought to focus on prosecutorial misconduct in eliciting such false testimony. The district court found — and the Second Circuit agreed — that legitimacy of the grand jury proceedings was a legal question, as opposed to a factual defense that could be presented to the jury.

Yet the instant case is entirely distinct from the factual scenario presented in Regan, because Mr. Nordlicht is claiming his factual innocence. In particular, his assertion is not merely that the government decided to target him because of their animus, but rather that the government's conduct itself is a factual issue that precipitated the contested loss of value of Platinum Partners Value Arbitrage Fund L.P. ("PPVA"). Hence, unlike in Regan, our defense is not on a legal issue relating to selective prosecution, but rather entirely a factual issue concerning the Defendant's innocence. As such, it is properly a question for the jury.

But even under the Regan standard, the evidence still would be admissible. As the government itself notes, the defense may call a prosecutor as a witness when it has "a compelling and legitimate reason to do so." Regan, 103 F.3d at 1083. Here, the defense has compelling and legitimate reasons to call Mr. Paes – who is no longer a prosecutor – and others as witnesses. Whether and how the government's actions damaged the profitability of Mr. Nordlicht and his company are central factual issues that are disputed this case. Allowing the defendant to call on such key witnesses is essential to the fundamental right to defend against every element of the charged offense.

The defense does not seek to raise a legal defense relating to selective prosecution, but rather a factual issue concerning the "factual innocence of the crime charged." Regan, 103 F.3d at 1082. Mr. Paes and others are key witnesses to develop facts directly related to the crime charged. Their testimony speaks to the factual circumstances that precipitated the demise of PPVA. Those facts speak to a key contested issue in this case, and the list of defense witnesses represents "compelling and legitimate" evidence about that issue. This testimony is well within the bounds of the defendants' constitutionally guaranteed defense.

Accordingly, the defense respectfully asks the government's motion be denied.

Sincerely,<br>
/s/ Ronald S. Sullivan, Jr.<br>
Ronald S. Sullivan Jr.

cc: All Counsel of Record (via CM/ECF)