LISABETH J. FRYER, P.A.
250 International Pkwy, Suite 134
Lake Mary, Florida 32746
Telephone (407) 960-2671
Florida Bar No. 89035
lisabeth@lisabefryer.com

February 19, 2019

**VIA CM/ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *United States v. Mark Nordlicht, et al., No. 1:16-cr-00640-BMC*

Dear Judge Cogan:

    On the morning of jury selection, February 19, 2019, this Court issued an order precluding Mr. Nordlicht's theory of defense, that is, attorney Winston Paes, while lead prosecutor on this matter and preindictment, engaged in a series of communications with reporters that resulted in newspaper articles that damaged the primary evidence of the case, the value, liquidity and overall health of the funds. Further, the publicity caused an institutional investor who had agreed to inject 200million dollars into Platinum funds to pull his commitment. Additionally, it is the defense theory that Mr. Paes engaged in these activities for his own self-promotion, to the detriment of the fund and Mr. Nordlicht and financial gain. To be clear, Mr. Nordlicht is not arguing selective prosecution. Instead, Mr. Nordlicht is arguing that Mr. Paes' actions during the government investigation of Platinum affected the evidence in this case. As this Court has previously ruled:

> The Government contends that even a good faith belief about PPVA's future performance – ***including a belief that PPVA would have***

1

> ***recovered from its liquidity crisis but for the Government's investigation*** – would not excuse defendant's alleged fraud.
>
> The Government puts the cart before the horse. Determining whether defendants had a good faith belief in PPVA's future performance is critical to determining whether defendants committed fraud in the first place. *See U.S. v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) ("Essential to a scheme to defraud is fraudulent intent."). Defendants should be permitted to present to the jury their theory that statements about PPVA were not fraudulent because defendants believed them to be true. In addressing this issue initially, Mr. Nordlicht maintains he made a sufficient showing on this issue to entitle him the right to present his defense.

This Court's Jan. 8, 2018 Order on Defendants' Motions in Limine, Dkt. # 479, pgs. 1-2 (Emphasis added).

The Court has required Mr. Nordlicht reveal specific facts underlying his strategy before having the ability to assert his defense. In order to comply with this Court's requirement, Mr. Nordlicht provides the following concrete examples of evidence he expects to present. Mr. Nordlicht has a good faith basis to believe the following testimony will be presented in his defense at trial:

1) Witness Michael Goldberg will testify that a creditor in Platinum Portfolio

2) Witness Vitaly Pruss will testify that after an extensive 3 month due diligence process of all Platinum processes and valuation, overseen by the law firm Debevoise and Plimpton, an institutional investor he was advising was expected to inject 200 million dollars into Platinum funds, this was derailed by the previously cited news articles.

3) Witnesses Michael Hutman and Randy Katzenstein will testify that as a result of publicity from the referenced articles, swap counter parties demanded 100 percent margin requirement on Indonesian swap positions thereby resulting in immediate additional requirement of approximately 10-20 million in margin at a time when Platinum executives were working feverishly to manage liquidity in the funds.

4) Witness Bai Gei (key institutional investor) and Scott Hollander will testify Echo therapeutics, a key Platinum healthcare holding was unable to maintain its nasdaq listing due to pressure in its stock price as a result of publicity of Platinum investigation between May and August 2016.

5) Witness Howard Crosby (independent director of Desert Hawk Mining, a key private holding of Platinum, a gold mine in Nevada) was working on a debt and equity raise for the company. After the previously cited news articles regarding the investigation into valuation of Platinum positions and "Ponzi" scheme investigation leak, he was unable to secure financing despite identifiable institutional investors interest and a positive outlook immediately preceding the news stories. The financing was expected to net millions of dollars to Platinum and set the company up strategically to increase reserves and initiate production.

6) Witness Dov Weiner is an independent resource banker working on refinancing Platinum energy positions. He will testify that he was advising on Platinum energy poisons in 2016 and is expected to testify the successive leaks from May through August, prevented him from securing financing for Platinum energy positions which wold have freed up north of 150 million in liquidity to PPVA and set up Platinum energy holdings for a successful outcome.

7) Shawn Singh will testify that based on the related articles, his stock was harmed, as his stock was hit in the open market as a result of the affiliation with Platinum. Mr. Singh was contacted by investors concerned about a cited article directly after publication.

These individuals represent substantial investments and support Mr. Nordlicht's theory of defense. It must be noted that Platinum suffered a similar crisis during the national financial crisis in 2008. However, without the equivalent of yelling "fire" in a crowded theatre, Platinum was able to engage in unique strategies to return the funds to a healthy position. Here, Mr. Nordlicht had every reason to believe he would be able to right the ship once again. Mr. Paes' communications with the press during the investigation (and his motivation for doing so), the resulting newspaper articles giving the details of the investigation, and the effect on investors is fundamental Mr. Nordlicht's defense.

As to Mr. Paes' motivation in communicating with the press to create "newsworthy" cases, this Court has previously reviewed Mr. Paes' email communications that correspond with the previously written articles that affected the health of the fund and discouraged future investments. The defense has a good faith basis to call Mr. Paes and question him on his relationship and communications with the members of the press, as evidenced by his emails. The defense has a good faith basis to question Mr. Paes on the substance of the communications with the press in the cited, damaging articles. The defense has a good faith basis to inquire about Mr. Paes' use of this investigation and the corresponding leaked news articles for self-promotion and as a spring board for seeking and securing a massive salary increase. To that end, the defense plans to call:

1) Rebecca Fogler, from the law firm Quinn Emmanuel, who will testify that her office received promotional material from a headhunter on behalf of Mr. Paes touting his prosecution of Platinum in seeking employment.

2) Nicole Levin Mesard, the chair of the hiring committee from the law firm Debevoise & Plimpton, who will testify that Mr. Paes touted his prosecution of Platinum in securing a position that massively increased his salary.

3) Additional hiring partners and individuals from human resources from Skadden, Cravath, Paul Weiss, Kirkland and Ellis, White and Case, David Polk, Simpson Thatcher, and Latham and Watkins will similarly testify.

Mr. Nordlicht contends that the witnesses and expected testimony proffer contained herein (and required by this Court) are more than sufficient to allow him to present his theory of defense. Mr. Nordlicht did not previously give detail on this granular level because this directly requires disclosure of defense strategy.

    Sincerely,

    */s/ Lisabeth Fryer*
    Lisabeth Fryer
    (on behalf of Mark Nordlicht)

cc: All Counsel of Record (via CM/ECF)