

April 12, 2019

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Mark Nordlicht, et al.
Criminal Docket No. 1:16-cr-00640-BMC

Dear Judge Cogan:

This letter is in supplement to Mr. Nordlicht's April 10, 2019 letter seeking preclusion. and redaction in all trial exhibits, of any reference of the Scott Rothstein Ponzi scheme. Mr. Nordlicht further moves the Court to preclude any statement, argument, or evidence of investments made by the Platinum Partners fund with or in relation to Scott Rothstein, and of the bankruptcy proceedings that ensued as a result of said investments.

Mr. Nordlicht was charged in eight counts by Indictment on December 14, 2016. *See* Dkt. #1. The Indictment alleges that Mr. Nordlicht and his co-defendants participated in a scheme to defraud investors in relation to funds managed by the Platinum Partners fund, and in a scheme to defraud third-party bond holders of the Black

\#



Elk Bonds.  *See* Dkt. #1, para. 41.  The conduct that forms the basis of the foregoing charged offenses is alleged to have occurred between approximately 2011 and 2016.  *See id*.

Prior to the occurrence of the conduct alleged in the Indictment, the Platinum Partners fund was invested with Scott Rothstein.  In early 2010, Scott Rothstein plead guilty to offenses involving allegations that he operated a Ponzi scheme.  In the ensuing bankruptcy proceeding, Platinum Partners was compensated for losses it incurred as a result of the investment with Scott Rothstein.  Neither the Platinum Partners fund nor any employees of the fund were accused of any wrongdoing in relation to the offenses with which Scott Rothstein was charged.

An investment that predates the conduct alleged in the Indictment is irrelevant, as it has no bearing on the matters at issue in Mr. Nordlicht's trial.  Furthermore, there is no connection between the investment with Scott Rothstein, and the funds managed by Platinum Partners or the Black Elk Bonds. Even *if* this evidence is deemed relevant to the offenses charged, it is inadmissible because any probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  The circumstances surrounding Scott Rothstein's arrest were highly publicized, and evidence of a prior business relationship between Mr. Nordlicht and Scott

#



Rothstein is likely to invoke emotion in the jury that could sway the jury to convict Mr. Nordlicht based solely on his former association with Scott Rothstein.  It would invite the jury to prejudge the matters at issue in Mr. Nordlicht's case without considering the evidence at trial.  *See United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) ("[T]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial.").

The danger of unfair prejudice is compounded by the fact that the government conducted a press conference at which United States Attorney Capers referred to a portion of the conduct charged in the Indictment as resembling a "ponzi-esque" scheme. *See* United States Attorney Robert L. Capers, Dec. 19, 2016 Press Conference: *Platinum Partners' Founder & CIO among 5 Indicted in a $1 Billion Investment Fraud*, https://www.justice.gov/usao-edny/video/platinum-partners-founder-cio-among-5-indicted-1-billion-investment-fraud, last visited Mar. 18, 2019.

Although Rothstein's conduct and the investment by the Platinum Partners fund with Rothstein both occurred before the time period for the allegations against Mr. Nordlicht in the instant matter, the resulting bankruptcy proceeding was pending during part of the time that the allegations in this case took place.  As a result, various trial

#



exhibits listed by the contain references to the pending bankruptcy proceeding and the aftermath of Scott Rothstein's arrest.

In GX-7124, Mr. Nordlicht makes a comment that it would be a breach of fiduciary duty to allow anyone to invest in the fund until everything is straightened out. During this conversation, Mr. Nordlicht discusses a rating given to Platinum Partners and references an Albourne Report, a report for sophisticated investors, that poorly rated Platinum.  The Albourne Report and the rating was directly related to Platinum Partners' prior investment with Rothstein. In a January 8, 2019 interview of the government's cooperating witness, Andrew Kaplan, Kaplan is played part of this recording and asked about this precise statement by Mr. Nordlicht. Interview notes indicate that Kaplan does not recall seeing the Albourne Report but that he took Mr. Nordlicht's statement "to mean that PP was not where they should be." *See* 3500-AK-13, p.1.

This specific statement and the surrounding conversation in the recording should be redacted because the Rothstein investment, and the effects that Rothstein's arrest had on the Platinum Partners fund is irrelevant to the allegations against Mr. Nordlicht.  Even more so, any probative value of this conversation is outweighed by substantial unfair prejudice to Mr. Nordlicht at trial.  Because evidence of an investment by the Platinum Partners fund with or in relation to Scott Rothstein, is not relevant to the offenses

#



charged, and the potential for unfair prejudice to Mr. Nordlicht substantially outweighs any potential probative value of the evidence, Mr. Nordlicht, by and through counsel, respectfully requests this Court exclude any evidence, discussion, or argument of investments made by the Platinum Partners fund, with or in relation to, Scott Rothstein, and of the bankruptcy proceedings that ensued as a result of said investments.

Sincerely,

/s/Jose A. Baez
JOSE A BAEZ, ESQ.
On behalf of Mark Nordlicht

Cc: All counsels, AUSA's, Clerk

#



cc: All Counsel of Record (via Email)

#