UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                           :

UNITED STATES OF AMERICA,            :

              - against –                    :      **ORDER**

MARK NORDLICHT,                       :      16-cr-00640 (BMC)
DAVID LEVY,
DANIEL SMALL,
JOSEPH MANN,
JOSEPH SANFILIPPO, and
JEFFREY SHULSE,

              Defendants.
-------------------------------------------------------------- X

**COGAN,** District Judge.

This order addresses four motions filed by the parties. It assumes familiarity with the facts and the parties' positions. For the reasons below, the Government's [603] motion to preclude expert testimony is granted in part and denied in part; Nordlicht's [604] motion for reconsideration is denied; Nordlicht's [605] motion to inspect is denied; and the Government's [609] motion to quash subpoenas and compel disclosure is granted in part and denied in part.

    **I.**       **The Government's Motion to Preclude Expert Testimony**

The Government has moved for a second time to preclude the expert testimony of two witnesses, Linda MacDonald and Stephen Lieberman. The Court denied the Government's first motion but required defendants to provide the Government with revised disclosures. The Government renews its motion to preclude these witnesses based on the revised disclosures. The Government's motion is granted in part and denied in part, as set forth below.

### A. Linda MacDonald

Federal Rule of Criminal Procedure 16 requires defendants to, at the Government's request, provide a written summary of the expert testimony they intend to introduce at trial. This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. Proc. 16. "The purpose of this rule is to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Wilson, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006).

"Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." United States v. Valle, 12-cr-847, 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013). It is also not enough to "provid[e] the government with a list of sources from which the experts drew their opinions [without] specifying which sources the expert used to reach the different opinions identified is insufficient." United States v. Ahmed, 12–cr–661, 2015 WL 1611947, at *1 (E.D.N.Y. April 9, 2015). District courts have "broad discretion in fashioning a remedy" if the related disclosures are inadequate because they list "topics on which the experts might opine" but do not "summarize the experts' opinions about those topics, let alone describe the bases for the experts' opinions." United States v. Ulbricht, 858 F.3d 71, 115 (2d Cir. 2017) (internal quotation marks omitted).

Defendants previously provided a threadbare disclosure of the expert testimony of Linda MacDonald that merely identified potential topics of MacDonald's testimony without summarizing her opinions on those topics or the bases and reasons for her opinions. Defendants'

2

revised disclosures provide a slightly updated list of potential topics of her testimony but do not make any attempt to summarize her opinions or provide a basis for her opinions.

Defendants' scant disclosure of MacDonald's testimony stands in stark contrast to their revised disclosure, which the Government does not take issue with, of the anticipated expert testimony of Stephen Lieberman (further discussed below). Defendants' revised disclosures dedicate approximately six pages to Lieberman's testimony and provide an extensive description of his proposed expert testimony. In contrast, defendants dedicate just over one page to MacDonald's testimony, which is limited to her qualifications and potential topics of expert testimony.

As their disclosure of Lieberman's testimony indicates, defendants are fully capable of summarizing expert testimony, but – for reasons that defendants have not explained and are not apparent to the Court – defendants have failed to do so for MacDonald. Thus, the Government lacks the adequate notice to prepare to cross examine MacDonald or otherwise challenge her expert testimony.

Concerns about unfair surprise and prejudice to the Government are particularly acute in light of the complex nature of the topics of her proposed testimony, i.e. valuation of Level 3 assets. At a minimum, an adequate disclosure of MacDonald's proposed expert testimony would include disclosures at least as extensive as Lieberman's. To the extent defendants seek to introduce exhibits in connection with MacDonald's (or Lieberman's) testimony, the disclosure should identify these exhibits, which should already have been included in defendants' exhibit list. To the extent she is relying on data or evidence that might otherwise be inadmissible, the data must be specifically disclosed so that the Government can prepare to meet it before cross.

As the Court stated with regard to defendants' advice of counsel defense, the Court is not going to let defendants sandbag the Government with complex valuation testimony that relies on data facts, or methodologies not disclosed in advance to the Government. There are a number of different methods by which assets can be valued when they are not traded on a public market. The expert generally picks one or more of these methods, and then does research into comparable assets' performance, income streams, or sales figures. The expert then makes a judgment as to the comparability of the other assets and may apply, again as a matter judgment, a discount or multiplier depending on that comparability. Defendant are on notice that if they do not make adequate disclosures of the underlying methodology and data so that the Government can test their witnesses' exercise of judgment, the testimony will not be allowed.

This is basic disclosure practice as to expert testimony and defense counsel surely know it. This information should have been produced previously. Nevertheless, the Court will provide defendants with one more chance to supplement and expand their expert disclosures for MacDonald. Within two weeks of the entry of this order, defendants shall provide revised disclosures consistent with this opinion (and their efforts with Lieberman) or the proposed testimony of MacDonald will be precluded.

### B. Stephen Lieberman

As mentioned above, the Government also seeks to preclude the expert testimony of Stephen Lieberman, a "hybrid" fact/expert witness, based on defendants' revised disclosures. According to these disclosures, his fact testimony will cover "the Golden Gate oil fields and drilling plans and modeling" and his expert testimony will address background information relating to the oil and gas industry, including the use of third-party reports on oil and gas reserves. In particular, Lieberman's proposed expert testimony includes the reliability of a third-

4

party Golden Gate Oil reserve appraisal by Degolyer MacNaughton ("D&M"). The Government contends – and defendants do not deny – that Lieberman provided the information that D&M used when preparing this appraisal. Further, although Lieberman was involved in brokering Platinum Partners' investment in Golden Gate Oil, defendants have confirmed that Lieberman will not testify about the valuations of any Platinum Partners assets.

The use of "hybrid" witnesses who testify both as fact and expert witnesses "is not objectionable in principle." United States v. Feliciano, 223 F.3d 102, 121 (2d Cir. 2000). "The classic example [of a hybrid witness] is a treating physician in a personal injury case who testifies about the facts of plaintiff's treatment and is allowed to offer opinions such as the cause of the injury and/or the disability that will result." The Helena Assoc., LLC v. EFCO Corp., 06-cv-0861, 2007 WL 54399, at *2 (S.D.N.Y. Jan. 5, 2007). Hybrid witnesses also include "a law enforcement agent [who] testifies regarding the use of code words in a drug transaction." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. This type of testimony is admissible "so long as the principles and methods are reliable and applied reliably to the facts of the case." Id.

However, the use of hybrid witnesses poses unique risks, including: (1) "the government confers upon [a hybrid witness] the aura of special reliability and trustworthiness surrounding expert testimony"; (2) "expert testimony by a fact witness . . . can inhibit cross-examination, thereby impairing the trial's truth-seeking function" because "impeaching an expert is difficult"; (3) and "there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's sweeping conclusions." United States v. Dukagjini, 326 F.3d 45, 53-54 (2d Cir. 2003) (internal quotation marks and alterations omitted).

Thus, "despite the utility of" hybrid testimony, "its use must be limited to those issues

5

where [expert] knowledge is appropriate." United States v. Mejia, 545 F.3d 179, 190 (2d Cir. 2008). If a hybrid "expert strays beyond the bounds of appropriately 'expert' matters,'' that witness "transforms into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt" or, as here, the defendants' innocence. Id. at 190-91.

The Court will not preclude Lieberman's expert testimony. It concerns topics that are beyond the scope of the lay knowledge of the jury, which is unlikely to possess the in-depth knowledge of the oil and gas industry that Lieberman will provide. Further, because Lieberman would testify for defendants, his testimony would not raise the potential that the "the government confers upon him the aura of special reliability and trustworthiness" of an expert witness. See Dukagjini, 326 F.3d at 53-54 (internal quotation marks and alterations omitted) (emphasis added).

Although hybrid testimony raises concerns, the Court can best address these concerns through its gatekeeping role by clarifying and limiting the scope of Lieberman's expert testimony rather than precluding this testimony entirely. When Lieberman testifies as an expert witness, he must use "principles and methods [that] are reliable and applied reliably to the facts of the case," Fed. R. Evid. 702 advisory committee's note to 2000 amendment, and he must not conflate his personal knowledge with expert testimony.

For instance, when Lieberman testifies about the reliability of the D&M appraisal, he must explain, at each step of the way, how he applied his expertise in the field to his determination that the appraisal was reliable. He must explain the reason why his expertise is relevant to and necessary for the evaluation of third-party appraisals, point out the facts from the D&M appraisal that are key to determining its reliability, and then explain to the jury how,

6

according to his expertise, he found those specific points to indicate the appraisal's reliability, rather than a lack of reliability. See Mejia, 545 F.3d at 195-96 (explaining difference between an appropriate example of hybrid testimony and its unacceptable use).

The Government may cross-examine Lieberman on his role in providing information to D&M as a means of impeaching Lieberman's credibility. The Government's "opportunity . . . to explore on cross-examination the limitations of [the hybrid expert's] experience and his testimony, both as an expert and a fact witness" mitigates any prejudice resulting from Lieberman's dual role as a fact and expert witness. Feliciano, 223 F.3d at 121.

The Government also contends that Lieberman's expert testimony is inappropriate because it overlaps with the testimony of its fact witnesses, but this is no reason to preclude Lieberman's expert testimony. There is "a critical difference between lay and expert opinion testimony." United States v. Samet, 466 F.3d 251, 255 (2d Cir. 2006). "[L]ay opinion testimony admissible under Rule 701 must be the product of reasoning processes familiar to the average person in everyday life, rather than the product of scientific, technical, or other specialized knowledge." United States v. De Jesus Sierra, 629 F. App'x. 99, 103, n.1 (2d Cir. 2015) (internal quotation marks and citations omitted). If the testimony of any fact witness substantially overlaps with Lieberman's expert testimony, then at least one witness has failed to stay within the proper limitations of expert and lay testimony. The Court will address any failure to respect these limitations at trial.[1]

## II.    Nordlicht's Motion for Reconsideration

Nordlicht has moved the Court to reconsider its order denying Nordlicht's prior motion for reconsideration of the Court's denial of his amended motion for an evidentiary hearing

---

[1] At trial, the Court will also rule on the objections, if any, to Lieberman's and MacDonald's testimony on grounds other than the grounds addressed in this order.

regarding purported grand jury leaks. (This followed Chief Judge Irizarry's order denying Nordlicht's first motion for reconsideration of Chief Judge Irizarry's denial of Nordlicht's original motion for an evidentiary hearing on this matter.)

Nordlicht's prior motion for reconsideration – the denial of which is at issue here – argued that a transcript of Murray Grenville's August 17, 2016 grand jury testimony indicates that an August 11, 2016 article disclosed a matter occurring before the grand jury. The Court denied this motion on two grounds: (1) Nordlicht failed to include this transcript in his amended motion for a hearing, and (2) because Grenville's testimony occurred six days after the August 11, 2016 article was published, it could not have been the basis of any purported grand jury leaks in the article.

Under Local Criminal Rule 49.1, a "motion for reconsideration or reargument of a Court order determining a motion shall be filed and served within fourteen (14) days after the Court's determination of the original motion." Nordlicht filed the instant motion on April 3, 2019 seeking reconsideration of an order dated February 4, 2019. Nordlicht's motion is thus untimely, but in addition to that, it is without merit..

A motion for reconsideration may be granted where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). In the

8

instant motion, Nordlicht has not pointed to any decisions or data that the Court overlooked, let alone matters that would have altered the Court's conclusion.

Instead, Nordlicht objects to the Court's finding that Nordlicht failed to provide Grenville's August 17, 2019 grand jury testimony in his amended motion for a hearing. Although Nordlicht referenced (without any specifics) Grenville's testimony in his reply in support of the amended motion, Nordlicht did not provide the Court with the transcript until the initial motion for reconsideration, which the Court denied. As the Court noted in that order, a motion to reconsider is not a means to provide the Court with additional evidence that the moving party had but failed to produce with its original motion. See United States v. Posada, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016) (collecting cases).

Nordlicht also requests that the Court reconsider its ruling that, because Grenville's grand jury testimony occurred on August 17, 2016, it could not have been the basis of a purported grand jury leak that occurred in an article published six days earlier. Nordlicht claims that, if there had been a subpoena issued to Grenville prior to the August 11, 2016 article, then Nordlicht would be entitled to an evidentiary hearing regarding grand jury leaks.

But as the Court has repeatedly explained to Nordlicht, the mere fact that the subject matter of an article overlaps with the subject matter of grand jury testimony is insufficient to find that the article disclosed a "a matter occurring before a grand jury" under Federal Rule of Criminal Procedure 6(e). See United States v. Skelos, 15-cr-317, 2015 WL 6159326, at *10 (Oct. 20, 2015). Rather, matters occurring before a grand jury include "revelations of the identity of either grand jurors or expected witnesses; information about expected testimony of witnesses or likely questions; information that reveals the strategy or direction of a grand jury investigation (distinct from any outside investigations); or the date when a grand jury will return

an indictment." Id.

Accordingly, the Court found that none of the articles defendants have pointed to disclose a "matter occurring before the grand jury" under Rule 6(e). United States v. Nordlicht, 16-cr-640, 2018 WL 6106707, at *3-4 (Nov. 21, 2018). Since the Court issued this order, defendants have repeatedly attempted to take additional bites at the apple, including in the instant motion, but have failed to meet the strict standard of showing what the Court overlooked that would have altered its conclusion.

A motion for reconsideration is not a means for counsel to contrive new ways to argue the same facts and the same law. Its purpose is to say, if the Court had access to or knowledge of something (to which the moving party did not have access or of which the moving party did not know before it filed its motion), the Court would have likely reached a different conclusion. That is not the case here.

### III. Nordlicht's Motion to Inspect

Nordlicht has moved for the Court to review *in camera* certain documents filed in a case in the Southern District of New York, United States v. Walters, No. 16-cr-338. These documents are status reports on a Department of Justice Public Integrity Section investigation about a former FBI special agent who was assigned to both the investigation of Platinum Partners and the investigation underlying Walters. Nordlicht notes that these reports are redacted, and requests that the Court provide him with any reports that refer to Platinum Partners.

This Court does not have any more access to sealed documents filed on another court's public docket than Nordlicht has. To the extent Nordlicht would like any court to review status reports in Walters, he must make that request to Judge Castel, who is presiding over Walters. Nordlicht's motion is denied.

10

### IV. The Government's Motion to Quash Subpoenas and Compel Disclosure

The Government has moved to quash defendant Levy's Federal Rule of Criminal Procedure 17(c) subpoenas issued to Government witnesses and for defendants to disclose all materials received pursuant to these subpoenas. For the reasons stated below, the Government's motion is granted in part and denied in part.

#### A. Motion to Quash

Federal Rule of Criminal Procedure 17 provides that a court may issue a subpoena ordering a witness to produce "any books, papers, documents, data, or other objects the subpoena designates." The Court has previously articulated at length numerous times the relevant legal standards surrounding this Rule, so it will not repeat them here.

Indeed, the Court has previously quashed two subpoenas issued to Amir Shaked and Daniel Sun that the Government asserts – and Levy does not dispute – are identical in form and substance to the remaining subpoenas at issue, which the Government now seeks to quash. Specifically, each subpoena includes a similar timeframe (January 1, 2008 through June 30, 2016) and substantially similar broad requests, including requests for all documents relating to investments in Platinum Partners, as the Shaked and Sun subpoenas.

As the Court explained in its order quashing the Shaked and Sun subpoenas, under either the United States v. Nixon, 418 U.S. 683 (1974), or United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008), standard, a defendant cannot use a Rule 17(c) subpoena as a fishing expedition because a Rule 17(c) subpoena is meant to be an efficient trial tool, not a discovery device. As was the case with Shaked and Sun, the Court cannot see how all of the documents that Levy has requested for almost nine years are material to his defense, assuming Tucker applies, or relevant and admissible, assuming Nixon applies.

11

Levy has not provided any reason why the remaining subpoenas comply with either Tucker or Nixon. Instead of providing a basis for these subpoenas, Levy has asserted, without explanation, that the motion to quash is untimely. However, the motion to quash is timely for any subpoena that is still outstanding. Levy has indicated that, out of 32 subpoenas that it disclosed to the Government, 13 subpoenas are still outstanding. Those 13 subpoenas are quashed.

### B. Motion to Compel Disclosure

The Government has also moved to compel disclosure of all *ex parte* subpoenas issued by each defendant, including subpoenas issued to recipients not on the Government's witness list. The Government contends that – despite a Court order instructing defendants to produce to the Government subpoenas issued to Government witnesses – it has not received three Rule 17 subpoenas issued to Government witnesses by defendant Daniel Small or a subpoena that Levy issued to Alvarez and Marsal, although two Alvarez and Marsal employees are on the Government's witness list.

Defendants are ordered to produce to the Government all Rule 17 subpoenas issued to Government witnesses, to the extent they have not produced these subpoenas already. However, defendants have no obligation to produce to the Government Rule 17 subpoenas issued to recipients who are not Government witnesses, because the original purpose of disclosing the Rule 17 subpoenas to the Government was so that it could determine whether they were meritorious or whether the Government would move to quash them. The Government has standing to move to quash a subpoena issued to a third party if the Government's legitimate interests are at stake or if the recipient requests the Government's assistance. See United States v. Bergstein, 16-cr-746, 2017 WL 6887596, at *2-3 (S.D.N.Y. Dec. 28, 2017). The

12

Government's legitimate interests are at stake when defendants subpoena a Government witness. See id. However, the Government has not provided any reason why its legitimate interests are at stake in every Rule 17 subpoena issued in this case.

In some cases, a defendant may issue a Rule 17 subpoena to an entity that employs Government witnesses (e.g., the subpoena Levy issued to Alvarez and Marsal, which employs two Government witnesses). The Government's intention to call an entity's employees as witnesses is not sufficient to confer standing on the Government to challenge a subpoena issued to the entity itself. The subpoena would call for documents in the entity's custody, not the custody of individual employees of the entity, and these documents may be not be relevant to the Government's witnesses or their testimony. Therefore, defendants are not obligated to provide the Government with subpoenas issued to an entity whose employees are on the Government's witness list.

The Government notes that the Court has an "an independent duty . . . to ensure the propriety of Rule 17(c) subpoenas." Bergstein, 2017 WL 6887596, at *3. However, the Government does not explain why this duty provides the Government with the right to subpoenas not issued to Government witnesses. To the extent a subpoena recipient who is not a Government witness received a Rule 17 subpoena, it may file its own motion to quash, or it may contact the Government to seek assistance in filing a motion to quash. The Government's request to receive subpoenas issued to recipients who are not Government witnesses is denied.

The Government has also moved to compel defendants to produce all material received pursuant to the Rule 17 subpoenas. The Government notes that "[c]ertain" Government witnesses have stated that they produced documents to Levy that Levy has not produced to the Government, but has not provided any additional details. However, Levy represents that he has

13

produced all of the documents he has received from any Rule 17 subpoena. The Court takes Levy at his word that he has produced everything that he has received. To the extent the Government continues to doubt that Levy has produced all of the documents he has received pursuant to Rule 17 subpoenas, it should identify the missing documents for Levy and engage in a good faith resolution of this dispute (to the extent practicable) without further judicial intervention.

Further, the Government claims that Levy's method of production has obfuscated the source of the documents. In particular, the Government notes that Levy has used the same bates-prefix for all of the approximately 850 documents he produced on March 4, 2019. Levy has replied that the Government did not communicate to him any objection to the form of his productions, and he is willing to answer any questions the Government has about the source of the documents he has produced. The Court also expects that the parties will engage in a good faith resolution of this issue.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      April 12, 2019