

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:ALC/DCP/LHE/PTH
F. #2016R00505

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 28, 2019

BY ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Mark Nordlicht, et al.
                Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in response to the defendants' motion to preclude and strike testimony of fact witness Arthur Garza at trial in the above-captioned case. ECF Docket No. 667 ("Def. Mot."). The defendants' motion mischaracterizes the witness testimony at issue and should be denied in its entirety. Contrary to the defendants' claims, the challenged testimony is appropriate, admissible and highly probative of the issues in dispute in this case.

I.    Background

      From 2009 until September of 2014, Mr. Garza was the Chief Technical Officer for Black Elk Energy ("Black Elk"). In this role, he was responsible for, among other things, evaluating acquisition opportunities for Black Elk and making recommendations to Black Elk senior management and Platinum Partners on opportunities. Another of Mr. Garza's roles was evaluating undeveloped wells for potential drilling and development. Mr. Garza's testimony has already established that he has decades of experience in these capacities and was a senior member of Black Elk's management team for over five years.

      As part of his work at Black Elk, Mr. Garza was asked by members of Platinum Partners, including the defendants Mark Nordlicht and David Levy, to evaluate specific acquisition opportunities and engage in due diligence as part of that effort. Mr. Garza's testimony will describe what he did as part of his work at Black Elk and, more importantly, will establish that Mr. Garza communicated directly with Nordlicht, Levy and co-defendant Daniel Small, among others, regarding his work and observations that were central to his role as Chief Technical Officer, including: evaluation of Golden Gate Oil ("Golden Gate") and Northstar as potential acquisition opportunities for Black Elk and assessment of aspects of Black Elk's

reserve reports. At the request and with the knowledge of the defendants, Mr. Garza conducted due diligence visits to Golden Gate, engaged with reserve auditors and briefed the defendants on his findings. Finally, in his role as a member of the senior management team, Garza had insight into the performance of Black Elk's oil and gas assets and the financial condition of the company, as well as Platinum's role in managing Black Elk.

II. Applicable Law

In a criminal case, "the prosecution is entitled to prove its case by evidence of its own choice." Old Chief v. United States, 519 U.S. 172, 186 (1997). "The fair and legitimate weight of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." Id.

The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge. United States v. Cuti, 720 F.3d 453, 458 (2d Cir. 2014) (citing Fed. R. Evid. 602). When determining whether certain testimony is fact testimony or expert testimony, "it is the substance of the testimony that controls"—not the professional background of the witness. In re World Trade Ctr. Lower Manhattan Disaster Site Litig., No. 21-MC-102 (AKH), 2014 WL 5757713, at *3 (S.D.N.Y. Nov. 5, 2014); see also United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of his knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigator findings and conclusions, and was not rooted exclusively in his expertise."). "All knowledge is inferential, and the combined effect of Rule 602 and 701 is to recognize this epistemological verity but at the same time prevent the piling of inference upon inference to the point where the testimony ceases to be reliable." United States v. Giovannetti, 919 F.2d 1223, 1226 (7th Cir. 1990).

Testimony as to facts or opinions formed during the course of a witness's involvement in the events giving rise to litigation is admissible as fact testimony. In re World Trade Ctr., 2014 WL 5757713, at *3 (holding that a treating physician can testify as to facts or opinions formed during a consultation with a patient as a fact witness). In Cuti, the Second Circuit affirmed the admission of fact testimony of accountants who were involved in transactions that were central to the prosecution, ruling that the witnesses, while certified and experienced accountants, were testifying from personal knowledge and thus their testimony was admissible as fact testimony, even if it was based upon the application of undisputed accounting rules. 720 F.3d at 459.[1]

Testimony in the form of opinions can be offered by either expert or lay witnesses. Cuti, 720 F.3d at 457-58. Rule 701 of the Federal Rules of Evidence permits a lay witness to give an opinion if it is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701; see also Cuti, 720 F.3d at 459 (summarizing

---

[1] The Court also held that the testimony was alternatively admissible as lay opinion testimony.

2

requirements). "[A] lay opinion must be rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation." United States v. Glenn, 312 F.3d 58, 67 (2d Cir. 2002).

III. Argument

    1. Arthur Garza Is Not Offering Opinion Testimony

The defendants' motion is both baseless and meritless because Mr. Garza has not offered and will not offer opinion testimony. Rather, Mr. Garza will be testifying solely based on his firsthand observations and perceptions, made at the time of the relevant events during the period of the charged conspiracies. The fact that Mr. Garza's testimony includes an introduction to oil-and-gas-related terms such as "reserve" is a complete red herring: such testimony is necessary to explain terms and acronyms that the defendants used themselves in their communications with Mr. Garza. The government will be offering several examples of such communications as exhibits during Mr. Garza's testimony. As these exhibits demonstrate, Mr. Garza reached a contemporaneous view regarding technical performance of and acquisition opportunities relating to Platinum's oil and gas investments, and communicated such views to the defendants. Mr. Garza is accordingly permitted to, as a fact witness, explain what such views were and the fact that he communicated them to Platinum.[2]

To be clear, the testimony the government has elicited and will continue to elicit from Mr. Garza tomorrow covers the following general topics:

- His contemporaneous, firsthand observation of Black Elk's technical performance (i.e., the status, production and performance of its oil wells) and financial distress

- His contemporaneous perception of Black Elk's opportunity to acquire Golden Gate during the period of the charged conspiracies, including the purchase price agreed to by Black Elk (all of which is documented in contemporaneous e-mails to the defendants)

- His contemporaneous perception of Northstar as an acquisition opportunity for Black Elk (also supported by contemporaneous e-mails)

- How he, as part of his job, arrived at his contemporaneous views about Platinum's oil and gas positions that he communicated to the defendants (Mr. Garza already has provided some of this testimony, including the value he ascribed to different categories of proven reserves in his role as Black Elk's Chief Technical Offer)

---

[2] Although defense counsel seizes on Mr. Garza's response to a question during direct examination last Friday that he communicated technical information to his boss, the Chief Executive Officer of Black Elk, Mr. Garza will testify in response to additional questions tomorrow, many of which are rooted in specific e-mails with the defendants, that he also communicated such information to Nordlicht, Levy and others at Platinum.

3

- His explanation of the oil-and-gas terms that are relevant to his analysis and are included in the contemporaneous e-mails that the government will introduce as exhibits.

None of the foregoing testimony amounts to opinion testimony, whether expert or lay, and all of the testimony is admissible and highly probative of the charged offenses.[3] Mr. Garza will be testifying exclusively to observations he made and perceptions he had at the time of the relevant events during the charged conspiracies—not as part of or in anticipation of litigation. Necessarily, those observations and perceptions were generated during and as a result of Mr. Garza's work as Chief Technical Officer of Black Elk. In that role, Mr. Garza was required to evaluate the performance, production and profitability of oil reserves owned by Black Elk, and the attractiveness from an acquisition perspective of oil reserves owned by Golden Gate and Northstar. In order to do his job, Mr. Garza observed the assets of these companies firsthand, reviewed reserve reports, met with the companies' management and communicated the results of his work to Black Elk senior management and the defendants. He will be testifying about his observations and views in that role as a result of that on-the-ground work. Further, Mr. Garza is not going to testify that he valued the equity or debt of any of Platinum's oil-and-gas positions at a specific number, or that Platinum should have made such a specific valuation. Mr. Garza also is not going to testify about the application of U.S. Securities and Exchange Commission ("SEC") rules. What makes his testimony so probative and appropriate is that it is grounded in the facts of these oil-and-gas companies and their reserves at the time of the charged conspiracies, and the government will ensure that his testimony adheres to such facts.

Further, Mr. Garza must be permitted to explain the terms and acronyms used by the defendants themselves in their e-mail conversations with him. In any case, regardless of the subject matter, a witness with whom the defendant(s) conversed about specific terms or acronyms can and must be explained by that witness. (Otherwise, even a truck driver who discussed with a defendant a term relevant to the trucking industry would have to be qualified as an expert witness merely to explain that term—a result that defies logic and experience and has no basis in the law.) The defendants' attempt to transform such innocuous and appropriate testimony into expert testimony in an effort to preclude it must fail.

Finally, what the defendants ignore entirely is what makes Mr. Garza's testimony on the foregoing subjects highly and crucially probative of the defendants' intent, knowledge and state of mind with respect to both charged schemes: he was in conversations with the defendants in which the technical and financial problems of Black Elk were openly discussed, and he personally was asked by the defendants for his honest perspective on the viability of Golden Gate and Northstar as acquisitions. The information Mr. Garza provided to the defendants on these subjects is critical evidence of the defendants' intent and knowledge with respect to the valuations they applied to PPVA's oil-and-gas positions. Among other things, Mr. Garza will testify that he told the defendants he thought the purchase price for Golden Gate—which Black Elk ultimately never purchased—was too high and explained to them why that was the case. Similarly, Mr. Garza's open discussion with the defendants about the problems Black Elk was

---

[3] Further, the defendants have been on notice of the nature and extent of Mr. Garza's testimony for several months now. Their decision to raise this issue for the first time with the witness on the stand is clear gamesmanship.

4

experiencing—especially in the months leading up to the fraudulent Black Elk bondholder consent solicitation in 2014—is highly probative of the defendants' intent, knowledge and motive with respect to the Black Elk Bond scheme. See Order, dated Feb. 18, 2019, ECF Docket No. 564 (denying defendant Daniel Small's motion to exclude evidence).

With this motion, the defendants are attempting self-servingly to remove fact issues from the lay realm and argue to the jury that such issues cannot be decided—whether by them or the defendants—without reference to "expert" opinion. The defendants certainly are free to make that argument to the jury. What they cannot do is withhold from the jury critical fact testimony from witnesses with personal knowledge of the relevant investments, on the theory that their work and informed observations regarding those investments are irrelevant because they were not adopted or filtered through Platinum's auditors or valuation firms. See Def. Br. at 5-6 (stating that "[n]one of [Platinum's auditors or valuation firms] ever were asked to evaluate Garza's personal opinions concerning his individual methodologies," and, therefore, "[t]hat Garza's opinions on the valuation process, relative reliability of reserve reports, and ultimate value of certain oil and gas properties may have differed from Mr. Nordlicht's is thus not relevant as a matter of law, let alone helpful to the question of whether Mr. Nordlicht's determinations were reasonable"); id. at 6 ("Platinum and Mr. Nordlicht employed their own experts during the period covered by the Indictment to confirm the reasonableness of the valuations of its investments, and Garza was not a part of that process at all."). To do so would remove from the jury's consideration critical and admissible evidence and mislead them as to the facts of this case, in violation of Federal Rule of Evidence 403.

In addition, the defendants' claim that Mr. Garza's fact testimony about certain of PPVA's oil and gas investments would be categorically unhelpful to the jury in this case is absurd. See Def. Br. at 6 ("Garza - a lay witness with no personal knowledge of what Mr. Nordlicht did or not consider (or even how Platinum valued its assets at all) and who played no part in the process Platinum used to confirm Mr. Nordlicht's valuations - can thus offer no opinion on this topic that is helpful to the jury."); id. at 6 n.6 (making conclusory assertion that "Garza's opinions" were "not a part of the valuation process of Level 3 assets engaged in by Platinum"). Where the defendants both sought out and received information about PPVA's investments from Mr. Garza and individuals like him, who had firsthand knowledge of those investments, over the time period in which they valued those positions, the nature and source of such information are critically probative of the defendants' intent and knowledge.[4] The defendants' argument that such information should be removed from the jury's consideration because the sources of the information were not formally engaged by Platinum to value PPVA's investments is wholly without merit and should be rejected.

---

[4] For this reason, the defendants' reflexive invocation of United States v. Litvak, 889 F.3d 56, 64-65 (2d Cir. 2018), which, as the government argued in its letter filed on April 26, 2019, the defendants have misread entirely and, in any event, relates only to materiality, fails to save their meritless argument.

5

2. Even If Mr. Garza's Testimony Could Be Construed As Opinion Testimony, It Should Be Admitted Under Fed. R. Evid. 701

Even if the Court were to conclude that portions of Mr. Garza's testimony qualify as opinion testimony, the Rules of Evidence and pertinent precedent make clear that Mr. Garza's testimony would be admissible as lay opinion testimony under Federal Rule of Evidence 701.

In Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 181-82 (2d Cir. 2004), the Court of Appeals clarified that the specialized knowledge of a given witness does not determine whether that witness's testimony falls within the purview of Rule 702; the relevant test is whether the testimony is based on the witness's personal perceptions. In that case, the witness was a bank employee who had been assigned to investigate the defendants' activities in connection with certain bank transactions. Id. at 181. The witness testified about those activities, but also testified, among other things, that "it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved." Id. at 180. The Court ruled that the "fact that [the witness] had specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from offering opinion testimony pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his experience in international banking." Id. at 181. The Court found that the testimony was admissible "to the extent . . . it was grounded in the investigation he undertook . . . as a Bank of China employee," but to the extent his testimony strayed from his personal experience to include testimony regarding general industry norms and understandings, it fell within the purview of Rule 702. Id.

Here, Mr. Garza's testimony does not come within the purview of Rule 702, because it is based entirely on his personal involvement with the operations of Black Elk and certain transactions that occurred at that company. He will testify to the perceptions he drew and decisions he made on the job as Chief Technical Officer at Black Elk, and may explain how he arrived at those contemporary views and business decisions. Following Bank of China, he is not offering expert testimony. See also United States v. Tomasetta, No. 10-CR-1205 (PAC), 2012 WL 1080293, at *2 & n.9 (S.D.N.Y. March 30, 2012) (ruling that testimony from securities analysts regarding "what research analysts do," "the sources of information used by the analysts," "what the analysts wrote in their reports," and definitions of terms in those reports fell within the territory of fact testimony.).

The cases cited by the defense relating to the specialized knowledge factor are inapposite or easily distinguishable. In United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co., 112 F. Supp. 3d 122, 138 (S.D.N.Y. 2015), the court decided not to preclude testimony otherwise admissible under Rule 702 from several witnesses who had not been disclosed or qualified as experts. Indeed the court there ruled that these fact witnesses, who were all insurance professionals, could testify about their activities in connection with the transactions at issue, including the reasons for changes in insurance rates, the economic consequences of such rates, and anything having to do with advice they provided to one of the parties. Id. The witnesses were prohibited from testifying, however, regarding "actuarial standards of practice," and "whether . . . rate increases did or did not constitute unfair discrimination." Id. Thus, the line drawn by the United States Bank ruling is in accordance with the line the government

6

advocates—Mr. Garza is a fact witness to the extent he is testifying about his activities in connection with the businesses and transactions at issue and not about abstract concepts.

The court's ruling that certain testimony was improperly admitted as lay testimony in United States v. Garcia, 413 F.3d 201, 210-17 (2d Cir. 2005) was based on several factors absent from the instant case, including that the witness, a federal agent, testified as to his opinion of the defendant's culpability, namely offering his conclusion that the defendant was a co-conspirator of a cocaine distributor. Mr. Garza will offer no opinion regarding the culpability of the defendants or their guilt of any of the charged offenses. Second, the challenged testimony in Garcia was also found to be problematic because the witness testified as to not only his personal perceptions but also the "total information developed by all the officials who participated in the investigation." Id. at 212. This sort of collective knowledge issue is not presented here. The witness in Garcia also testified regarding intercepted telephone calls by reference to his knowledge of code used by drug dealers. Id. at 216. Mr. Garza is not testifying about any coded or foreign language.

The defendants also cite Langley v. GEICO Gen. Ins. Co., No. 14-CV-3069 (SMJ), 2016 WL 7494303, at *1 (E.D. Wash. July 22, 2016), yet this decision actually supports the government's argument. In that case, the court ruled that because both parties were aware of the involvement of a heavy equipment appraiser witness and provided with his reports, from the time of the accident at issue, regarding his assessment of loss, there was no issue regarding disclosures and the witness was permitted to testify about the opinions he formed during his investigation. Id. Likewise here, the defense has been aware of Mr. Garza, his involvement in this matter and his opinions, if they can be characterized as such, of Black Elk and Golden Gate's oil reserves since October 2018 at the latest. Thus, as in Langley, there is no issue regarding disclosure and the witness should be allowed to testify. Similarly, the defense cites to Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011), yet in that case the court affirmed the admission of the testimony of a treating physician, holding that expert disclosure requirements under the Rules of Civil Procedure need not be met where the physician's opinions were formed during the course of treatment. Even the cases the defense cites show the distinction between the testimony of individuals involved in the underlying events and their testimony regarding opinions formed during their involvement and experts hired subsequently for the particular purpose of testifying.

Accordingly, Mr. Garza's testimony should be admitted even if the Court were to find portions of it to be opinion testimony under Rule 701.

IV. Conclusion

For the reasons stated above, the defendants' motion should be denied in its entirety.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Alicyn L. Cooley
David C. Pitluck
Lauren H. Elbert
Patrick T. Hein
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (BMC) (by ECF)
    Defense Counsel (by ECF)