

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALC/DCP/LHE/PTH  *271 Cadman Plaza East*
F. #2016R00505  *Brooklyn, New York 11201*

May 27, 2019

BY ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Mark Nordlicht, et al.
            Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in opposition to defendant David Levy's May 25, 2019 motion seeking to preclude the government from offering highly probative evidence related to Levy's instruction to former Platinum Chief Financial Officer ("CFO") Daniel Mandelbaum to lie to a broker regarding a margin call PPVA owed in June 2015 in order to hide Platinum's liquidity crisis from its investors, see ECF Docket No. 713 ("Levy's 5/25/19 Motion"), and in further support of the government's May 25, 2019 motion seeking admission of this evidence, see ECF Docket No. 715 (the "Government's 5/25/19 Motion"). Levy's three primary arguments in support of his motion—that the proffered evidence (1) is irrelevant to the charged schemes, (2) does not establish his knowledge or intent, and (3) is unfairly prejudicial and will confuse the jury, see Levy's 5/25/19 Motion at 2-5—are all meritless. For the reasons discussed herein, as well as the reasons detailed in the Government's 5/25/19 Motion, the government respectfully submits that its motion to admit the proffered evidence should be granted in its entirety and Levy's 5/25/19 Motion should be denied.

    I.      The Proffered Evidence is Relevant to the Charged Schemes

      Levy argues that the proffered evidence is irrelevant to the charged schemes "for the simple reason that the Indictment does not allege that Platinum deceived its prime brokerage firms, nor are the defendants charged with defrauding prime brokerage firms." Levy's 5/25/19 Mot. at 2-3. This argument is baseless. As the government explained in its May 25, 2019 Motion, the proffered evidence is directly relevant to the Fraudulent Investment Scheme because Levy's instruction to Mandelbaum to lie to the broker (Goldman Sachs) in June 2015—and Mandelbaum's execution of that instruction—deceived Platinum's investors by enabling Platinum to continue to hide its liquidity crisis from those investors. Government witness Naftali Manela, who was Chief Operating Officer ("COO") of Platinum in June 2015 while

Mandelbaum was CFO, testified at trial that in 2015 Platinum did not have enough cash to meet the three primary liquidity demands it faced: to pay redemptions, to fund its investments and to pay margin calls.[1] As Manela testified, and as Mandelbaum is also expected to testify, rather than inform investors of its liquidity crisis brought on by its inability to meet these three primary demands for cash, Platinum took deceptive steps to hide its liquidity problems from investors. In other words, acting deceptively with respect to its inability to pay margin calls was directly related to—and in furtherance of—Platinum's deception of its investors.

II. The Proffered Evidence Establishes Levy's Knowledge and Intent to Commit the Fraudulent Investment Scheme Charged in the Indictment

Levy asserts that his instruction to Mandelbaum to drop a zero from the end of the approximately $2 million dollar margin call payment and subsequently lie to Goldman Sachs to conceal this deception "does not speak to his knowledge or intent regarding the charged conduct (i.e., lying to or misleading current or prospective investors), and is thus, *at best*, inadmissible propensity evidence." Levy's 5/25/19 Mot. at 3. This assertion lacks any merit because Levy instructed Mandelbaum to deceive Goldman Sachs so that Platinum could avoid the operational fallout and potential reputational harm of losing a prime brokerage relationship, and thereby continue to deceive investors by avoiding disclosing Platinum's liquidity crisis to them. Accordingly, Levy's instruction to lie to Goldman Sachs clearly shows his knowledge of Platinum's liquidity crisis (i.e., Levy knew that Platinum could not afford to pay the margin call) and his intent to deceive investors by taking fraudulent steps that enabled Platinum to continue to omit material information from investors to whom Platinum owed a fiduciary duty.

Furthermore, as the government discussed in its 5/25/19 Motion, the proffered evidence is critical to prove that Levy—whom defense counsel has tried to depict as a young, inexperienced employee of Platinum—was instead a senior officer at Platinum with extensive knowledge of Platinum's liquidity crisis and with the power and intent to direct others to act deceptively to perpetrate the charged Fraudulent Investment Scheme.

III. The Proffered Evidence is Not Unfairly Prejudicial and It Will Not Confuse the Jury

Levy's final argument that the proffered evidence is unfairly prejudicial "[g]iven that Platinum paid the full amount of this particular margin call the next day" is likewise baseless. Levy's 5/25/19 Mot. at 4-5. As the government has shown and will continue to show at trial, by summer 2015 Platinum's liquidity crisis was so severe that meeting its cash demands—and telling lies to avoid disclosing its catastrophic state to its investors—was essentially a day-to-day ordeal. Indeed, the fact that Levy believed it necessary to lie to

---

[1] See Trial Transcript at 821-22 ("Liquidity was . . . tight [in late 2014 and early 2015]. . . . There wasn't enough cash at the time to do everything that we needed to do. . . . Primarily the three things that Platinum needed money for was, number one, to pay redemptions to investors as they requested them; number two would be to invest in positions in investments -- either new investments or existing investments that were already on the books; and number three would be to pay margin calls which were loans that were taken out against investments.")

Goldman Sachs in order to gain an extra day to meet the margin call demonstrates not only the dire straits in which Platinum found itself but also Platinum's fear that revealing its liquidity crisis to Goldman Sachs and defaulting on its margin call might expose its fraudulent scheme to investors. Accordingly, the circumstances surrounding Levy's instruction to Mandelbaum to lie to Goldman Sachs is not unfairly prejudicial but instead highly probative of Levy's commission of the Fraudulent Investment Scheme.

In addition, contrary to Levy's assertions, the proffered evidence is in several important respects distinguishable from the evidence that the Court excluded relating to the manipulative trading in Black Elk bonds, see ECF No. 704, Order dated May 14, 2019. First, while Manela did not carry out Nordlicht's instruction to him related to the Black Elk bonds, here Mandelbaum actually made the deceptive payment Levy instructed. Second, while Platinum disputed the margin call related to the Black Elk bonds, neither Levy nor anyone at Platinum questioned or disputed the accuracy of Goldman Sachs' margin call. Finally, while the Court has interpreted Nordlicht's email to Manela instructing him to "by accident" pay PPCO's margin call related to the Black Elk bonds with PPVA or PPLO funds to be a "joke," see Trial Transcript at 3034-42, 4095-98, there is no question that Levy's instruction to Mandelbaum was serious and unambiguous: it was a direction to pay Goldman Sachs more than $2 million less than was owed and lie to Goldman Sachs about the purpose of its deception, namely, to conceal its liquidity crisis from Goldman Sachs and Platinum's investors.

For the reasons set forth herein, and in the Government's 5/25/19 Motion, the government respectfully submits that the proffered evidence should be admitted.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Alicyn L. Cooley
David C. Pitluck
Lauren H. Elbert
Patrick T. Hein
Assistant U.S. Attorneys
(718) 254-7000

Cc:    Clerk of the Court (BMC) (by ECF)
       Defense Counsel (by ECF)