UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
    - against –                                            :
                                                           :
MARK NORDLICHT,                                            :   **ORDER**
DAVID LEVY,                                                :
DANIEL SMALL,                                              :   16-cr-00640 (BMC)
JOSEPH MANN,                                               :
JOSEPH SANFILIPPO, and                                     :
JEFFREY SHULSE,                                            :
                                                           :
         Defendants.                                       :
---------------------------------------------------------- X

**COGAN**, District Judge.

This order resolves certain motions as follows.

1. Defendant Levy has moved to preclude testimony from Daniel Mandelbaum about a margin call from Goldman Sachs to Platinum. For the reasons below, this [713] motion is granted.

2. On June 11, 2015, Goldman issued a $2,360,000 margin call to Platinum. According to Mandelbaum, Levy instructed Mandelbaum to "fat finger" (i.e., type in the wrong number for) the payment to leave off a zero and instead pay $236,000, but then pay the full margin call the next day when Platinum had the cash to pay the full amount. In fact, on June 11, Platinum left off a zero when paying the margin call to Goldman, which it paid in the amount of $236,000. The next day, Platinum instructed Goldman Sachs that Platinum paid the wrong amount and paid the remainder of the $2,360,000 margin call.

3. Under Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character" but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evidence of uncharged criminal activity is not subject to Rule 404(b)'s prohibition against "other acts" evidence if the act "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000).

4.  The Government intends to introduce testimony about this margin call as evidence of Levy's intent to conceal Platinum's illiquidity as part of the charged investment scheme. However, the charged investment scheme is centered around allegations that defendants concealed Platinum's illiquidity from investors, not from Goldman Sachs. The connection between deceiving Goldman Sachs and deceiving investors is too attenuated for the testimony at issue to arise out of the same transaction or series of transactions as the charged offenses, to be inextricably intertwined with evidence of the offenses, or to be necessary to complete the story of the alleged crimes. Rather, Mandelbaum's proposed testimony about the margin call constitutes improper propensity evidence under Federal Rule of Evidence 404(b) that invites the jury to infer that, because Levy was willing to lie to Goldman Sachs about Platinum's illiquidity, then he may have been willing to lie to investors about Platinum's illiquidity too.

5.  The Government also seeks to elicit Mandelbaum's testimony to show that Levy was a leader and decision-maker at Platinum. Although the Government is free to put on other evidence of Levy's role as a decision-maker, this particular means of doing so is excluded under Federal Rule of Evidence 403.

6.     If the Court were to allow testimony about the Goldman Sachs margin call, then it would also allow Levy to elicit testimony that there is no documentary evidence to support Mandelbaum's testimony; that Platinum in fact paid the margin call a day later; and that, after Platinum covered the call, it was allowed to and in fact did recall its full margin back from Goldman Sachs. The result would be a sideshow about the margin call that raises the danger of unfair prejudice, wasting time, confusing the issues, and misleading the jury.

7.     Further, during trial on May 14, 2019, Levy moved for a hearing in connection with allegations that the Government attempted to prevent its witness, Joshua Zeitman, from speaking with defense counsel. For the reasons stated below, this motion is denied.

8.     Zeitman testified that, when Inspector Amber Jordan was escorting Zeitman from the courthouse, Jordan instructed him that he "should not talk to the defense because it could be detrimental somehow." Levy's counsel further represented that Zeitman's counsel told Levy's counsel that Zeitman was unwilling to speak with the defense because "he was scared that if he did there would be consequences."

9.     In response, the Government submitted a declaration from Jordan stating that Jordan told Zeitman that "if defense counsel contacted him, it was his choice whether or not to speak with any party, including the government, but that he did not have to speak with anyone." Jordan then asked Zeitman to repeat Jordan's statement, and Zeitman confirmed that it was his choice. Zeitman asked what would happen if he spoke with defense counsel, and Jordan directed Zeitman to speak with his attorney but mentioned that defense counsel would be free to memorialize any conversation they may have. Jordan confirmed that she never instructed Zeitman to not speak with defense counsel, that it would be detrimental to the case if Zeitman

3

spoke with defense counsel, or that there would be repercussions from the Government if he spoke with defense counsel.

10. I have compared Jordan's declaration with Zeitman's testimony and I find Jordan's version of events more credible. She has presented a detailed and plausible explanation of her interaction with Zeitman, and Zeitman's vague testimony to the contrary is not sufficient to warrant further examination of this issue. There is no need to hold a hearing for Jordan to reiterate the content of her declaration. If Zeitman did in fact believe that it would be "detrimental somehow" for him to speak with the defense, there is no reason to believe Zeitman's belief is the responsibility of Jordan or any other member of the prosecution team.

11. Defendants remain free to attack Zeitman's credibility based on his testimony regarding his alleged instructions from Jordan. If defendants intend to do this, however, they shall so notify the Government, and the Government may call Jordan to rebut that testimony.

12. Further, the Court notes that the parties have previously filed two motions that are, to date, unopposed. On May 8, defendant Nordlicht filed a motion to strike a portion of Amir Shaked's testimony, and on May 16, the Government moved to strike Government Exhibits 889 and 890 and the related testimony by witness Naftali Manela. The parties must file their opposition, if any, to these motions within three days of the entry of this order.

**SO ORDERED.**

                                            Brian M. Cogan
                                                      U.S.D.J.

Dated: Brooklyn, New York
       May 28, 2019