ALC/DCP/PTH/LHE
F. #2016R00505

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     -against-                                Docket No. <u>16-CR-640 (BMC)</u>

MARK NORDLICHT,
DAVID LEVY and
JOSEPH SANFILIPPO,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>


                                              RICHARD P. DONOGHUE
                                              UNITED STATES ATTORNEY
                                              Eastern District of New York
                                              271 Cadman Plaza East
                                              Brooklyn, New York 11201


Alicyn L. Cooley
David C. Pitluck
Patrick T. Hein
Lauren H. Elbert
Assistant U.S. Attorneys
   (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

REQUEST NO. 1 General Requests ........................................................................2

REQUEST NO. 2 The Indictment ...........................................................................3

REQUEST NO. 3 Knowingly, Intentionally, Willfully ........................................4

    A.    Knowingly................................................................................. 4

    B.    Intentionally............................................................................. 4

    C.    Willfully .................................................................................... 4

REQUEST NO. 4 Conspiracy Generally .................................................................6

    A.    First Element: Existence of the Agreement .......................... 6

    B.    Second Element: Membership in the Conspiracy ................. 8

REQUEST NO. 5 Count One ..................................................................................10

REQUEST NO. 6 Elements of Count One.............................................................13

REQUEST NO. 7 Elements of Securities Fraud ..................................................18

    A.    First Element — Fraudulent Act ........................................ 19

    B.    Second Element — Knowledge, Intent, and Willfulness...................... 22

    C.    Third Element — Instrumentality of Interstate Commerce ................. 24

REQUEST NO. 8 Elements of Investment Adviser Fraud ..................................26

    A.    First Element — Investment Adviser................................... 27

    B.    Second Element — Fraudulent Act ..................................... 28

    C.    Third Element — Knowledge, Intent, and Willfulness ...................... 30

    D.    Fourth element — Instrumentality of Interstate Commerce ............... 30

REQUEST NO. 9 Count Two ..................................................................................32

REQUEST NO. 10 Elements of Count Two ...........................................................33

REQUEST NO. 11 Elements of Wire Fraud ..........................................................34

    A.    First Element — Scheme to Defraud ................................... 34

    B.    Second Element — Intent to Defraud .................................. 36

    C.    Third Element — Use of Interstate Wires ........................... 37

REQUEST NO. 12 Count Three ..............................................................................39

REQUEST NO. 13 Aiding and Abetting..................................................................41

REQUEST NO. 14 Count Four ................................................................................44

REQUEST NO. 15 Count Five..................................................................................45

REQUEST NO. 16 Count Six ...................................................................................46

i

REQUEST NO. 17 Count Seven ..................................................................................49

REQUEST NO. 18 Count Eight ...................................................................................50

REQUEST NO. 19 Venue ............................................................................................51

REQUEST NO. 20 Transcripts of Tape Recordings ...................................................53

REQUEST NO. 21 Consensual Recordings .................................................................54

REQUEST NO. 22 Wiretaps .....................................................**Error! Bookmark not defined.**

REQUEST NO. 23 Character Evidence (If applicable) ...............................................55

REQUEST NO. 24 Uncharged Persons .......................................................................56

REQUEST NO. 25 Accomplice Testimony .................................................................57

REQUEST NO. 26 Testimony of Defendant (If applicable).......................................60

REQUEST NO. 27 Defendant's Right Not to Testify (If applicable)..........................61

REQUEST NO. 28 Summary Evidence .......................................................................63

CONCLUSION............................................................................................................64

<u>PRELIMINARY STATEMENT</u>

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury.  The government also requests leave to offer additional instructions as may become appropriate during the course of the trial.

1

REQUEST NO. 1
General Requests

The government respectfully requests that the Court charge the jury in its usual

manner on the following subjects:

a.  The function of the Court and the jury;

b.  Equality of the parties before the Court;

c.  Jury communications with lawyers and the Court;

d.  Presumption of innocence;

e.  Burden of proof and reasonable doubt;

f.  Permissible inferences from evidence;

g.  Circumstantial evidence;

h.  Dates approximate and use of conjunctive in the indictment;

i.  Stipulations;

j.  Objections;

k.  Witness credibility;

l.  Expert witnesses;

m.  Particular investigative techniques not required;

n.  Uncalled witnesses equally available;

o.  Questioning wisdom of law or basing verdict on sympathy or prejudice
    prohibited;

p.  Considerations of punishment not the province of the jury; and

q.  Verdict must be unanimous.

2

REQUEST NO. 2
The Indictment

The defendants are formally charged in an indictment.  As I instructed you at the beginning of this case, an indictment is a charge or accusation.  The Indictment in this case contains a total of 8 counts.  You must, as a matter of law, consider each count of the indictment and each defendant's involvement in that count separately, and you must return a separate verdict on each defendant for each count in which he is charged.  In this case, the Indictment groups the counts into two schemes.  Counts One, Two, Three, Four and Five relate to what the government has termed the "Investment Scheme," in connection with which the government alleges the defendants defrauded investors in the Platinum Partners Value Arbitrage Fund, or "PPVA," or in the Platinum Partners Northstar Equity Note, also called "PPNE.".  Counts Six, Seven and Eight relate to what the government has termed the "Black Elk Bond Scheme."  In that scheme, the government alleges that defendants Nordlicht and Levy defrauded holders of bonds issued by Black Elk Energy by deceiving those bondholders in connection with a consent solicitation vote in 2014.

In reaching your verdict, bear in mind that guilt is personal and individual.  Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant.  The case against each defendant, on each count, stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to any defendant on any count should not control your decision as to any other defendant or any other count.  No other considerations are proper.

Authority

Adapted from Modern Federal Jury Instructions ("Sand"), Instr. 3-8.

3

REQUEST NO. 3
Knowingly, Intentionally, Willfully

During these instructions, you will hear me use the terms "knowingly," "intentionally," and "willfully."  Therefore, I will define these terms for you.

A.   Knowingly

To act "knowingly" means to act intentionally and voluntarily, and not because of ignorance, mistake, accident, negligence, or carelessness.  Whether a defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

B.   Intentionally

A person acts "intentionally" when he acts deliberately and purposefully.  That is, the defendant's acts must have been the product of his conscious objective decision rather than the product of a mistake or accident.

C.   Willfully

To act "willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.  The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.

Whether a person acted knowingly, intentionally, or willfully is a question of fact for you to determine, like any other fact question.  Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  The ultimate facts of knowledge and

4

criminal intent, though subjective, may be established by circumstantial evidence, based

upon a person's outward manifestations, his words, his conduct, his acts and all the

surrounding circumstances disclosed by the evidence and the rational or logical inferences

that may be drawn therefrom.   In either case, the essential elements of the crime charged

must be established beyond a reasonable doubt.

<u>Authority</u>

   Adapted from the Charges of the Hon. Brian M. Cogan in <u>United States v.</u>
<u>Petrossi</u>, No. 16-CR-234 (E.D.N.Y. 2017) (hereinafter the "<u>Petrossi</u> Jury Charge"), Trial Tr.
1118-1119; Sand, Instr. 3A-3.

<u>REQUEST NO. 4</u>
<u>Conspiracy Generally</u>

Counts One and Two of the Indictment, relating to the Investment Scheme, and Counts Six and Seven of the Indictment, relating to the Black Elk Bond Scheme, each charge certain defendants with participating in a "conspiracy."  A conspiracy is a kind of criminal partnership — an agreement of two or more persons to join together to accomplish some unlawful purpose.  The essence of the crime of conspiracy is an agreement or understanding to violate another law.  A conspiracy is punishable as a crime even if it fails to achieve its purpose.

The crime of conspiracy is an independent crime, an entirely separate and different offense from the underlying crime that a defendant is alleged to have agreed to commit.  Before you may convict a defendant of conspiracy, the following two essential elements must be established beyond a reasonable doubt:

<u>First</u>, that two or more persons entered into an agreement to commit a crime;

<u>Second</u>, that the defendant knowingly and intentionally became a member of the conspiracy.

A.   <u>First Element: Existence of the Agreement</u>

To establish that a conspiracy existed, the government is not required to prove that the coconspirators entered into a solemn formal contract orally or in writing stating that they have formed a conspiracy to violate the law.  The government need only prove beyond a reasonable doubt that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object.

6

You can find that the existence of an agreement between two or more persons to commit a crime has been established by direct evidence. But since a conspiracy is by its very nature characterized by secrecy, direct proof may not be available; therefore, you may infer the existence of a conspiracy from the circumstances of the case and the conduct of the parties involved. In other words, in the context of conspiracy cases, actions may speak louder than words.

In determining whether or not the government has proven beyond a reasonable doubt that the charged conspiracy existed, you may consider all the actions and statements of all those who you find to be participants. Ask yourselves whether they were knowingly and willfully acting together for the accomplishment of the charged criminal purpose. If they were, this first element is satisfied. If, however, they were acting together for some purpose unrelated to the underlying crime, even a separate criminal purpose, the government would not have satisfied the first element.

It is not necessary for the government to prove that the ultimate objectives of the conspiracy were successfully accomplished. It is enough if the government has proved that two or more persons, in any way, expressly or impliedly came to a common understanding to violate the law. This means that you may find a defendant guilty of conspiracy even if you find that the objects of the conspiracy were never actually committed.

If upon all the evidence, direct and circumstantial, you are satisfied beyond a reasonable doubt that the minds of at least two of the alleged conspirators met, and that they agreed to work together to accomplish the object of the conspiracy alleged in that charge in the Indictment, then the first element, the existence of the conspiracy, has been established. If, however, you find that the government has not proven beyond a reasonable doubt that the

7

conspiracy alleged in that charge in the Indictment did exist, then you have to find the defendants not guilty of that charge.

      B.    <u>Second Element: Membership in the Conspiracy</u>

        The second element that the government has to prove beyond a reasonable doubt is that a defendant knowingly and willfully became a member of the charged conspiracy. The defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

        The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives. On the other hand, a person who has no knowledge of the conspiracy but happens to act in a way which furthers some objective or purpose of the conspiracy does not thereby become a conspirator.

        Mere association by a defendant with a conspirator does not make the defendant a member of the conspiracy, even if he knows of the conspiracy. In other words, knowledge it not enough; the defendant himself must willfully participate in the conspiracy with the purpose of helping to achieve at least one of its unlawful objects.

        The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his

8

participation.  Indeed, each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

You will see, as I continue with these instructions, that some kinds of conspiracy charges require proof of an additional element, while others do not.  But all of them have at least these two elements that I have just explained to you in common; that is the existence of a conspiracy and the defendant's knowing and willful participation in it.

<u>Authority</u>

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1119-1123; and Sand, Instr. 19-6.

9

<u>REQUEST NO. 5</u>
<u>Count One</u>

Let me now turn to the specific counts in the Indictment.  I will first address

Count One.  Count One of the Indictment charges defendants MARK NORDLICHT,

DAVID LEVY, and JOSEPH SANFILIPPO with conspiracy to commit securities fraud and

investment adviser fraud in connection with the Investment Scheme.  Specifically, Count

One states, in pertinent part:

> In or about and between November 2012 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT, DAVID LEVY, and JOSEPH SANFILIPPO,
> together with others, did knowingly and willfully conspire:
>
> a.     to use and employ manipulative and deceptive
> devices and contrivances, contrary to Rule 10b-5 of the
> Rules and Regulations of the United States Securities and
> Exchange Commission, Title 17, Code of Federal
> Regulations, Section 240.10b-5, by:  (i) employing
> devices, schemes and artifices to defraud; (ii) making
> untrue statements of material fact and omitting to state
> material facts necessary in order to make the statements
> made, in light of the circumstances under which they were
> made, not misleading; and (iii) engaging in acts, practices
> and courses of business which would and did operate as a
> fraud and deceit upon investors and prospective investors
> in PPVA, PPCO and PPNE, in connection with the
> purchase and sale of investments in PPVA, PPCO and
> PPNE, directly and indirectly, by use of means and
> instrumentalities of interstate commerce and the mails,
> contrary to Title 15, United States Code, Sections 78j(b)
> and 78ff; and
>
> b.     to use the mails and other means and
> instrumentalities of interstate commerce, directly and
> indirectly: (i) to employ devices, schemes and artifices to
> defraud Platinum Management's clients and prospective
> clients; (ii) to engage in transactions, practices and courses
> of business which operated as a fraud and deceit upon

10

>Platinum Management's clients and prospective clients; and (iii) to engage in acts, practices and courses of business which were fraudulent, deceptive and manipulative, contrary to Title 15, United States Code, Sections 80b-6 and 80b-17.

The relevant statutes on this subject are 18 U.S.C. § 371, which provides, in pertinent part:

>If two or more persons conspire . . . to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished].

15 U.S.C. § 78j(b), which provides in relevant part that:

>It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange —

>To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission [the SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

And 15 U.S.C. § 80b-6, which provides in relevant part that:

>It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly —

>(1)    to employ any device, scheme, or artifice to defraud any client or prospective client;

>(2)    to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; or

(3)     to engage in any act, practice, or course of
        business which is fraudulent, deceptive, or
        manipulative.

### Authority

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1123-1124.

12

REQUEST NO. 6
Elements of Count One

In order to prove that a defendant committed the crime charged in Count One, the government must prove each of the following elements beyond a reasonable doubt:

First, that a conspiracy existed to commit securities fraud and investment adviser fraud as charged in this Count One.

Second, that the defendant in question knowingly and willfully became a member of the conspiracy.  Those are the first two elements of all conspiracies that I just explained to you.

And Third, that an overt act occurred in furtherance of the conspiracy; that is, someone within the conspiracy took some action that advanced the goals of the conspiracy.

As to the first and second elements, I just told you what it means to conspire. Those instructions apply to this count.

The third element is that an overt act occurred in furtherance of the conspiracy; that is, someone within the conspiracy took some action that advanced the goals of the conspiracy.

The indictment alleges the following overt acts:

First, on or about February 3, 2014, NORDLICHT sent an email to SANFILIPPO that stated: "It does not look like we will be bringing in ggo into black elk. Black elk[']s value as of yr end was based on the expectation we [would] be exercising the option on golden gate.  Given our current thinking, please correct the yr end values and add 125 to golden gate and deduct 125 from black elk."

13

Second, on or about March 17, 2014, NORDLICHT sent an email to co-conspirator Daniel Small concerning PPVA's and PPCO's 2012 profit and loss margins that stated, in part: "This is also the week I need to figure out how to restructure and raise money to pay back 110 million of preferred which if unsuccessful, wd be the end of the fund.  This 'liquidity' crunch was caused by our mismanagement – yours David and I – of the black elk position so I will multitask and also address your concerns but forgive me if I am a little distracted."

Third, on or about March 28, 2014, co-conspirator Joe Mann sent an email to Amir Shaked attaching summaries regarding Black Elk and Golden Gate and PPVA's marketing report, that stated, in part: "Thank you for your call today. I just spoke to our CFO (Joseph SanFilippo) and our CRO []; they started working on the Marketing Report for 2/28/2014 and have completed the first page, which I have attached."

Fourth, on or about June 16, 2014, NORDLICHT sent an email to co-conspirator Uri Landesman that stated, in part: "I think we need to revamp the strategy on PPVA and figure out what to do.  It can't go on like this or practically, we will need to wind down.  I think we can overcome but this is code red, we can't go on with status quo.  We need to be very aggressive if we want to stay open.  We can't pay out 25 million in [redemptions] per quarter and have 5 [million] come in."

Fifth, on or about June 27, 2014, NORDLICHT sent an email to John Hoffman, copying LEVY, Small and co-conspirator Jeffrey Shulse, that stated, in part: "Unfortunately, at this moment, the equity in black elk is not worth that much because of debt overhang and payables overhang."

14

Sixth, on or about September 8, 2014, Landesman sent an email to co-conspirator Michael Kimelman and Joseph Ritterman, a Platinum employee, that stated: "Please have on file for me a redemption request of $6 mil. in PPVA, and the entirety of my positions in PPLO and PPCO."

Seventh, on or about November 25, 2014, Mann sent an email to Small and Andrew Kaplan concerning Amir Shaked that stated, in part: "I sorted out the discrepancy with Amir regarding Black Elk's Valuation, but Amir still wants to know more about Black Elk after reading the 10-Q and seeing that their website hasn't been updated in a while."

Eighth, on or about December 8, 2014, Mann sent an email to Amir Shaked that stated, in part: "I have received the value of Black Elk in PPVA and it is $84,101,065.34 as of 9/30. . . I will try to get [the marketing report and the transparency & exposure report] to you as soon as my CFO has it."

Ninth, on or about January 30, 2015, NORDLICHT sent an email to Kimelman, who had provided NORDLICHT with a list of pending redemptions from investors, that stated, in part: "I [would] like to start getting set amounts out.  Pay [four investors].  Those are the ones that are not insiders."

Tenth, on or about May 7, 2015, Landesman sent an email to Esgher van Oosterbosch that stated, in part: "we had every intent of sending you a wire last week, two large payments we were expecting from significant borrowers are late, applying maximum pressure, should be resolved by next week, we are truly sorry for the delay."

To satisfy this third overt act element, the government has to prove beyond a reasonable doubt that at least one of the conspirators, not necessarily a defendant, committed at least one overt act alleged in the indictment for the purpose of furthering some objective of

the conspiracy.  For the government to satisfy this element, it is not required to prove all of the overt acts that I just read to you, or that any particular overt act was committed at precisely the time alleged in the indictment, nor do you all have to agree on the same overt act.  It is sufficient if each one of you is convinced beyond a reasonable doubt that at least one overt act occurred, that it occurred at about the time and place stated, and that the overt act was committed for the purpose of carrying out the unlawful agreement.

In other words, for Count One, there has to be something more than an agreement; some overt step or action must have been taken by one of the conspirators in furtherance of the conspiracy.

The overt act element, to put it another way, is a requirement that the agreement went beyond the mere talking and agreement stage.  Bear in mind, however, that the overt act standing alone may be an innocent lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme; therefore, you are instructed that the overt act does not have to be an act which in and of itself is criminal or constitutes an objective of the conspiracy.

Similarly, it is not necessary for the government to prove that each member of the conspiracy committed or participated in the overt act.  It is sufficient if you find that at least one overt act was, in fact, performed by at least one conspirator, whether a defendant or another coconspirator, to further the conspiracy within the time frame of the conspiracy.

Authority

Adapted from the Petrossi Jury Charge, Trial Tr. 1124-1127; and Sand, Instrs. 19-3, 19-8.

16

REQUEST NO. 7
Dual-Object Conspiracy

Count One charges a conspiracy with two objects: (1) to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and (2) to commit investment adviser fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

The government does not need to prove both objects of the conspiracy for you to find that the government has proven any of the defendants guilty of Count One.  The government need only prove one object beyond a reasonable doubt so long as you are unanimous as to which object has been proved.

Authority

Adapted from Petrossi, Tr. at 1144:3-15.

17

REQUEST NO. 8
Elements of Securities Fraud

In order for you to determine whether the government has proven the charge of conspiracy in Count One, I need to explain the substantive crimes of securities and investment adviser fraud.

The charge is for conspiracy, but the claim is that the conspirators were seeking to commit the substantive crimes of securities fraud and investment adviser fraud. So for you to determine whether a conspiracy has been proven, I now need to tell you what securities fraud is and what investment adviser fraud is.

Remember that as to this count, the issue is not whether a defendant actually committed securities fraud or investment adviser fraud. Rather the issue is whether he entered into a conspiracy to commit securities fraud and investment adviser fraud.

The elements of the substantive crime of securities fraud are as follows:

First, that in connection with the purchase or sale of a security, the defendant did any one or more of three unlawful acts. I am going to call these going forward the "three unlawful acts." They are as follows:

(1)    employed a device, scheme or artifice to defraud, or

(2)    made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3)    engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

Second, that the defendant acted willfully, knowingly, and with the intent to defraud.

18

And third, that the defendant knowingly used or caused to be used any means or instruments of transportation or communication in interstate commerce, or the use of the mails in furtherance of the fraudulent conduct.

Let me go over those one at a time.

A.     First Element — Fraudulent Act

As I just explained to you, the first element is that in connection with the purchase or sale of a security, the defendant did any one or more of the three unlawful acts, or in the case of a conspiracy, agreed that the conspiracy would commit one or more of the three unlawful acts.  The government does not need to prove all three of the unlawful acts, any one will be sufficient to satisfy this element.  But here, you have to be unanimous as to which unlawful act the government has proven beyond a reasonable doubt.  You all have to agree on the same unlawful act, and if you cannot, then the defendant is not guilty.

A device, scheme or artifice to defraud is merely a plan for the accomplishment of any objective.  Fraud is a general term which encompasses all efforts and means that individuals devise to take advantage of others.

The law at issue here prohibits all kinds of manipulative and deceptive acts. The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in this case.

You need not find that the defendant conspired to actually participate in any securities transaction if the defendant conspired to engage in fraudulent conduct that was in connection with a purchase or a sale.  The in-connection-with aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  I instruct you that, as a matter of law, limited

19

partnership interests in a hedge fund and publicly traded bonds are both types of securities. Fraudulent conduct may be in connection with the purchase or sale of securities if you find that the fraudulent conduct touched upon a securities transaction. Fraudulent conduct is also in connection with the purchase or sale of securities if the conduct occurs after the purchase of securities and lulls an investor into a false sense of security, thereby causing the investor to postpone his or her ultimate complaint to the authorities.

It is not necessary for you to find that the defendant was the actual seller or offeror of the securities, but you must find that the defendant participated in the scheme of fraudulent conduct that involved the purchase or sale of securities.

With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made. And in the case of alleged omissions, whether the omission was misleading. A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was made with the intention to deceive.

False or fraudulent statements under the statute may include the concealment or omission of material facts in a manner that makes what is said or represented deliberately misleading. For a statement to be false because it omits material information, there must be a duty to disclose such information. This duty may arise because a defendant has made partial or ambiguous statements that require further disclosure in order to avoid being misleading. This duty may also arise if the defendant bears a duty to disclose information by virtue of his relationship with an investor. Here, the government has alleged that Platinum Partners was an investment adviser. An investment adviser has an affirmative duty of utmost good faith,

20

and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading its clients.  I instruct you that a fiduciary owes a duty to its investors disclose all material facts concerning a transaction entrusted to it.

If you find that the government has established that a statement was false or omitted, you must next determine whether the fact misstated or omitted was material under the circumstances.

A material fact is one that would have been significant to a reasonable investor's investment decision.  In order for you to find that a misrepresentation was material, the government must prove beyond a reasonable doubt that there was a substantial likelihood that the misstated fact would have been viewed by a reasonable investor as having significantly altered the total mix of information available.  To significantly alter the total mix of information available, means to meaningfully affect a reasonable investor's investment decisions.  However, to be material, a misstatement need not determine any particular outcome.

Moreover, just because investors are required to sign a document stating that they will not rely on information outside of a defined set of documents, that does not render statements made outside that set of documents necessarily immaterial.  You, the jury, must consider whether the misrepresentation or omission altered the total mix of information made available to investors.

The government need not prove that the misrepresentation would have deceived a person of ordinary intelligence.  Once you find that there was material misrepresentation or omission of material facts, it does not matter whether the intended

victims were gullible buyers or sophisticated investors because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was successful or not, or that the defendant profited or received any benefit as a result of the alleged scheme. Success is not an element of the crime charged.  However, if you find that the defendant did profit from the alleged scheme, you may consider that in relation to the second element of intent, which is what I am going to cover next.

B.      Second Element — Knowledge, Intent, and Willfulness

The second element of securities fraud is that a defendant acted knowingly, willfully, and with intent to defraud.  Where, as in this case, a defendant is charged with conspiracy to commit securities fraud, the government must prove that the defendant conspired knowingly, willfully, and with intent to defraud.

I have already defined "knowingly" and "willfully" for you, and I refer you to those earlier definitions.

For the purposes of securities fraud and conspiracy to commit securities fraud, "intent to defraud" means to act knowingly and with intent to deceive.

The question of whether a person acted knowingly, willfully, and with the intent to defraud is a question of fact for you to determine like any other fact question.  This question involves a person's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available to demonstrate someone's state of mind.  It would be a rare case where it could be shown that a person wrote or stated that at a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  The ultimate fact of knowledge and criminal intent,

22

though subjective, may be established by circumstantial evidence based on a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and rational or logical inferences that may be drawn from that.  Circumstantial evidence, if believed, is of no less value than direct evidence.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of securities fraud.  The defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

That said, a belief by the defendant that ultimately everything would work out so that no one would lose any money does not require that you find he acted in good faith. No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him to obtain money.

The government may prove that the defendant acted knowingly in either of two ways.  First, it is sufficient, of course, if the evidence satisfies you beyond a reasonable doubt that the defendant was actually aware the statements he made, caused to be made, or conspired to be made, were false or misleading.  Alternatively, the defendant's knowledge may be established by proof that the defendant was aware of a high probability that the statement was false, unless, despite this high probability, the facts show that the defendant actually believed the statement to be true.

Knowledge may be found from circumstances that would convince an average, ordinary person.  Thus, you may find that the defendant knew that the statement was false if

you conclude beyond a reasonable doubt that he made it with deliberate disregard of whether it was true or false and with a conscious purpose to avoid learning the truth.  If you find that the defendant acted with deliberate disregard for the truth, the knowledge requirement would be satisfied unless the defendant actually believed the statement to be true.  This guilty knowledge, however, cannot be established by demonstrating merely negligence or foolishness on the part of the defendant.

      C.     <u>Third Element — Instrumentality of Interstate Commerce</u>

      The third and final element is that the defendant knowingly used or caused to be used — or for conspiracy counts, conspired to use — the mails or any means or instrumentality of transportation or communication in interstate commerce, including telephones or email, in furtherance of a scheme to defraud.

      It is not necessary that a defendant be directly or personally involved in any mailing, emailing, telephone calls or telephone messages.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew or reasonably could have foreseen would naturally and probably result in the use of the mails or the internet or telephone lines, then you may find that he caused the mails or these other instrumentalities of interstate commerce to be used.  When one does an act with the knowledge that the use of interstate means or communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then he causes such means to be used.

      It is not necessary that the items sent through the mails or over the internet or communicated by telephone contain the fraudulent material or anything criminal or objectionable.  The matter mailed or communicated by telephone may be entirely innocent.

24

The use of telephones, the internet or the mail need not be central to the execution of the scheme and may even be incidental to it.  All that is required is that the use of the telephones, the internet or the mail bears some relation to the object of the scheme or fraudulent conduct.  In fact, the actual offer or sale need not be accomplished or accompanied by the use of telephone or internet or the mail so long as the defendant is still engaged in actions that are part of a fraudulent scheme.

I remind you that Count One does not allege that a securities fraud was actually committed, and the government does not need to prove that a securities fraud was committed or attempted for you to find a defendant guilty of this count.  Rather, Count One charges the defendants with conspiring to commit securities fraud.

Authority

Adapted from the Petrossi Jury Charge, Trial Tr. 1128-1136; Sand, Instrs. 57-21, 57-24; Charge of the Honorable Kiyo A. Matsumoto, United States v. Martin Shkreli, 15-CR-637; United States v. Weaver, 860 F.3d 90, 95-96 (2d Cir. 2018); United States v. Rutigliano, 790 F.3d 389, 397 (2d Cir. 2015); United States v. Lane, 474 U.S. 438, 452-53 (1986).

<u>REQUEST NO. 9</u>
Elements of Investment Adviser Fraud

Count One also alleges that an object of the conspiracy was to commit

investment adviser fraud.

The Investment Advisers Act was enacted with the fundamental purpose of

imposing a broad proscription against any practice which operates as a fraud or deceit upon

any client or prospective client of an investment adviser.  The Investment Advisers Act of

1940 thus reflects a Congressional recognition of the delicate fiduciary nature of an

investment advisory relationship, as well as a Congressional intent to create various

enforcement mechanisms to eliminate, or at least to expose, all conflicts of interest that might

incline an investment adviser to render advice which was not disinterested.

A "fiduciary" is a special type of agency in which a special trust or confidence

is reposed in the agent, who is duty bound to act in the utmost good faith and candor and

good conscience with due regard for the interests of the person reposing the confidence.

Examples of a fiduciary include (but are not limited to) an executor or administrator of an

estate; an attorney with respect to the affairs of his client; a guardian of an infant or

incompetent person with respect to his ward; and the officers and directors of a corporation

with respect to the stockholders of the corporation.  I instruct you as a matter of law that

investment advisers are fiduciaries to their investment advisory clients.

Thus, an investment adviser has an affirmative duty of utmost good faith, and

full and fair disclosure of all material facts, as well as an affirmative obligation to employ

reasonable care to avoid misleading his clients.  I instruct you that a fiduciary owes a duty to

disclose all material facts concerning the transaction entrusted to it.

26

The knowing and intentional concealment by a fiduciary of material information which he or she is under a duty to disclose to another, under circumstances where the nondisclosure can or does result in harm to the other, can be a fraud, if the government has proven beyond a reasonable doubt the other elements of the offense.

I will now explain the elements of the investment adviser fraud charge.  They are as follows:

First, that the offense was committed — or, in a conspiracy, was conspired to be committed — by an investment adviser;

Second, the investment adviser did — or, in a conspiracy, agreed to do — one of the following: (a) employ a device, scheme, or artifice to defraud an actual or prospective investment advisory client; (b) engage in a transaction, practice or course of business which operated as a fraud and deceit upon those investment advisory clients or prospective investment advisory clients; or (c) engage in an act, practice, and course of business that was fraudulent, deceptive, and manipulative;

Third, the defendant devised or participated in such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice, or course of business, knowingly, willfully, and with the intent to defraud an investment advisory client; and

Fourth, such alleged device, scheme, or artifice to defraud, or such alleged transaction, practice, or course of business, was engaged in or employed by use of the mails or an instrumentality of interstate commerce.

A.    First Element — Investment Adviser

The first element the government must prove beyond a reasonable doubt is that the offense was committed by an investment adviser.

27

The Act defines an investment adviser as follows: "Investment adviser means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities, but does not include . . . any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor."

Thus, to determine whether a person or entity is an investment adviser under the Act, you must primarily consider three factors:

First, whether the person or entity provided advice or was an adviser that issued reports or analyses regarding securities;

Second, whether the person or entity was in the business of providing such advice; and

Third, whether the person or entity was provided compensation for such advice.

As I mentioned, an investment adviser has a fiduciary duty to his or her clients.

B.    Second Element — Fraudulent Act

The second element is that the investment adviser did — or, in a conspiracy, agreed to do — any one or more of the following: (a) employ a device, scheme, or artifice to defraud an actual or prospective investor-client; (b) engage in a transaction, practice, or course of business which operated as a fraud and deceit upon those investors or prospective

28

investors; or (c) engage in an act, practice, and course of business that was fraudulent, deceptive and manipulative.

Any one of these types of alleged fraudulent conduct, if proven by the government beyond a reasonable doubt, is sufficient. However, as with securities fraud, you must be in unanimous agreement as to which type of unlawful conduct, if any, has been proven by the government.

Now let me explain some of these terms.

As with securities fraud, a device, scheme or artifice is merely a plan for the accomplishment of any objective. Fraud is a general term that embraces all efforts and means that individuals devise to take advantage of others. It includes all kinds of manipulative and deceptive acts. The fraud or deceit need not relate to the investment value of the securities involved in this case. It is not necessary that the defendant made a profit or that anyone actually suffered a loss for you to find that the government has proven this element beyond a reasonable doubt.

The fraudulent representation must relate to a material fact or matter. I previously told you what a material fact is with regard to securities fraud, and that same standard applies here.

The failure to disclose information may constitute a fraud if the investment adviser was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed or conspired to fail to make such disclosure with the specific intent to defraud.

The government has alleged various methods of conduct by which the charged defendants conspired to carry out a scheme to defraud Platinum Management's investment

advisory clients, engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investors, or engaged in an act, practice, and course of business that was fraudulent, deceptive, and manipulative.

Specifically, the government alleges that the defendants conspired to commit investment adviser fraud by defrauding investors in PPVA about the performance and value of the fund's assets, the fund's liquidity, and its practice of preferentially paying certain investor redemptions before others.

Any one of these particular methods of alleged fraudulent conduct standing alone is sufficient for you to return a verdict of guilty on this count if you find the other elements are met. However, you must be in unanimous agreement as to which type of fraudulent conduct, if any, has been proven by the government.

C.     Third Element — Knowledge, Intent, and Willfulness

The third element is that the defendant devised or participated in such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice, or course of business, knowingly, willfully, and with the intent to defraud an investment advisory client.

The terms "knowingly," "willfully," and "with intent to defraud" have the same meaning here as they have for securities fraud.

D.     Fourth Element — Instrumentality of Interstate Commerce

The fourth and final element is that the defendant knowingly caused to be used the mails or an instrumentality of interstate commerce, such as interstate telephone, facsimile, or wire communications in furtherance of the alleged scheme to defraud, or the allegedly fraudulent conduct specified in the Indictment.

30

This element is the same as the element I previous explained for securities fraud.

I remind you that Count One does not allege that an investor adviser fraud was actually committed, and the government does not need to prove that an investment adviser fraud was committed or attempted for you to find a defendant guilty of this count.  Rather, Count One charges the defendants with conspiring to commit investment adviser fraud.

<u>Authority</u>

Adapted from the Charges of the Hon. Ronnie Abrams in <u>United States v. Tagliaferri</u>, No. 13-CR-115 (S.D.N.Y. 2014), Trial Tr. 2750-2760, *aff'd*, 820 F.3d 568 (2d Cir. 2016).

31

<u>REQUEST NO. 10</u>
Count Two

The next count is Count Two.  Count Two of the Indictment charges

defendants NORDLICHT, LEVY, and SANFILIPPO with conspiracy to commit wire fraud

in connection with the Investment Scheme.  Specifically, Count Two states, in pertinent part:

> In or about and between November 2012 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT, DAVID LEVY, and JOSEPH SANFILIPPO,
> together with others, did knowingly and intentionally conspire
> to devise a scheme and artifice to defraud investors and
> prospective investors in PPVA, PPCO and PPNE, and to obtain
> money and property from them by means of materially false and
> fraudulent pretenses, representations and promises, and for the
> purpose of executing such scheme and artifice, to transmit and
> cause to be transmitted by means of wire communication in
> interstate and foreign commerce writings, signs, signals,
> pictures and sounds, contrary to Title 18, United States Code,
> Section 1343.

The relevant statute on this subject is 18 U.S.C. § 1349, which provides, in

pertinent part that any person who attempts or conspires to commit wire fraud shall have

committed a crime.

<u>Authority</u>

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1136.

32

REQUEST NO. 11
Elements of Count Two

In order to prove that a defendant committed the crime charged in Count Two, the government has to prove each of the following elements beyond a reasonable doubt:

First, that a conspiracy to commit wire fraud existed;

And second, that the defendant knowingly and intentionally became a member of the conspiracy.

Again, these are the first and second elements of any conspiracy, which I already explained to you previously.  Those same instructions will apply to this Count Two.

Now you'll recall that the conspiracy in Count One, in addition to these two elements, also requires an overt act in furtherance of the conspiracy.  A conspiracy to commit wire fraud in contrast does not require such an overt act.

You should not speculate as to why the law is different for this Count and it should not affect your deliberations.

Authority

Adapted from the Petrossi Jury Charge, Trial Tr. 1137.

33

REQUEST NO. 12
Elements of Wire Fraud

As I did with securities fraud and investment adviser fraud, I need to explain the crime of wire fraud for you to determine whether the government has proven this charge of wire fraud conspiracy.  The elements of wire fraud are as follows:

First, there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises.

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud.

And third, that in execution or in furtherance of that scheme the defendant conspired to use or caused to be used interstate or foreign wires.

Let me go over each one of those three items.

A.   First Element — Scheme to Defraud

The first element is the existence of a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises.

A scheme or artifice is a plan for the accomplishment of an objective.  Fraud is a general term which embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representation, suggestions or deliberate disregard for the truth.

A scheme to defraud is any pattern or course of conduct designed to obtain money or property by means of trick, deceit, deception or by false or fraudulent representations or promises.

34

A representation or statement is fraudulent if it was falsely made with the intent to deceive. Half truths, the concealment or omission of material facts or the expression of an opinion not honestly entertained; that is, not honestly believed by the person expressing the opinion, may also constitute false or fraudulent statements under the statute.

The deception does not have to be premised upon spoken or written words alone. The arrangement of the words or the circumstances into which they are used may convey a false and deceptive appearance. If there is intentional deception, the manner in which it is accomplished does not really matter.

In addition to proving that a statement was false or fraudulent, and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

The failure to disclose information may constitute a fraud if the speaker was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant conspired to fail to make such disclosure with the specific intent to defraud.

The fraudulent representation must relate to a material fact or matter. I previously told you what a material fact is with regard to Count One, and that same standard applies here.

It is not necessary that a defendant or his alleged co-conspirators actually realized any gain from a scheme, or that the intended victim actually suffered any loss. Only a scheme to defraud and not actual fraud must be proved to sustain a conviction.

It is also not necessary for the government to prove each and every misrepresentation or false promise that the government alleges in the indictment. It is

35

sufficient that the government proves beyond a reasonable doubt that one or more of the material misrepresentation was made in furtherance of the scheme to defraud.

You must, however, all agree on at least one misrepresentation that is proved to be false.  You cannot have some of you thinking one statement was false and others of you thinking that a different statement was false.  All of you have to agree on at least one of the same misrepresentations.

Again, you cannot find a defendant guilty if only some of you think that misrepresentation "A" is false while others think that only misrepresentation "B" is false. There must be at least one specific pretense, representation, or promise about a material fact that all of you find to be false in order to find the defendant guilty.

A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case.

B.   <u>Second Element — Intent to Defraud</u>

The second element is that the defendant executed a scheme knowingly, willfully, and with specific intent to defraud a victim.  I have already told you what it means to act knowingly, willfully and with an intent to defraud as part of Count One.  Those same definitions apply here.

In sum, the government has to establish that the defendant knew that his conduct as a participant in the scheme was calculated to deceive, and nevertheless, he associated himself with the alleged fraudulent scheme for the purpose of causing some financial loss to somebody or depriving somebody of their interest in property.  If the defendant was not a knowing participant in the scheme, or if he lacked the specific intent to defraud, then he is not guilty of conspiracy to commit wire fraud.

36

C.      Third Element — Use of Interstate Wires

The third and final element is the use of an interstate wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states, or it must pass between the United States and a foreign country.  That just means, for example, if one person in New York is talking to another person in New York, that is not enough.  You have to go over state lines or over national lines.

A wire communication includes a wire transfer of funds between banks in different states, and telephone calls, emails, and facsimiles between two different states.  The use of the wires need not itself be a fraudulent misrepresentation.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for a defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others.  This does not mean that the defendant must specifically have authorized others to make the call, wire the money or send the email.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires reasonably can be foreseen, even though not actually intended, then the defendant causes the wires to be used.

37

Again, I remind you that Count Two does not allege that wire fraud was actually committed, and the government does not need to prove that wire fraud was committed or attempted for you to find a defendant guilty of this count.  Rather, Count Two charges the defendants with conspiracy to commit wire fraud.

<u>Authority</u>

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1137-1142; and Sand, Instr. 44-4, 44-7.

REQUEST NO. 13
Count Three

Count Three of the Indictment charges defendants NORDLICHT, LEVY, and

SANFILIPPO with securities fraud in connection with the Investment Scheme.  Specifically,

Count Three states, in pertinent part:

> In or about and between November 2012 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT, DAVID LEVY, and JOSEPH SANFILIPPO,
> together with others, did knowingly and willfully use and employ
> one or more manipulative and deceptive devices and
> contrivances, contrary to Rule 10b-5 of the Rules and Regulations
> of the United States Securities and Exchange Commission, Title
> 17, Code of Federal Regulations, Section 240.10b-5, by: (a)
> employing one or more devices, schemes and artifices to defraud;
> (b) making one or more untrue statements of material fact and
> omitting to state one or more material facts necessary in order to
> make the statements made, in light of the circumstances in which
> they were made, not misleading; and (c) engaging in one or more
> acts, practices and courses of business which would and did
> operate as a fraud and deceit upon one or more investors and
> prospective investors in PPVA, in connection with the purchase
> and sale of investments in PPVA, directly and indirectly, by use
> of means and instrumentalities of interstate commerce and the
> mails.

To sustain its burden of proving a defendant guilty of Count Three, the

government has to prove beyond a reasonable doubt each of the three elements of securities

fraud that I previously explained to you when I was talking about Count One, conspiracy to

commit securities fraud and investment adviser fraud.  You will recall I defined the elements

of conspiracy in that count, and that I also told you that the underlying substance of securities

fraud had its own elements.  You use those securities fraud elements here for this Count

Three.

39

The difference here, however, is that the government must prove that the defendant actually knowingly and willfully committed — or aided and abetted — the offense with intent to defraud, as opposed to merely knowingly and willfully conspiring to commit the offense with intent to defraud.

<u>Authority</u>

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1150-1151.

REQUEST NO. 14
Aiding and Abetting

As I just mentioned, Count Three requires you to find that a defendant either personally committed securities fraud or that he aided and abetted others in committing securities fraud.

It is acceptable for the government to charge this crime under both alternatives; that is, that the defendant committed the securities fraud himself, or that he aided and abetted others in committing securities fraud.  Aiding and abetting is another legal theory in addition to the theory of primary liability by which the government can prove the defendant guilty of the crime charged in Count Three.

The aiding and abetting statute is Section 2 of Title 18 of U.S. Code.  It says:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal[; and]

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

It is not necessary to find that the defendant personally committed the crime charged in Count Three, as long as the government proves that he aided and abetted another person in doing so.  That is because under the law, a person who aids or abets another to commit an offense, is just as guilty of that offense as if he committed it himself; therefore, you can find the defendant guilty of the offense charged in this Count Three if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

41

In order to find a defendant guilty of aiding and abetting a crime, you must first find that some person did actually commit the crime charged. Unlike a conspiracy which is a crime by itself, so that a defendant does not have to commit the underlying crime, no one can be convicted of aiding or abetting the criminal act of another if no crime was committed by the other person in the first place. The underlying crime has to have occurred for a person to be liable for aiding and abetting. But if you do find that the crime was committed, then you have to consider whether a defendant aided or abetted the commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associated himself in some way with the crime, and that he participated in the crime by doing some act to help make the crime succeed.

To establish that a defendant knowingly associated himself with the crime, the government must establish that the defendant knew and intended that the crime charged in Count Three would be committed.

To establish that a defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about the crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by a defendant that a crime is being committed, or merely associating with others who were committing a crime, is not sufficient to establish aiding and abetting. Somebody who has no knowledge that a crime is being committed, or is about to be committed, but inadvertently does something that aids in the commission of that crime, is

42

not an aider or abettor.  An aider and abettor must know that the crime is being committed and act in a way that he intends to bring about the success of the criminal venture.

To determine whether a defendant aided and abetted the commission of the crime charged in Count Three, or caused the commission of that crime, ask yourself these questions:

First, did he participate in the crime charged as something he wished to bring about?

Second, did he associate himself with the criminal venture knowingly and willfully?

And third, did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor and he is guilty of Count Three.  If on the other hand your answer to any of these questions is "no," then the defendant is not an aider and abettor and you must not find him guilty of Count Three on the aiding and abetting theory.

Authority

Adapted from the Petrossi Jury Charge, Trial Tr. 1151-1154.

<u>REQUEST NO. 15</u>
Count Four

Count Four of the Indictment also charges defendants NORDLICHT, LEVY,

and SANFILIPPO with securities fraud in connection with the Investment Scheme.

Specifically, Count Four states, in pertinent part:

> In or about and between September 2014 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT, DAVID LEVY, and JOSEPH SANFILIPPO,
> together with others, did knowingly and willfully use and employ
> one or more manipulative and deceptive devices and
> contrivances, contrary to Rule 10b-5 of the Rules and Regulations
> of the United States Securities and Exchange Commission, Title
> 17, Code of Federal Regulations, Section 240.10b-5, by: (a)
> employing one or more devices, schemes and artifices to defraud;
> (b) making one or more untrue statements of material fact and
> omitting to state one or more material facts necessary in order to
> make the statements made, in light of the circumstances in which
> they were made, not misleading; and (c) engaging in one or more
> acts, practices and courses of business which would and did
> operate as a fraud and deceit upon one or more noteholders and
> prospective noteholders in PPNE, in connection with the
> purchase and sale of investments in PPNE, directly and indirectly,
> by use of means and instrumentalities of interstate commerce and
> the mails.

As with Count Three, to sustain its burden of proving a defendant guilty of

Count Four, the government has to prove beyond a reasonable doubt each of the three elements

of securities fraud that I previously explained to you.

Again, the government must prove that the defendant actually knowingly and

willfully committed — or aided and abetted — the offense with intent to defraud, as opposed

to merely knowingly and willfully conspiring to commit the offense with intent to defraud.

44

REQUEST NO. 16
Count Five

Count Five of the Indictment charges defendants NORDLICHT, LEVY, and

SANFILIPPO with investment adviser fraud in connection with the Investment Scheme.

Specifically, Count Five states, in pertinent part:

> In or about and between November 2012 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT, DAVID LEVY, and JOSEPH SANFILIPPO,
> together with others, did knowingly and willfully use the mails
> and other means and instrumentalities of interstate commerce,
> directly and indirectly: (a) to employ a device, scheme and
> artifice to defraud Platinum Management's clients and
> prospective clients; (b) to engage in a transaction, practice and
> course of business which operated as a fraud and deceit upon
> Platinum Management's clients and prospective clients; and (c)
> to engage in an act, practice and course of business which was
> fraudulent, deceptive and manipulative, contrary to Title 15,
> United States Code, Sections 80b-6 and 80b-17.

To sustain its burden of proving a defendant guilty of Count Five, the

government has to prove beyond a reasonable doubt each of the four elements of investment

adviser fraud that I previously explained to you when I was talking about Count One,

conspiracy to commit securities fraud and investment adviser fraud.  You will recall I defined

the elements of conspiracy in that count, and that I also told you that the underlying substance

of investment adviser had its own elements.  You use those investment adviser fraud elements

here for this Count Five.

As with Counts Three and Four, the difference here, is that the government must

prove that the defendant actually knowingly and willfully committed — or aided and abetted

— the offense with intent to defraud, as opposed to merely knowingly and willfully conspiring

to commit the offense with intent to defraud.

45

REQUEST NO. 17
Count Six

Count Six of the Indictment also charges defendants NORDLICHT and LEVY

with conspiracy to commit securities fraud in connection with the Black Elk Bond Scheme.

Specifically, Count Six states, in pertinent part:

> In or about and between November 2011 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT and DAVID LEVY, together with others, did
> knowingly and willfully conspire to use and employ manipulative
> and deceptive devices and contrivances, contrary to Rule 10b-5
> of the Rules and Regulations of the United States Securities and
> Exchange Commission, Title 17, Code of Federal Regulations,
> Section 240.10b-5, by: (a) employing devices, schemes and
> artifices to defraud; (b) making untrue statements of material fact
> and omitting to state material facts necessary in order to make the
> statements made, in light of the circumstances under which they
> were made, not misleading; and (c) engaging in acts, practices
> and courses of business which would and did operate as a fraud
> and deceit upon the Bondholders, in connection with the purchase
> and sale of BE Bonds, directly and indirectly, by use of means
> and instrumentalities of interstate commerce and the mails,
> contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

To sustain its burden of proving a defendant guilty of Count Six, the

government has to prove beyond a reasonable doubt each of the three elements of

conspiracy, which I explained for Count One.  The same elements apply here, except the

conspiracy alleged in this count is only a conspiracy to commit securities fraud, as opposed

to securities fraud and investment adviser fraud.

As with Count One, this Count Six does not allege that a securities fraud was

actually committed, and the government does not need to prove that a securities fraud was

committed or attempted for you to find the defendant guilty of this count.  Rather, Count Six

charges the defendants with conspiring to commit securities fraud.

46

As with Count One, one of the elements of proving this Count is that the government must show that an overt act occurred in furtherance of the conspiracy; that is, someone within the conspiracy took some action that advanced the goals of the conspiracy.

The indictment alleges the following overt acts for Count Six:

First, on or about May 12, 2014, Co-Conspirator Jeffrey Shulse sent an email to NORDLICHT, LEVY, Co-Conspirator Daniel Small and John Hoffman regarding the second amendment to the BE Bond indenture agreement that stated, in part: "I sort of like the idea of slipping the announcement in with the 10Q filing so it has a chance to get lost and not seem like such a big deal."

Second, on or about May 20, 2014, in response to an email from Shulse discussing a $6 million financial shortfall at Black Elk, NORDLICHT sent an email to Shulse, LEVY and Small, copying John Hoffman and Marizza Piche, wherein NORDLICHT changed the subject line to "atty client privilege" and stated, in part: "U inadvertently did not label your last tirade as atty client privilege.  I personally think we can get out of rent . . . and a lot of other payables as well . . . but give us hard numbers as to how we are doing. Real ebitda numbers instead of sending hysterical email when it really [shouldn't] have been a surprise based on production."

Third, on or about June 2, 2014, in response to opposition by NORDLICHT to abiding by the terms of the indenture agreement and the trustee's requirements, Shulse sent an email to NORDLICHT, LEVY and Small that stated:  "Why are we afraid of an open solicitation?  Probably going to avoid a lawsuit and if we have the bonds we say we do, the process ends as soon as we get over the number?"

47

Fourth, on or about June 3, 2014, after Shulse informed his coconspirators at Platinum and Beechwood that the trustee had determined that Black Elk had not followed the appropriate process necessary to amend the indenture agreement, NORDLICHT responded in an email to LEVY, Shulse, and Small, and stated, in part:  "There is a disconnect here.  No more talking to lawyers.  David, u f'd this one up bad for no reason.  We will have one pager signed by 51% of bondholders, no trustee necessary.  It[']s fine.  We don't need any process.  Bondholders are being taken out, this is all moot."

Fifth, on or about June 16, 2014, Shulse sent an email to NORDLICHT that stated, in part:  "I got to spend some time fishing over the weekend, which gave me a lot of quiet time to think and reflect (which can be good or bad) . . . You even said in our meetings that the equity holders are getting 'crammed down' by paying off the preferred with the proceeds of the Renaissance transaction."

Sixth, on or about August 18, 2014, Small sent an email to Shulse, copying Sam Salfati, that stated: "Jeff, on behalf of Sam Salfati and myself constituting a majority of the board of managers you are hereby authorized to wire $70MM in partial payment of the [Preferred Equity]."

The standards for proving this overt act element are the same for this Count Six as they were for Count One.

<u>REQUEST NO. 18</u>
Count Seven

Count Seven of the Indictment charges defendants NORDLICHT and LEVY

with conspiracy to commit wire fraud in connection with the Black Elk Bond Scheme.

Specifically, Count Seven states, in pertinent part:

> In or about and between November 2011 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT and DAVID LEVY, together with others, did
> knowingly and intentionally conspire to devise a scheme and
> artifice to defraud the Bondholders, and to obtain money and
> property from them by means of materially false and fraudulent
> pretenses, representations and promises, and for the purpose of
> executing such scheme and artifice, to transmit and cause to be
> transmitted by means of wire communication in interstate and
> foreign commerce writings, signs, signals, pictures and sounds,
> contrary to Title 18, United States Code, Section 1343.

To sustain its burden of proving a defendant guilty of Count Seven, the

government has to prove beyond a reasonable doubt each of the elements of conspiracy to

commit wire fraud that I previously explained to you when I was talking about Count Two.

Use those same elements here.

As with Count Two, this conspiracy charge does not require proof of any overt

act.

49

<u>REQUEST NO. 19</u>
Count Eight

Count Eight of the Indictment charges defendants NORDLICHT and LEVY

with securities fraud in connection with the Black Elk Bond Scheme.  Specifically, Count Eight

states, in pertinent part:

> In or about and between November 2011 and December 2016,
> both dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendants MARK
> NORDLICHT and DAVID LEVY, together with others, did
> knowingly and willfully use and employ one or more
> manipulative and deceptive devices and contrivances, contrary to
> Rule 10b-5 of the Rules and Regulations of the United States
> Securities and Exchange Commission, Title 17, Code of Federal
> Regulations, Section 240.10b-5, by: (a) employing one or more
> devices, schemes and artifices to defraud; (b) making one or more
> untrue statements of material fact and omitting to state one or
> more material facts necessary in order to make the statements
> made, in light of the circumstances in which they were made, not
> misleading; and (c) engaging in one or more acts, practices and
> courses of business which would and did operate as a fraud and
> deceit upon the Bondholders, in connection with the purchase and
> sale of BE Bonds, directly and indirectly, by use of means and
> instrumentalities of interstate commerce and the mails.

As with Count Three and Four, to sustain its burden of proving a defendant

guilty of Count Eight, the government has to prove beyond a reasonable doubt each of the

three elements of securities fraud that I previously explained to you.

For this Count, the government must prove that the defendant actually

knowingly and willfully committed — or aided and abetted — the offense with intent to

defraud, as opposed to merely knowingly and willfully conspiring to commit the offense with

intent to defraud.

50

REQUEST NO. 20
Venue

Those are all eight counts.  There is one other thing you have to consider in determining how to resolve those counts, and this applies to all counts.

In connection with the charged conspiracy counts, that is Counts 1, 2, 6 and 7, you have to consider as to each count whether any overt act in furtherance of the crime occurred within the Eastern District of New York.  The Eastern District of New York includes Brooklyn, Queens, Staten Island, Nassau County and Suffolk County.

In this regard, the government does not have to prove that the crimes themselves were committed in this district, or that any defendant himself was present here.  It is sufficient to satisfy this element if any act in furtherance of the crime occurred within this district.  Venue for the conspiracy charges may be properly found in any district where the unlawful agreement was formed, or where an overt act was committed in furtherance of the conspiracy.

For the charged substantive securities fraud and investment adviser fraud counts, Counts 3, 4, 5 and 8, the government must prove that an act or transaction constituting securities fraud occurred in the Eastern District of New York.  Venue is proper for these counts wherever any such transactions occurred, including anywhere that communications, such as mailings, telephone communications or electronic communications were sent or received.

The government must prove venue by a preponderance of the evidence.  That is a lesser standard of proof than beyond a reasonable doubt, which is what we have been talking about throughout these charges.

51

To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.  It is determined by considering all the evidence and deciding which evidence is more convincing.  If the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, then you have to resolve this question against the government.  If you find that the government has failed to prove that any act in furtherance of a crime occurred within this district, then you must find the defendant not guilty on the count that you are considering.

As I have instructed you, for all other elements in this case, you have to find the government has proven that element beyond a reasonable doubt, not by a preponderance of the evidence.  Preponderance of the evidence only applies to venue.

<u>Authority</u>

Adapted from the <u>Petrossi</u> Jury Charge, Trial Tr. 1154-1155; <u>United States v. Lange</u>, 834 F.3d 58, 69 (2d Cir. 2016) (discussing venue for the purposes of substantive securities fraud); 15 U.S.C. §§ 78aa(a); 80b-14.

<u>REQUEST NO. 21</u>
Transcripts of Tape Recordings

The government has been permitted to hand out a typed document that it prepared containing the government's interpretation of what appears on the tape recordings which have been received as evidence.  Those were given to you as an aid or guide to assist you in listening to the tapes.  However, they are not in and of themselves evidence.  Therefore, when the tapes were played I advised you to listen very carefully to the tapes themselves.  You alone should make your own interpretation of what appears on the tapes based on what you heard.  If you think you heard something differently than appeared on the transcript, then what you heard is controlling.

Let me say again, you, the jury, are the sole judges of the facts.

<u>Authority</u>

Adapted from Sand, Instr. 5-9.

53

<u>REQUEST NO. 22</u>
Consensual Recordings

The government has offered evidence in the form of tape recordings of conversations. These recordings were made without the knowledge of the defendants, but with the consent and agreement of one of the other parties to the conversations.

The use of this procedure to gather evidence is perfectly lawful, and the government is entitled to use the tape recordings in this case.

<u>Authority</u>

Adapted from Sand, Instr. 5-10.

54

REQUEST NO. 23
Character Evidence
(If Applicable)

Defendant [name] called as a witness [Name], who gave his/her opinion of his good character.  This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty.  That question is for you alone to determine. You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence, including testimony about the defendant's good character, you find a reasonable doubt has been created, you must acquit him of all the charges.

On the other hand if, after considering all the evidence, including that of the defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you must not acquit him merely because you believe him to be a person of good character.

Authority

Adapted from the charge of the Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968.

REQUEST NO. 24
Uncharged Persons

You may not draw any inference, favorable or unfavorable, toward the government or the defendant on trial from the fact that certain persons were not named as defendants in this Indictment.  You should draw no inference from the fact that any other person is not present at this trial.  Your concern is solely the defendants on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.  You should not speculate as to the reasons these individuals are not on trial before you.  The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendants who are on trial.

Authority

Adapted from Sand, Instr. 3-4.

56

REQUEST NO. 25
Accomplice Testimony

You also heard from witnesses who testified that they were themselves involved in one or more of the charged crimes with one or more of the defendants. Experience will tell you that the government sometimes must rely on the testimony of witnesses who admit participating in criminal activity.  For that reason, the law allows the use of such testimony.  It is the law in the federal courts that such testimony may be enough, standing alone, for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, because of the interest a cooperating witness may have in testifying, the testimony should be scrutinized with special care and caution.  The fact that the witness may benefit from his cooperation may be considered by you as bearing upon his credibility.

Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his background and the extent to which his testimony is or is not corroborated by other evidence in the case.

You may consider whether a cooperating witness has an interest in the outcome of the case and, if so, whether that interest has affected his testimony.  You should ask yourselves whether the witness would benefit more by lying or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely, or did he believe that his interest would be best served by testifying truthfully?

If you believe that that witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth?  Did this motivation color his testimony?

If you think the witness's testimony was false, you should reject it.  However, if after a cautious and careful examination of the cooperating witness's testimony you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any other witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept the witness's testimony in other parts, or you may disregard all the testimony.  That's a determination entirely for you, the jury.

You heard evidence that certain of these government witnesses have pleaded guilty to charges arising out of some of the same facts that are at issue in this case.  That evidence is before you solely to assist you in evaluating the credibility of that witness.  You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of any of the defendants on trial before you from the fact that a prosecution witness pled guilty to related or similar charges.  The decision of that witness to plead guilty was a personal decision that witness made about his own guilt.  It may not be used by you in any way as evidence against or unfavorable to any of the defendants.

Now you've also heard testimony in this case about who will decide the sentence of such witnesses.  Again, the question of punishment of a cooperating witness is a duty that rests exclusively upon the sentencing court, and you should not think about that except as it may affect the witness's credibility.

Authority

Adapted from the charge of the Hon. Brian M. Cogan, <u>United States v. Nadeem</u>, E.D.N.Y., 13 CR 424 (BMC).

<u>REQUEST NO. 26</u>
Testimony of Defendant
(If applicable)

A defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  In this case, [Name] did testify and he was subject to cross examination like any other witness.  You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.

<u>Authority</u>

<u>United States v. Brutus</u>, Cr. No. 06-2710, 2007 WL 2828690, n.7 (2d Cir. Oct. 2, 2007), adapting charging language from <u>United States v. Gaines</u>, 457 F.3d 238, 249 n.9 (2d Cir. 2006).

REQUEST NO. 27
Defendant's Right Not to Testify
(If applicable)

The defendants did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendants did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendants in any way in your deliberations in the jury room.

Authority

Adapted from Sand, Instr. 5-21.

61

REQUEST NO. 28
Evidence Obtained Pursuant to Lawful Procedures

You have seen evidence obtained pursuant to a search of Platinum's offices.

All of this evidence was obtained lawfully. The use of this procedure to gather evidence is

perfectly lawful and the government has the right to use such evidence in this case.


Authority

Adapted from the Charges of the Hon. Carol B. Amon, United States v.
Moore, E.D.N.Y. 13-CR-487 and the Hon. Nicholas G. Garaufis, United States v. Basciano,
E.D.N.Y. 03-CR-929.

62

REQUEST NO. 29
Summary Evidence

Some exhibits were admitted into evidence in the form of charts and summaries. Those charts and summaries were admitted in order to save the time of reviewing voluminous records and to avoid inconvenience. You should consider these charts and summaries the same way you would any other evidence.

Authority

Adapted from the charge of the Hon. Brian M. Cogan in United States v. Nadeem, E.D.N.Y., 13 CR 424.

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing in its instructions to the jury.  In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:  Brooklyn, New York
      June 10, 2019

                            Respectfully submitted,

                            RICHARD P. DONOGHUE
                            United States Attorney
                            Eastern District of New York

By:     /s/_____
                            Alicyn L. Cooley
                            David C. Pitluck
                            Patrick T. Hein
                            Lauren H. Elbert
                            Assistant U.S. Attorneys
                            (718) 254-7000

cc:    Clerk of the Court (BMC) (by ECF)
       All counsel of record (by ECF)