## quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7617

WRITER'S EMAIL ADDRESS
danielkoffmann@quinnemanuel.com

September 21, 2020

**VIA ECF**

Honorable Brian M. Cogan
United States District Judge,
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    **United States v. Mark Nordlicht, 16 Cr. 640 (BMC)**

Dear Judge Cogan:

    We write on behalf of Defendant Mark Nordlicht to request a modification to the terms of his conditions of release. Specifically, Mr. Nordlicht respectfully requests that the Court (1) remove the prohibition against contact with investors in Platinum Partners; (2) switch Mr. Nordlicht's bond from $5 million, secured by $500,000 in cash, to a $500,000 unsecured bond, cosigned by his wife; and (3) remove domestic travel restrictions so that he may travel in the United States, with 48 hours' notice to, and approval from, the Pretrial Services Office. We have conferred with counsel for the government and the Pretrial Services Office, both of which consent to this request.

## Background

Mr. Nordlicht's current bail conditions include, among other things, the following:

- Bond of $5 million, secured by $500,000 in cash, Dkt. No. 12.

- Travel restricted to the Eastern and Southern Districts of New York, District of New Jersey, District of Connecticut, and District of Columbia, *id.*; Hr'g Tr. 17:23–18:7 (Jan. 12, 2017); Order (June 19, 2017).

- Prohibition against having contact with investors in Platinum Partners unless (1) those investors were members of his immediate family and they did not discuss the specifics of the charges against him, or (2) such contact was "at the direction of any liquidator, trustee or monitor," Dkt. No. 12; Hr'g Tr. 29:5–30:14.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

The investor gag order was the subject of extensive argument at the first status conference. At that conference, the Honorable Dora L. Irizarry expressed surprise that Mr. Nordlicht would be permitted to have contact with *any* Platinum investor, including his own parents. *See* Hr'g Tr. 24:8–15 (Jan. 12, 2017). Ultimately, however, the government consented to Mr. Nordlicht being permitted to speak with his parents, his sister and brother-in-law, his children, and his wife. Judge Irizarry then granted Mr. Nordlicht permission to communicate with them, even though they were investors in Platinum Partners. *Id.* 29:5–30:14. As to all others, Judge Irizarry ordered Mr. Nordlicht to say, "I'm sorry. While this case is pending, I can't speak with you." *Id.* 26:20–22.

### Legal Standard

The Bail Reform Act provides that a court "shall order the pretrial release" of a defendant on "personal recognizance" or "upon execution of an unsecured appearance bond," unless "such release will not reasonably assure the appearance" of the defendant at trial. 18 U.S.C. § 3142(b). In evaluating whether a condition or combination of conditions is appropriate, courts consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### Argument

Mr. Nordlicht is not a flight risk. Each of the relevant factors under Section 3142(g) supports this conclusion.[1] Taking the second factor first, the evidence against Mr. Nordlicht is weak. This Court already has found that the weight of the evidence presented in the first trial was so minimal that allowing the guilty verdict to stand would be a manifest injustice. Dkt. No. 799. The record has only gotten worse for the government in the year since the trial concluded. Witness testimony in parallel civil litigation establishes beyond dispute that Mark Nordlicht's role at Beechwood was so marginal that he could not possibly be construed as having the power to direct its management and policies. Based on the testimony at trial, the testimony since trial, and the documentary record, the most that can be said of Mr. Nordlicht's power over Beechwood is that he had an audience with Beechwood decision makers and he often had good ideas on which those decision makers sometimes decided to follow through. That is not enough for him or Platinum to be an affiliate of Beechwood, which is the key issue on which the remaining counts in the case hinge.

*Second*, the nature and circumstances of the remaining charges are unusual in that the alleged victims suffered no losses. The value of the Black Elk bonds held by investors who supposedly were defrauded was effectively unchanged after the amendment to the indenture passed. In fact, some of the investors Mr. Nordlicht allegedly defrauded actually *made* money over the period when the alleged fraud occurred and lost money, if any, only when the price of

---

[1] The fourth factor under Section 3142(g), the danger a defendant poses to the community, does not bear on the risk of flight. In any event, Mr. Nordlicht does not pose any danger to the community.

oil suffered a historic decline.  Because the alleged victims suffered no (or minimal) actual losses, Mr. Nordlicht's potential sentencing range under the United States Sentencing Guidelines is low.  *See United States v. Rutkoske*, 506 F.3d 170, 180 (2d Cir. 2007) (discussing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and vacating sentence because of district court's "failure at least to approximate the amount of the loss caused by the fraud without even considering other factors relevant to a decline in [the] price" of the security).

*Finally*, Mr. Nordlicht's history and characteristics weigh overwhelmingly against the conclusion that he is a flight risk.  He is a lifelong resident of New York, an active member of his religious community, a father of six children who live in New York, and a son to an aging mother who lives between New York and Florida.  His roots, and the vast majority of his family, social, and business connections, are in New York.  These strong family and community ties are powerful reasons why he will not flee.  *See* 18 U.S.C. § 3142(g)(3) (family and community ties and length of residence in the community relevant to evaluating history and characteristics of defendant).

Equally important, Mr. Nordlicht has demonstrated multiple times that he has no interest in fleeing to avoid the charges in this case.  When he first learned that criminal investigators were scrutinizing Platinum, he *left* Israel and *returned* to the United States to defend himself and the fund.  Two years later, after he was indicted and, according to the government, was "fac[ing] the prospect of decades in prison . . . ([with a] Guidelines range of life in prison)," Dkt. No. 366, Mr. Nordlicht once again left Israel and returned to the United States after burying his father.  There is no reason to think that Mr. Nordlicht would attempt to flee given that he has chosen to do the opposite at every turn—particularly now, given his confidence that he will be vindicated in this matter.

In light of these facts, a $5 million bond with $500,000 security is excessive.  No more than a $500,000 unsecured bond, cosigned by Mr. Nordlicht's wife, is necessary to ensure his appearance at trial.  Nor is there a need for domestic travel restrictions.  Finally, any justification for prohibiting Mr. Nordlicht from having contact with Platinum investors dissipated when Mr. Nordlicht was acquitted of counts one through five.  The original justification for this condition, as articulated by Judge Irizarry, was that "[t]hese people are victims.  And in no other case that I have ever presided over . . . has [a defendant] been permitted to speak to a victim during the course of the case."  Hr'g Tr. 24:8–15 (Jan. 12, 2017).  But Mr. Nordlicht did not defraud Platinum investors.  They were never victims.  Yet for several years, this condition has required Mr. Nordlicht to avoid members of his extended family, lifelong friends, members of synagogue, and everyone else who trusted him and Platinum with their investments.  The Court should relieve him of this onerous restriction, which now serves no purpose.

*    *    *

For all these reasons, Mr. Nordlicht respectfully requests, on consent of the government and the Pretrial Services Office, that the Court (1) remove the prohibition against contact with investors in Platinum Partners; (2) switch Mr. Nordlicht's bond from $5 million, secured by $500,000 in cash, to a $500,000 unsecured bond, cosigned by his wife; and (3) remove domestic

travel restrictions so that he may travel in the United States with 48 hours' notice to, and approval from, the Pretrial Services Office.

Respectfully submitted,

/s/ Daniel Koffmann
Daniel Koffmann

cc:   Officers Jeannine Quijije and Jessica Killian, Pretrial Services Office (via email)
      All counsel of record (via ECF)