

U.S. Department of Justice

United States Attorney
Eastern District of New York

DCP/LHE/NMA  
F. # 2016R00505

271 Cadman Plaza East  
Brooklyn, New York 11201

October 7, 2022

By Email and ECF

The Honorable Brian M. Cogan  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

>  Re: United States v. Mark Nordlicht, et al.  
>  Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in opposition to the defendant Mark Nordlicht's application to travel to Israel from October 19 through October 30, 2022. ECF Dkt. No. 968 ("Nordlicht Letter").

I. Background

As the Court is aware, on July 19, 2019, following a lengthy trial, the defendant was convicted by a jury of conspiracy to commit securities fraud, conspiracy to commit wire fraud and securities fraud with respect to the Black Elk Bond Scheme. As demonstrated by the evidence that has been presented at two separate trials regarding the Black Elk Bond Scheme (Nordlicht's and that of his co-conspirator Daniel Small), Nordlicht was the leader of the scheme. He is currently scheduled to be sentenced on January 23, 2023 and faces a Guidelines range of 87–108 months imprisonment. See PSR ¶ 112.

On October 3, 2022, just two weeks before his planned trip, Nordlicht filed a motion to travel to Israel to attend his nephew's wedding, to visit his father's grave and to visit with family. Nordlicht Letter at 1. As is made plain in his letter and other filings, Nordlicht has longstanding and strong family ties to Israel. His brother and his brother's family live in Israel and, at various times in the recent past, the defendant and his family have lived in Israel. PSR ¶¶ 89, 91, 93.

II. Travel to Israel Poses a Significant Risk of Flight

Permitting Nordlicht to leave the United States and travel to Israel would create a substantial risk that he would never return to face sentencing. Nordlicht has a strong incentive to flee—indeed, his incentives to flee are even stronger today than they were in 2018, when the

government opposed his travel to Israel during the pendency of his case and he traveled prior to the Court issuing a ruling granting permission. See ECF Dkt. Nos. 365-370. His exposure to a serious custodial sentence is no longer hypothetical. He has now been convicted at trial, and that conviction has been reinstated by the Second Circuit Court of Appeals. His lengthy sentencing exposure is also no longer hypothetical. As set forth in the defendant's PSR, he faces the prospect of 87 to 108 months' imprisonment, and substantial potential forfeiture and restitution orders. PSR ¶ 112. At sentencing, Nordlicht also faces the potential for an upward departure for verbally attacking and physically threatening an Assistant United States Attorney in the middle of trial. PSR ¶ 84. Although Nordlicht has glibly dismissed this attack as "a Will Smith moment," PSR ¶ 96, Nordlicht did not slap a comedian during the Oscars; he attacked a federal prosecutor in a federal courthouse during a criminal trial, and he will be held accountable for his actions. Accordingly, Nordlicht has ample, concrete reasons to flee the jurisdiction.

Contrary to the summary assertions in his letter, were Nordlicht to refuse to return to the United States, there is no guarantee that he could be compelled to return to face the consequences of his criminal conduct in the United States. The assurances Nordlicht cites in his letter are simply unavailing. First, a waiver of extradition will not assure the defendant's return. Although the United States has entered into an extradition treaty with Israel, extradition under the treaty is never guaranteed and would inevitably involve protracted litigation. Moreover, while the defendant has volunteered that he would execute a waiver of extradition, the enforceability of such a waiver, including in Israel, is highly uncertain. Consequently, the proposed waiver provides no assurance that the defendant will return. See, e.g., United States v. Stroh, No. 96-CR-139 (AHN), 2000 WL 1832956, at *5 (D. Conn. Nov. 3, 2000) (observing, in the context of a defendant with ties to Israel, that "it appears that there is a substantial legal question as to whether any country . . . would enforce any waiver of extradition."); United States v. Kazeem, No. 15-CR-172 (AA), 2015 WL 4645357, at *3 (D. Or. Aug. 3, 2015) ("Defendant's suggestion that he might sign a waiver of extradition is undermined by grave doubts about the enforceability of such a waiver."); United States v. Young, No. 12-CR-502 (TC), 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013) ("[I]n [defendant's] briefs, he offers to waive extradition. But this too is hollow. If he arrives in Lebanon, the United States's ability to enforce that contractual waiver is significantly hampered."). As the government has previously explained, see ECF Dkt. No. 369, the Israeli Ministry of Justice is of the opinion that an anticipatory waiver of extradition is unenforceable.[1]

Second, the fact that the defendant went to Israel in 2018 before trial and returned says little about the likelihood he will return today to face sentencing. As noted above, in 2018 the defendant had not been convicted of a crime. However, in 2022, he has been convicted of serious charges, had his conviction reinstated by the Second Circuit, and faces a lengthy custodial sentence. Moreover, as the Court will recall, Nordlicht's last trip to Israel demonstrates that his lack of respect for the law and his willingness to disregard the requirements of his bond when it suits him. Indeed, Nordlicht left for Israel while his application to the Court was pending before the government had a chance to respond to his application and before the Court ruled on it. See ECF Dkt. No. 372. If Nordlicht is willing to leave for Israeli without Court approval because it

---

[1] Nordlicht utterly fails to respond to these authorities—including from the government of the country at issue—and relies instead on a 2018 legal opinion from a lawyer specializing in "international corporate transactions" claiming that the waiver was enforceable.

suited his purposes once, there is no reason to believe he would return to the United States if he determined it was in his interest to remain in Israel.

<u>Third</u>, the defendant argues that he will return because of his strong family ties to the United States. But, as evidenced by his letter, Nordlicht maintains strong family ties to Israel as well. His brother and other family lives there, his father is buried there and he maintains other close family connections there. <u>See</u> PSR ¶ 89, Nordlicht Letter <u>see also</u> ECF Dkt. No. 365 (noting "close family members" as well as "friends and family" present in Israel). Moreover, there would be nothing preventing his family in the United States from visiting him in Israel or moving to Israel to join him in the event that he flees. Only Nordlicht is subject to travel restrictions, his family is not. And his family would not be entirely relocating their life to a new place. Indeed, Nordlicht and other members of his family have lived in Israel in the past, including the entire year from 2015-2016. PSR ¶ 93.

Furthermore, the proffered reasons for his visit to Israel, such as visiting with family or visiting his father's grave, are not compelling. Inconveniences, such as missing a nephew's wedding or having to postpone vacations, are inherent consequences to life as a criminal defendant. While Nordlicht portrays himself as a victim ("there is no reason why Mr. Nordlicht should suffer additional punishment by forcing him to miss a milestone in his nephew's life"), those consequences are his fault alone.

III.   <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that Nordlicht should not be permitted to travel to Israel.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By:   /s/
David C. Pitluck
Lauren Howard Elbert
Nick M. Axelrod
Assistant U.S. Attorneys
(718) 254-7000

cc.   Defense counsel (by ECF)