

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DCP/LHE/NMA
F. #2016R00505

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 13, 2023

By E-mail and ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Mark Nordlicht, et al.
       Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

    The government respectfully submits this letter in opposition to the defendant Mark Nordlicht's motion for a judgment of acquittal in light of the Supreme Court's recent decision in Ciminelli v. United States, 598 U.S. __, 143 S. Ct. 1121 (2023).[1] Nordlicht's motion should be denied. In Ciminelli, the Supreme Court reiterated that the object of a wire fraud scheme charged under 18 U.S.C. § 1343 must be "money or property" and concluded that the intangible "right to control" assets is not "money or property." The case against Nordlicht was not and has never been about the intangible "right to control" assets. The defendants were charged and convicted of defrauding investors of their contractual interest in more than $70 million in proceeds from the sale of Black Elk's assets. The Court's instructions to the jury relating to the crime of wire fraud conspiracy correctly required the jury to find that the bondholders' "money or property" was the object of the defendants' fraud. The Court's instructions did not even hint at the intangible "right to control" assets, much less instruct the jury on this esoteric legal concept. Ciminelli thus has no application to this case. Moreover, Ciminelli has no bearing on the defendant's convictions for securities fraud and securities fraud conspiracy. The securities fraud statutes, 15 U.S.C. § 78j(b)

---

[1] In his motion, Nordlicht reiterates a number of false and misleading factual claims that he previously presented to the Court in his renewed motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, ECF Dkt. Nos. 971 & 988. The government has already explained to the Court why these arguments are premised upon false assertions and do not warrant the requested relief, ECF Dkt. No. 987. Because the Court solicited briefing specifically on the issue of Ciminelli, the government is not reiterating its arguments herein.

and Rule 10b-5, do not require proof of a "money or property" object, or indeed the intent to harm any victim. For the reasons set forth below, the defendant's motion should be denied.

I. Background

On December 14, 2016, the Indictment was filed in the above-captioned case charging, as pertinent to this response, defendants Nordlicht and Levy with securities fraud conspiracy, in violation of 18 U.S.C. § 371, wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and securities fraud, in violation of 15 U.S.C. §§ 78j & 78ff, in connection with their involvement in a fraud scheme described in the Indictment as the Black Elk Bond Scheme. Indictment, ECF Dkt. No. 1 ¶¶ 99–105. The indictment alleged that the defendants perpetrated a "scheme to defraud the third-party holders of [certain Black Elk bonds] and to deprive the Bondholders of the proceeds of the sale of the vast majority of Black Elk's most lucrative assets through material misrepresentations and omissions." Id. ¶ 73 (emphasis added). The wire fraud conspiracy count specifically alleged that the object of the scheme was to obtain "money and property" from these bondholders. Id. ¶ 103.

At trial, upon the conclusion of the evidence, the Court instructed the jury that, in order to convict the defendants of wire fraud conspiracy, the jury must find beyond a reasonable doubt that the charged scheme sought to obtain "money or property." Tr. at 7155–57. The jury reached a guilty verdict as to the charge of wire fraud conspiracy. ECF Dkt. Nos. 773 & 774.

In his first motion for vacatur, filed on July 30, 2019, Levy argued, in part, that his conviction should be vacated because the government failed to prove that the Black Elk Bond scheme targeted money or property belonging to the bondholders. ECF Dkt. No. 785 at 45. While the Court granted Levy's motion for acquittal, it did not do so on the basis that the scheme did not sufficiently target the bondholders' money or property, but rather found that the evidence was insufficient to establish Levy's fraudulent intent. See ECF Dkt. No. 800. The Court's order was then reversed by the Court of Appeals, which expressly found that the government had presented sufficient evidence for a reasonable jury to find that the goal of the Black Elk Bond Scheme was to "defraud the bondholders," United States v. Landesman, 17 F.4th 298, 322–23 (2021). The Court of Appeals did not address the application of the "right to control" theory of wire fraud to this case—which is unsurprising given that the charges in the indictment and the instructions given to the jury did not involve that theory.

II. The 2019 Jury Was Instructed on "Money or Property" Fraud and Not on the "Right to Control"

Although Nordlicht's motion cites no Rule of Criminal Procedure, it is in substance a motion for acquittal pursuant to Rule 29 or a motion for a new trial pursuant to Rule 33 based on the Court's jury instructions.[2] See United States v. Parasmo, No. 19-CR-1 (JMA), 2023 WL

---

[2] Because Nordlicht did not raise the same argument at trial, his claim is subject to plain error review. Sepulveda, 420 F. Supp. 3d at 169. "To establish plain error, a defendant must demonstrate that: (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights, which in the ordinary

1109649, at *15 (E.D.N.Y. Jan. 30, 2023) (construing a post-trial challenge based on a newly-decided Supreme Court case as a motion for acquittal or for a new trial); United States v. Sepulveda, 420 F. Supp. 3d 153, 167 (S.D.N.Y. 2019) (same). In Ciminelli, the Supreme Court reviewed and rejected jury instructions that defined "money or property" to include "intangible interests such as the right to control the use of one's assets." Ciminelli, 143 S. Ct. at 1125. The Supreme Court rejected these instructions because the "right to control" is not a traditional form of "money or property." Id. at 1128. The Supreme Court went on to reject the government's argument that it could affirm based on the record at trial specifically because of this instructional error. Id. at 1129. Nordlicht cannot and does not point to any similar error in the Court's instructions here. As explained below, the Court charged the jury with standard wire fraud instructions that required the jury to find that the object of the fraud was "money or property," and which did not mention the right to control theory of wire fraud at issue in Ciminelli.

The Court's instructions required the jury to find that "money or property" was the object of the defendant's scheme to defraud. These instructions are correct and differ materially from the "right to control" jury instructions rejected in Ciminelli. The Court instructed the jury that a "scheme to defraud is any pattern or course of conduct designed <u>to obtain money or property</u> by means of trick, deceit, deception or by false or fraudulent representations or promises." Tr. 7156:17–20 (emphasis added). The Court went on to make clear that "in addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, <u>the government must prove beyond a reasonable doubt that the alleged scheme contemplated depriving another of money or property</u>." Tr. 7157:7–12 (emphasis added). The Court's jury instructions also required the jury to find intent to harm, that the defendant "contemplated <u>some actual harm or injury</u>," Tr. 7157:20–21 (emphasis added), and that the defendant "acted with the specific purpose of <u>causing some deprivation of money or property</u>," Tr. 7160:14–16 (emphasis added). These jury instructions differ significantly from the jury instructions in Ciminelli. There, the district court instructed the jury that: "Property includes intangible interests such as the right to control the use of one's assets. The victim's right to control the use of its assets is injured when it is deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets." United States v. Kaloyeros, et al., No. S2 16-CR-776 (VEC), ECF Dkt. No. 784 at 16–17 (S.D.N.Y. July 12, 2018). There is no equivalent language in the Court's jury instructions, and it is this instruction that was rejected by the Supreme Court in Ciminelli. See Ciminelli, 143 S. Ct. at 1128 ("The so-called 'right to control' is not an interest that had 'long been recognized as property' when the wire fraud statute was enacted."). The "right to control" is an obscure legal concept and it is not mentioned anywhere in the Court's instructions in this case.

The Court must presume that the jury followed its instructions, and the jury instructions in this case are consistent with the Sand instructions widely relied on by federal courts. Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). The Sand instructions require that the jury find that "in addition to proving that a statement was

---

case means it affected the outcome of the ... proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Degroate, 940 F.3d 167, 174 (2d Cir. 2019)). As discussed below, Nordlicht cannot show any error, much less an error that is "clear or obvious, rather than subject to reasonable dispute." Id.

3

false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property," just like the instructions here. Leonard B. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instruction 44.4. Also like in this case, the Sand instructions provide that the defendant must act with the "purpose of causing some financial or property loss to another." Leonard B. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instruction 44.5. These instructions are also identical to the instructions given in other, recent wire fraud cases in this District. See, e.g., United States v. Shkreli, Case No. 15-CR-637 (KAM), ECF Dkt. No. 295 at 70, 72 (E.D.N.Y. July 28, 2017); United States v. Petrossi, Case No. 16-CR-234 (BMC), May 2, 2017 Tr. at 1138:19–22, 1139: 13–17, 1140:22–1141:5. Nothing in Ciminelli suggests these instructions are improper. In effect, the defendant would have this Court conclude that the standard wire fraud instructions given throughout this Circuit are invalid even though they do not mention at all the intangible "right to control" or the description of this concept that was included in the Ciminelli jury instructions.

Nordlicht's motion| relies on incomplete and out-of-context quotes from the Court's jury instructions to claim that the Court charged (or even suggested) a "right to control" theory when it did not. Nordlicht relies on citations to the Court's description of a "scheme to defraud."[3] See ECF Dkt. No. 999 at 4 (quoting Tr. 7142:23 –7143:1, 7142:22–23). The Court's definition of a "scheme to defraud" was accurate and is separate from the requirement that the object of the fraud be "money or property." See Pasquantino v. United States, 544 U.S. 349, 355 (2005) (describing a "scheme or artifice to defraud" and the "object of the fraud" as "two elements" of wire fraud); Porcelli v. United States, 404 F.3d 157, 162 (2d Cir. 2005) ("We have held that the essential elements of a mail fraud violation include: (1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." (citing United States v. Gole, 158 F.3d 166, 167 (2d Cir. 1998))); United States v. Walker, 191 F.3d 326, 334–35 (2d Cir. 1999) (identifying a "scheme to defraud" and the "object" of the fraud as separate elements and explaining that "the first element focuses on the intent to harm; the second element is concerned with the precise nature of that harm, and requires that the harm be concrete"). Nordlicht cites the Court's instruction that "fraud is a general term" embracing "all the various means that an individual can devise and that are used by an individual to gain an unlawful advantage over another." ECF Dkt. No. 999 at 4 (quoting Tr. 7142:23-7143:1, 7142:22–23). But because he quotes from the wrong jury instructions, he omits the second clause of the Court's sentence: "by false representation, suggestions or deliberate disregard for the truth." Tr. 7156:13–17. The omitted clause is critical because if clarifies that a scheme to defraud must involve a false or misleading statement (or actionable omission). Moreover, Nordlicht also omits the immediately following sentence, which explains that a scheme to defraud requires deceit, deception, or false representations, and makes clear that the object of a wire fraud must be money or property: "A

---

[3] Nordlicht's motion incorrectly cites to the Court's instructions on securities fraud instead of the Court's instructions on wire fraud. See ECF Dkt. No. 999 at 4 (citing Tr. 7142–43). As explained below, the elements of wire fraud and Title 15 securities fraud, 15 U.S.C. § 78j(b), are different. The government cites to the correct passages from the Court's instructions, addressing the elements of wire fraud, and addresses the defendant's frivolous arguments about securities fraud infra.

4

scheme to defraud is any pattern or course of conduct designed to obtain money or property by means of trick, deceit, deception or by false or fraudulent representations or promises." Tr. 7156:17–20.

In short, nothing in the Court's jury instructions suggested to the jury that it could convict Nordlicht based on a scheme to defraud the Black Elk bondholders of their "right to control." Nothing in the jury instructions even hinted at the existence of this concept. Instead, the jury instructions, which are standard, required the jury to find that Nordlicht intended to harm the bondholders and that the object of his fraud was "money or property."

### III. The Object of the Black Elk Fraud Was "Money or Property"

The jury instructions in this case should be the end of this matter, but even if they are not, the indictment charged a "money or property" fraud and the defendant was convicted of defrauding Black Elk's bondholders of money or property. The indictment charged Nordlicht and his co-defendants with "devising a scheme to bypass the Bondholders' rights and misappropriate proceeds of Black Elk's asset sales for Platinum's benefit through deceptive means." ECF Dkt. No. 1 ¶ 75. The indictment further explains that the object of the scheme was to "pay the Preferred Equity, which were almost exclusively owned by Platinum and its related parties, ahead of the Bondholders." "Such a strategy was contrary to the [Black Elk] Bonds indenture agreement, which placed the Bondholders ahead of any equity holders, including the Preferred Equity, in the event of a significant asset sale." ECF Dkt. No. 1 ¶ 77. The object of the scheme was money—more than $77 million in Black Elk assets—and the Bondholders' contractual protections, priority claim to Black Elk's assets, and their security interest in Black Elk's assets. All of these things are "money or property" within the meaning of § 1343 and Ciminelli. The Bondholders' contractual rights under the Black Elk indenture are property protected by the wire fraud statute. As the Third Circuit recently held, "[t]he jury was instructed that contract rights are property rights. That is clearly correct."[4] United States v. Kousisis, 66 F.4th 406, 420 (3d Cir. 2023) (emphasis added); In re PT Bakrie Telecom Tbk, 601 B.R. 707, 715 (Bankr. S.D.N.Y. 2019) ("An indenture subject to New York governing law and containing New York forum selection clauses constitutes property . . . ."); In re Berau Cap. Res. Pte Ltd, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) ("Contracts create property rights for the parties to the contract."). Indeed, Justice Alito's concurrence in Ciminelli itself recognizes that contract rights are property rights for purposes of the wire fraud statute. See Ciminelli, 143 S. Ct. at 1129 (noting the "Government's ability to retry petitioner on the theory that he conspired to obtain, and did in fact obtain, by fraud, a traditional form of property, viz., valuable contracts.") (Alito, J., concurring). So too are the Bondholders' security interests in Black Elk's assets. See United States v. Folsom, 661 F. App'x 495, 496 (9th Cir. 2016) ("That would-be security interest falls within the broad scope of the property interests protected by the bank and wire fraud statutes."); Ward v. United States, 845 F.2d 1459, 1462 (7th Cir. 1988); United States v. Mikell, 163 F. Supp. 2d 720, 741–42 (E.D. Mich. 2001) ("A security interest is a property right,

---

[4] As in Kousisis, the defendants committed their fraud by breaching a material term in a contract, here, the indenture's restrictions on affiliate voting. As the Third Circuit explained, "there is no question that breach of a material term in a contract—a fundamental basis of a bargain—by fraudulent means results in economic harm to the victim and deprives that victim of her property rights." Kousisis, 66 F.4th at 420.

5

and the taking of a security interest by fraud will support a conviction under the mail fraud statute . . . .").

The government relied on these traditional, "money or property" objects at trial. In closing, the government explained that the defendants rigged the vote to change the Black Elk indenture so that they could, "ram through changes to the bond holders' rights. Changes that only helped Platinum and that were forced on the other bond holders." Tr. at 6612:2–4; see also Tr. 6613:25–6614:6 ("But the defendants had a problem. The indenture, the document[]that set out all the rights of the bondholders and the rules about the bonds didn't allow the money from this asset sale to go to pay those Series E Preferred Equity holders. So the defendants decided we have to change the indenture so that that money could now go to pay us, the Series E Preferred Equity holders."). The asset sales covenant modified in the consent solicitation was a critical contractual provision for the Bondholders, which permitted Black Elk to use proceeds of asset sales only for purposes that would benefit the Bondholders, including repaying indebtedness or acquiring new assets that would be subject to the Bondholders' liens. See GX-9507 § 4.10(b). Without the modifications to the asset sales covenant the proceeds of the Renaissance transaction could not have been used to pay the Preferred Equity unless the Bondholders were paid first.

Nordlicht's argument that the government relied on the "right to control" ignores the indictment and the arguments the government actually presented at trial. He relies instead on out-of-context quotes from the government's summation describing the execution of the defendant's scheme to defraud and the materiality of the defendants' lies about the Black Elk consent solicitation. See ECF Dkt. No. 999 at 2. In bold and italics, the defendant cites the government's argument that "[t]he bondholders would have wanted to know if this vote was rigged, that it was corrupt." Id. (quoting Tr. 6682:17–6683:3). But Nordlicht omits the two preceding sentences which read: "[s]o let's talk now about materiality. It's common sense why these lies the defendants told in the scheme [were] material to the bondholders." Tr. at 6682:15–17 (emphasis added). He also omits the sentence immediately following the quoted passage: "That[]shows you why this is all material." Tr. 6683:3–4 (emphasis added). Materiality and false statements are distinct requirements that the government must prove in a wire fraud case. In many (if not all) wire fraud cases, the government must argue that the victims were "deprived . . . of information," ECF Dkt. No. 999 at 2, and in many wire fraud cases, the government argues materiality through evidence the victims would have acted differently had they known the truth. That does not transform these cases into cases about the "right to control." The government did not argue that the information withheld from the Bondholders was a type of property and that this property was the object of the defendants' fraud as in Ciminelli. Rather, the government argued that the scheme to defraud operated through the rigged consent solicitation and the defendants' lies about Platinum's control over the bonds held by Platinum affiliates. The object of the fraud was to modify the Black Elk indenture in order to misappropriate more than $70 million.

Nordlicht relies on these misleading quotes because his other arguments have already been rejected by the jury and are contrary to clearly established law. Nordlicht argues that no "money or property" was at issue because the Bondholders were not entitled to be paid the proceeds of the Renaissance sale directly. See ECF Dkt. No. 999 at 3–4. This argument was presented at trial. See Tr. 6968–69 (arguing that the Bondholders were not defrauded because they were not entitled to the proceeds of the Renaissance sale). The jury rejected it because, as the

6

government explained in rebuttal, absent the defendants' fraud the indenture required that the money either be used to pay down the bonds or be retained by Black Elk "supporting the[]bonds . . . ." Tr. 7089–90. Nordlicht also argues that the bondholders were not deprived of property because the price of the bonds did not fall after the consent solicitation and the bonds could have been sold above par after the consent solicitation passed. ECF Dkt. No. 999 at 3, 4 & n.1 ("[the government] could not argue that the bondholders actually lost money"). This is nothing more than a poorly-veiled attempt to argue that the defendants could not have committed a fraud because they did not cause an actual loss to the victims. There is, of course, no requirement that a wire fraud result in an actual loss to the victims.[5] See United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) ("No actual pecuniary injury, therefore, need result to the victim of the fraud.").

## IV. Ciminelli Does Not Apply to the Defendant's Securities Fraud and Securities Fraud Conspiracy Convictions

Even if Ciminelli applied to the defendant's wire fraud conspiracy conviction, which it does not, the decision would have no effect on the defendants' convictions for securities fraud and securities fraud conspiracy. Ciminelli did not involve a securities fraud charge. The elements of wire fraud and securities fraud are not the same in a number of respects, but most pertinent here, securities fraud does not require proof of an intent to obtain "money or property." To convict a defendant of securities fraud, a jury must find:

(1) In connection with the purchase or sale of the security, the defendant

    (a) employed a device, scheme, or artifice to defraud, or

    (b) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

    (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

(2) acted willfully, knowingly, and with the intent to defraud; and

(3) knowingly used, or caused to be used, the mails or any means or instruments of transportation or communication in interstate commerce in furtherance of the fraudulent conduct.

---

[5] In making this argument, Nordlicht relies on a report from a purported expert on the price of the Black Elk bonds that he submitted in connection with sentencing. See ECF Dkt. No. 999 at 3 & n.1 (citing ECF Dkt. No. 994 Ex. 2). Whatever the Court's authority to consider this report in connection with sentencing, it cannot be considered in connection with this challenge to the arguments and instructions at trial. The Court must rely on the record of the actual trial in this case, not untested materials belatedly submitted by the defense more than three years later to persuade the Court to disregard the record.

7

Leonard B. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL, Instruction 57–20; Tr. at 7141–42. These elements contrast with the offense of wire fraud, which requires an intent to "obtain money or property" through material misrepresentations and omissions. See Tr. at 7155–56. Basic principles of statutory interpretation advise that if Congress had intended the two statutes to have the same elements, they would have been drafted with the same language. See Northcross v. Board of Education of the Memphis City Schools, 412 U.S. 427, 428 (1973) (per curiam) ("Courts have often recognized that the resolution of questions of statutory interpretation may be aided by reference to the prevailing interpretation of other statutes that share the same language and either have the same general purpose or deal with the same general subject as the statute under consideration."). The absence of any "money or property" element from the securities fraud statute means that there is no such element as a component of the securities fraud offense.

Moreover, the Ciminelli decision is premised upon its understanding that the term "defraud" in the wire fraud statute referred to the traditional meaning of the term "to defraud," meant "wronging one in his property rights." 143 S. Ct. at 1126. The Court found that the traditional concept of property rights did not encompass the intangible "right to control" one's assets. What Nordlicht fails to acknowledge, however, is that the securities fraud statute is drafted in a much broader way, not limited to schemes to defraud, but also to encompass deceptive conduct and schemes to manipulate securities transactions. Tr. at 7141–42 ("[The government must prove f]irst, that in connection with the purchase or sale of a security, the Defendant did any one or more of three requisite acts: One, employed a device, scheme, or artifice to defraud; or two, made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances misleading; or, three, engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller"); cf United States v. Tagliaferri, 820 F.3d 568, 575 (2d Cir. 2016) (analyzing analogous language in Investment Adviser Fraud statute and finding it encompasses not only schemes to defraud, but, "any practice which operates as a fraud or deceit.").

Securities fraud and wire fraud also differ in the extent to which they require proof of an intent to harm the fraud victim's property interests. Numerous cases in this Circuit have made clear that, to the extent wire fraud requires some proof of intent to harm the victim's property interests, no such requirement applies in the contact of criminal securities fraud. See, e.g., United States v. Litvak, 808 F.3d 160, 178 (2d Cir. 2015) (rejecting appellant's claim "intent to deceive, manipulate or defraud" in the context of securities fraud has the same meaning as in the wire fraud context); United States v. Shkreli, 779 Fed. App'x 38, 40 (2d Cir. 2019) (jury need not find defendant intended to cause a loss to another to convict of securities fraud, whereas such a finding is required for wire fraud).

In short, Ciminelli expressly interpreted the wire fraud statute, not the securities fraud statute, and the two statutes are different, including different language and applying to different conduct. Consequently, there can be no plausible basis for finding that the Ciminelli decision impacts the defendants' securities fraud convictions in any respect.

* * *

For the reasons set forth above, defendant Nordlicht's renewed Rule 29 and Rule 33 motion should be denied and this matter should proceed to sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/
David C. Pitluck
Lauren Howard Elbert
Nick M. Axelrod
Assistant U.S. Attorneys
(718) 254-7000